JONES DAY
Aaron L. Agenbroad, Bar No. 242613
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    +1.415.626.3939
Facsimile:    +1.415.875.5700
Email: alagenbroad@jonesday.com

Liat Yamini, Bar No. 251238
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:    +1.213.489.3939
Facsimile:    +1.213.243.2539
Email:  lyamini@jonesday.com

Wendy C. Butler (*pro hac vice*)
Christian A. Bashi (*pro hac vice*)
250 Vesey Street
New York, NY 10080
Telephone:    +1.212.326.3723
Facsimile:    +1.212.755.7306
Email: wbutler@jonesday.com
Email:  cbashi@jonesday.com

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CHEYNE ANDERSON, JESUS CASTELLANO, HANNAH MIRZA, KATHLEEN O'BEIRNE, SETH TAYLOR, WILLIAM VAN DER LAAR, MARK WESLEY DUDLEY, RACHEL WESTRICK, JIAJUN XU, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>GOOGLE LLC,<br><br>    *Defendant*. | Case No. 25-CV-03268-BLF<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  September 18, 2025<br>Time:  9:00 AM<br>Dept.:  Courtroom 1<br>Judge:  Hon. Beth Labson Freeman |

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION .................................................................................................. 2

BACKGROUND ................................................................................................... 3

I.    NO TECH FOR APARTHEID AND THE APRIL 16, 2024 SIT-INS ................................. 3

II.   EVENTS AT THE SUNNYVALE OFFICE ..................................................................... 3

III.  EVENTS AT THE NEW YORK CITY OFFICE .............................................................. 4

IV.   TERMINATION OF EMPLOYMENT .......................................................................... 5

V.    THESE PROCEEDINGS .......................................................................................... 6

LEGAL STANDARD .......................................................................................... 6

ARGUMENT ....................................................................................................... 7

I.    THE COURT SHOULD DISMISS COUNT I BECAUSE PLAINTIFFS' UNREASONABLE AND
      DISRUPTIVE BEHAVIOR WAS NOT PROTECTED BY TITLE VII. ................................. 7

II.   THE COURT SHOULD DISMISS THE REMAINING STATE-LAW CLAIMS. ...................... 10

      A.   The Court Should Decline to Exercise Supplemental Jurisdiction Over the
           Remaining State-Law Claims. .................................................................... 10

      B.   Alternatively, the Court Should Dismiss the Remaining State-Law Claims for
           Failure to State a Claim. ........................................................................... 11

           1.   The Court Should Dismiss Counts II, III, IV, V, VI, VII, IX, X, and XI
                Because Plaintiffs Did Not Engage in Protected Activity. ...................... 11

           2.   The Court Should Dismiss Count VIII Because Plaintiff Taylor Did Not
                Engage in Protected Activity. ............................................................. 13

           3.   The Court Should Dismiss Count III Because FEHA Preempts Retaliation
                Claims Brought under the San Francisco Police Code. ........................... 13

           4.   The Court Should Dismiss Counts IV, V, and X Because Plaintiffs
                Castellano and Taylor Did Not Live or Work for Google in New York. ...... 14

III.  THE COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' CLASS CLAIMS BECAUSE
      PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED COMPLIANCE WITH RULE 23. ............. 15

      A.   Plaintiffs Do Not Sufficiently Plead Compliance with Rule 23(a) Requirements
           for Any Putative Class or Subclass. ............................................................ 17

      B.   Plaintiffs Lack an Adequate Class Representative for Counts IV, V, and X. ....... 19

      C.   Plaintiffs Plead No Facts That Satisfy Rule 23(b)(1)(A). ............................... 20

CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

Page

**CASES**

*Achal v. Gate Gourmet, Inc.*,
  114 F. Supp. 3d 781 (N.D. Cal. 2015) ...................................................... 6

*Acri v. Varian Assocs.*,
  114 F.3d 999 (9th Cir. 1997) (en banc)..................................................... 10

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................. 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6

*Astorga v. County of Los Angeles*,
  2021 WL 5986912 (C.D. Cal. Oct. 21, 2021) .......................................... 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................... 6

*Bentley v. United of Omaha Life Ins.*,
  2018 WL 3357458 (C.D. Cal. May 1, 2018) ............................................ 18

*Berry v. Baca*,
  226 F.R.D. 398 (C.D. Cal. 2005) ............................................................. 17

*Betts v. Reliable Collection Agency, Ltd.*,
  659 F.2d 1000 (9th Cir. 1981)................................................................... 16

*Bright v. Coca Cola Refreshments [sic] USA, Inc.*,
  2014 WL 5587349 (E.D.N.Y. Nov. 3, 2014)............................................ 12

*Buchanan v. Genentech, Inc.*,
  2010 WL 3448583 (N.D. Cal. Aug. 31, 2010)........................................... 7, 8, 9, 12

*Buchanan v. Hilton Garden Inn Westbury*,
  2008 WL 858986 (E.D.N.Y. Mar. 31, 2008) ............................................. 7

*Bush v. Vaco Tech. Servs., LLC*,
  2019 WL 3290654 (N.D. Cal. July 22, 2019)............................................ 16, 19

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ............................................................................................... 16

*Carnegie-Mellon Univ. v. Cohill,*
    484 U.S. 343 (1988) ............................................................................................... 10

*City & County of San Francisco v. Post,*
    231 Cal. Rptr. 3d 235 (Cal. Ct. App. 2018) ..................................................... 13, 14

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ................................................................................................. 16

*Cornwell v. Microsoft Corp.,*
    430 P.3d 229 (Wash. 2018) .................................................................................... 12

*Crawford v. Texaco, Inc.,*
    40 F.R.D. 381 (S.D.N.Y. 1966) .............................................................................. 18

*Delaney v. Superior Fast Freight,*
    18 Cal. Rptr. 2d 33 (Cal. Ct. App. 1993) .............................................................. 13

*Draney v. Westco Chems., Inc.,*
    2021 WL 4458953 (C.D. Cal. Sept. 29, 2021) ....................................................... 21

*Enoh v. Hewlett Packard Enter. Co.,*
    2018 WL 3377547 (N.D. Cal. July 11, 2018) ......................................................... 16

*Evans v. Kan. City, Mo. Sch. Dist.,*
    65 F.3d 98 (8th Cir. 1995) ........................................................................................ 8

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.,*
    2015 WL 12912337 (C.D. Cal. Mar. 16, 2015) ...................................................... 16

*Forrest v. Jewish Guild for the Blind,*
    819 N.E.2d 382 (N.Y. 2004) ................................................................................... 11

*Fried v. LVI Servs., Inc.,*
    500 F. App'x 39 (2d Cir. 2012) ............................................................................... 15

*Gen. Tel. Co. of Nw., Inc. v. EEOC,*
    446 U.S. 318 (1980) ............................................................................................... 17

*Gen Tel. Co. v. Falcon,*
    457 U.S. 147 (1982) ............................................................................................... 19

*Green v. Occidental Petroleum Corp.*,
    541 F.2d 1335 (9th Cir. 1976)........................................................................... 20, 21

*Hoffman v. Parade Pubs.*,
    933 N.E.2d 744 (N.Y. 2010) ............................................................................... 14, 15

*Jackson v. St. Joseph State Hosp.*,
    840 F.2d 1387 (8th Cir. 1988)................................................................................. 8, 9

*Jue v. Costco Wholesale Corp.*,
    2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ...................................................... 18, 19

*Kamm v. Cal. City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) ...................................................................................... 16

*King v. Aramark Servs. Inc.*,
    96 F.4th 546 (2d Cir. 2024)......................................................................................... 15

*Kovalenko v. Kirkland & Ellis LLP*,
    2023 WL 5444728 (N.D. Cal. Aug. 23, 2023)........................................................ 14

*La Mar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ...................................................................................... 21

*Laughlin v. Metro. Wash. Airports Auth.*,
    149 F.3d 253 (4th Cir. 1998)................................................................................... 7, 8

*Lawson v. PPG Architectural Finishes, Inc.*,
    503 P.3d 659 (Cal. 2022) ............................................................................................ 12

*Lil' Man in Boat, Inc. v. City & County of San Francisco*,
    2019 WL 125905 (N.D. Cal. 2019) ............................................................................ 17

*Liu v. UC Berkeley/UC Regents*,
    2017 WL 412639 (N.D. Cal. Jan. 31, 2017) .............................................................. 12

*Marsili v. Baker Places*,
    2003 WL 27396373 (N.D. Cal. Nov. 24, 2003)....................................................... 14

*Matima v. Celli*,
    228 F.3d 68 (2d Cir. 2000)............................................................................... 7, 9, 12

*McDonnell-Douglas Corp. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*,
    523 F.2d 1083 (9th Cir. 1975)............................................................................. 20, 21

*Mendez v. H.J. Heinz Co., L.P.,*
  2012 WL 12888526 (C.D. Cal. Nov. 13, 2012) ..................................................... 16

*Mish v. TForce Freight, Inc.,*
  2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ......................................................... 16

*Moyo v. Gomez,*
  40 F.3d 982 (9th Cir. 1994) ............................................................................. 7

*Nat'l Audubon Soc'y v. Dep't of Water,*
  869 F.2d 1196 (9th Cir. 1988) ........................................................................ 11

*NetApp, Inc. v. Nible Storage, Inc.,*
  41 F. Supp. 3d 816 (N.D. Cal. 2014) ............................................................... 11

*Newman v. Stanford Health Care,*
  2016 WL 6393516 (N.D. Cal. Oct. 28, 2016) ................................................... 10

*NLRB v. Fansteel Metallurgical Corp.,*
  306 U.S. 240 (1939) ........................................................................................ 7

*O'Connor v. Boeing N. Am., Inc.,*
  180 F.R.D. 359 (C.D. Cal. 1997) .................................................................... 21

*O'Day v. McDonnell Douglas Helicopter Co.,*
  79 F.3d 756 (9th Cir. 1996) ................................................................. 2, 7, 8, 9

*Pakniat v. Moor,*
  192 A.D.3d 596 (N.Y. App. Div. 2021) ........................................................... 15

*Rhodes v. Chertoff,*
  2005 WL 3273566 (D.D.C. Aug. 4, 2005) ...................................................... 7, 9

*Richie v. Blue Shield of Cal.,*
  2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ................................................... 20

*Russell v. Dep't of Hum. Rts.,*
  70 Wash. App. 408 (Wash. Ct. App. 1993) .................................................... 12

*Sanders v. Apple Inc.,*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................ 16

*Sandoval v. Ali,*
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ............................................................ 19

*Sandoval v. M1 Auto Collisions Ctrs.*,
309 F.R.D. 549 (N.D. Cal. 2015) ........................................................................... 17, 19

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) .................................................................................. 10

*Shiber v. Centerview Partners LLC*,
2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022) ......................................................... 15

*Silver v. KCA, Inc.*,
586 F.2d 138 (9th Cir. 1976) .................................................................................... 7

*Sinclair v. City of Seattle*,
61 F.4th 674 (9th Cir. 2023) ..................................................................................... 6

*Strother v. S. Cal. Permanente Med. Grp.*,
79 F.3d 859, 968 (9th Cir. 1996) ............................................................................ 12

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) ............................................................................................... 10

*Webb v. Rejoice Delivers LLC*,
2025 WL 974996 (N.D. Cal. Apr. 1, 2025) ............................................................ 16

*Willis v. Konig Assocs.*,
2023 WL 3569998 (N.D. Cal. May 19, 2023) ........................................................ 11

*Wood v. City of San Diego*,
2009 WL 10672470 (S.D. Cal. May 13, 2009) ....................................................... 20

*Zinser v. Accufix Res. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ................................................................................ 20

**STATUTES**

28 U.S.C. § 1367 ............................................................................................................ 2, 10

Cal. Gov't Code § 12940 ...................................................................................................... 14

Cal. Gov't Code § 12993 ...................................................................................................... 13

Cal. Lab. Code § 1102.5 ....................................................................................................... 12

Charter of the City of Seattle § 14.04.030 .......................................................................... 13

Charter of the City of Seattle § 14.04.040 .......................................................................... 13

San Francisco Police Code § 3303 ........................................................................... 14, 18

San Francisco Police Code § 3305.2 ............................................................................ 14

**RULES**

Federal Rule of Civil Procedure 12 ......................................................................... 6, 16

Federal Rule of Civil Procedure 23 ........................................................................ passim

1

### NOTICE OF MOTION AND MOTION TO DISMISS

2

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on September 18, 2025, at 9:00 a.m. in Courtroom 1

4 of the United States District Court for the Northern District of California, San Jose Division, located

5 at 280 South 1st Street, San Jose, California, Defendant Google LLC will and hereby does move

6 for an order dismissing Plaintiffs' Amended Complaint with prejudice.

7

Specifically, Google moves to dismiss the Amended Complaint on the ground that each and

8 every cause of action contained in the Amended Complaint fails to state a claim for relief under

9 Rule 12(b)(6) of the Federal Rules of Civil Procedure. Google also moves to dismiss under

10 Rule 12(b)(6) or, in the alternative, to strike under Rule 12(f) all class allegations on the ground

11 that Plaintiffs failed to plausibly allege compliance with Rule 23 of the Federal Rules of

12 Civil Procedure.

13

The Motion is supported by this Notice of Motion and Motion, the Memorandum of Points

14 and Authorities in support of this Motion, the [Proposed] Order filed herewith, the pleadings and

15 records on file in this action, and such other matters that may be presented to the Court at or prior

16 to the hearing.

17

### RELIEF REQUESTED

18

The Amended Complaint should be dismissed with prejudice pursuant to Federal Rule of

19 Civil Procedure 12(b)(6).

20

21 Dated: June 16, 2025                          Respectfully submitted,

22                                              JONES DAY

23

24                                              By: */s/ Aaron L. Agenbroad*

25                                                  Aaron L. Agenbroad
                                                    Liat Yamini
26                                                  Wendy C. Butler
                                                    Christian A. Bashi
27
                                                    *Attorneys for Defendant Google LLC*
28

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3       This case is about a small group of former employees who, on April 16, 2024, converted

4   two Google offices into protest stages, commandeered executive and shared workspaces, ignored

5   repeated directives from security, livestreamed their occupation, and ultimately required police

6   intervention. Plaintiffs now insist that their sit-in—complete with hostile chanting, banners, and the

7   occupation of the Google Cloud CEO's private office—was "protected activity" under Title VII

8   and various state and local retaliation statutes. It was not.

9       Title VII protects reasonable opposition to discrimination, not defiant and rebellious

10  seizures of an employer's property. Courts have long distinguished between protected opposition

11  activities and disruptive conduct that falls outside the statute's shield. Plaintiffs crossed that line

12  repeatedly. They occupied restricted areas, hung a multi-story banner, disturbed their coworkers,

13  and refused for hours to disperse despite multiple requests from security and—*ultimately*—

14  law enforcement. By any measure, that behavior was "insubordinate, disruptive, [and] non-

15  productive," placing it beyond the realm of protected activity recognized in *O'Day v. McDonnell*

16  *Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) and its progeny.

17      Once the unprotected nature of Plaintiffs' conduct is recognized, every claim in the

18  Complaint collapses. The sole federal count (Title VII retaliation) fails as a matter of law,

19  presenting a compelling basis for this Court to decline supplemental jurisdiction and dismiss the

20  state- and local-law claims under 28 U.S.C. § 1367(c). And even if the Court were inclined to retain

21  jurisdiction, Plaintiffs' state- and local-law claims—brought under California, Washington,

22  New York, San Francisco, and Seattle statutes—should still be dismissed because they are legally

23  deficient: each demands the same threshold showing of protected activity that Plaintiffs simply

24  cannot meet, and several are independently barred by specific state and local doctrines, including

25  territorial-impact rules and statutory preemption.

26      Plaintiffs' bid for class certification under Rule 23 of the Federal Rules of Civil Procedure

27  is also deficient. The Complaint fails to plausibly allege numerosity for each putative class and

28  subclass, identifies no adequate representative for the New York claims, and cannot satisfy

Defendant Google LLC's Motion to Dismiss
25-CV-03268-BLF

Rule 23(b)(1)(A) because requiring individual class members to pursue separate actions would not establish incompatible standards of conduct for Google.

Because these legal deficiencies are apparent on the face of the Complaint and cannot be cured, Google respectfully requests that the Complaint be dismissed with prejudice.

### BACKGROUND [1]

Google is a Delaware limited liability company headquartered in Mountain View, California, that conducts business throughout the United States. (Compl., ECF No. 8, ¶11.) Plaintiffs are former Google employees whose employment was terminated in April 2024 following their participation in disruptive sit-ins at Google offices. (*Id.* ¶¶2–10, 64–66.) Plaintiffs bring this action on behalf of themselves and others whose employment was terminated by Google for participation in prolonged sit-in activities on April 16, 2024. (*Id.* ¶78.) Because the parties are not completely diverse (*id.* ¶¶2–11), Plaintiffs' Title VII claim provides the sole basis for federal subject-matter jurisdiction (*id.* ¶16).

**I.    NO TECH FOR APARTHEID AND THE APRIL 16, 2024 SIT-INS**

In the months preceding April 16, 2024, a group known as No Tech for Apartheid ("NOTA") enlisted Google employees to stage a sit-in opposing Google cloud-computing's business contract with the Israeli government, known as "Project Nimbus." (*Id.* ¶¶21–24.) The sit-ins occurred on April 16, 2024, at Google's Sunnyvale, California, and New York City offices. (*Id.* ¶¶20, 32–63.) Prior to April 16, NOTA published a list of "Demands," including: "Drop Project Nimbus: We demand that Google stop providing material support to this genocide by canceling its Project Nimbus contract and immediately cease doing business with the Israeli apartheid government and military." (*Id.* ¶ 23.)

**II.    EVENTS AT THE SUNNYVALE OFFICE**

On April 16, 2024, Plaintiffs Anderson, Mirza, O'Beirne, Van Der Laar, Dudley, Westrick, and Xu, along with other Google employees, entered Google's MP4 building in Sunnyvale; "[a]round fifteen to twenty people went up to the sixth floor," where Google Cloud Chief Executive

---

[1] Google accepts Plaintiffs' allegations as true only for the purposes of this Motion.

Officer Thomas Kurian's office is located. (*Id.* ¶¶32–33.) "When the SVL Action participants entered, three to six people were working about 75 feet from Mr. Kurian's office." (*Id.* ¶33.) Sit-in participants occupied Mr. Kurian's office without authorization, taped up several banners, covered the inside window, and scrawled their Demands on his whiteboard. (*Id.* ¶¶34, 37.) Participants livestreamed the occupation, posed for celebratory group photos, "chanted various chants," and read worker testimonials, turning what had been a workplace into a raucous theatre. (*Id.* ¶¶35–37, 41.)

At around 9:45 a.m., Google security—seeking to restore a modicum of order—asked the sit-in participants to relocate to a different area. (*Id.* ¶38.) "About 10 participants" relocated, but Plaintiffs Westrick, Anderson, O'Beirne, and Dudley, along with one other putative class member, refused to comply. (*Id.* ¶¶39–40.) Rather, in open defiance of security's directives, they planted themselves inside Mr. Kurian's office and continued to broadcast their sit-in to an online audience and even tele-conferences with compatriots simultaneously disrupting Google's New York City office. (*Id.* ¶¶40–42.) Their standoff lasted the entire business day. (*Id.* ¶¶44–45) When security's repeated pleas fell on deaf ears, local police were summoned because of the continued insubordination. (*Id.* ¶42.) Around 3:30 p.m., Google security informed those who remained seated in Mr. Kurian's office that they had been placed on administrative leave and directed them to vacate or be removed by police. (*Id.* ¶44.) They refused. (*Id.* ¶45.) It was around 7:00 p.m., after hours of continued refusal to leave and ongoing disruption, when law enforcement finally escorted them out in handcuffs. (*Id.*)

### III.    EVENTS AT THE NEW YORK CITY OFFICE

While the Sunnyvale spectacle raged, Plaintiffs Taylor and Castellano and other putative class members spearheaded a companion protest at Google's New York City office. (*Id.* ¶¶47–48.) They and several colleagues commandeered the "Commons," a heavily trafficked common area, unfurling a two-story banner over a railing that read: "Google Workers Sit In Against Project Nimbus. No Tech for Genocide." (*Id.*) They sprawled out and led chants, including: "Not another push, not another line, no more cloud for Israel's crimes." (*Id.* ¶¶48–52) Unsurprisingly, nearby employees who were not participating in the sit-in became "agitated" by the outbursts

1    and misconduct. (*Id*. ¶57.)

2        At 12:15 p.m., Google security arrived and asked sit-in participants to "tone down

3    the chanting" and remove the banner; security also asked that the group leave "to

4    prevent escalation." (*Id.* ¶¶55–56, 58.) The group did not leave at that time. (*See id.* ¶60.) At around

5    1:15 p.m., security formally revoked consent for participants to remain in the Commons due to the

6    ongoing disruption. (*Id.*) Most participants departed (*id.*), but Plaintiff Castellano and three putative

7    class members refused to comply and remained seated in defiance of security's instructions

8    (*id.* ¶61). After hours of stalemate, security informed these individuals at around 6:00 p.m. that they

9    had been placed on administrative leave and must leave the building; when they continued to refuse,

10   they were arrested and removed by law enforcement. (*Id.* ¶62.)

11   **IV.    TERMINATION OF EMPLOYMENT**

12       The Complaint is coy about just how disruptive the episodes in Sunnyvale and New York

13   truly were. Suffice it to say, the conduct detailed above represents only a fraction of the chaos that

14   unfolded inside the offices; other incidents—some unsanitary—need not be catalogued here for

15   the Court to grasp the gravity of the insubordination. The events described in this Motion, which

16   are limited to those included in the Complaint, are only the tip of a larger iceberg of misconduct

17   that Plaintiffs understate out of necessity. But even restricting the analysis to Plaintiffs' own

18   pleading, the occupations were an unmitigated breach of workplace norms.

19       In late April 2024, Google issued written notices terminating the employment of Plaintiffs

20   and other putative class members. (*Id.* ¶¶64–66.) Those who were not arrested were informed:

21   "On April 16, 2024, Google security received concerns that [employee] engage in extremely

22   disruptive behavior by occupying Google workspace without permission for non-work related

23   activity, i.e. participating in a sit-in. The conduct created safety concerns for multiple Googlers,

24   making them feel unsafe and uncomfortable. As a result, termination is warranted." (*Id.* ¶65.) Those

25   individuals at the Sunnyvale and New York offices who were arrested and removed by law

26   enforcement were informed: "On April 16, 2024, Google security received concerns that

27   [employee] engaged in extremely disruptive behavior by trespassing in Google workspace without

28   permission for non-work related activity by participating in a sit-in and refusing to vacate the

1    workspace when requested. Ultimately, after multiple warnings, [employee] had to be physically

2    removed by local law enforcement due to non-cooperation and non-compliance with Google's

3    Code of Conduct and Policy on Harassment, Discrimination, Retaliation, Standards of Conduct,

4    and Workplace Concerns. This conduct created safety concerns for multiple Googlers, making them

5    feel unsafe and uncomfortable. As a result, termination is warranted." (*Id.* ¶66.)

6    **V.    THESE PROCEEDINGS**

7        Plaintiffs allege that Google's termination of their employment constitutes unlawful

8    retaliation under Title VII and various state and local statutes. (*Id.* ¶¶79–139.) Google disputes

9    these allegations and contends that the terminations were lawful responses to unprotected,

10   disruptive conduct. Google now moves to dismiss the Complaint in its entirety under Federal Rule

11   of Civil Procedure 12(b)(6).

<strong>LEGAL STANDARD</strong>

12

13       Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) "if the complaint

14   fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim."

15   *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). The complaint "must contain sufficient

16   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

17   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

18   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

19   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

20   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

21   do not suffice." *Id.*

22       "While a plaintiff need not plead facts constituting all elements of a *prima facie* employment

23   discrimination case in order to survive a Rule 12(b)(6) motion to dismiss, courts nevertheless look

24   to those elements to analyze a motion to dismiss, so as to decide, in light of judicial experience and

25   common sense, whether the challenged complaint contains sufficient factual matter, accepted as

26   true, to state a claim for relief that is plausible on its face." *Achal v. Gate Gourmet, Inc.*, 114 F.

27   Supp. 3d 781, 796–97 (N.D. Cal. 2015); *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

28   complaint states a plausible claim for relief will . . . be a context-specific task that requires the

1  reviewing court to draw on its judicial experience and common sense.").

2  **ARGUMENT**

3  The Court should dismiss the Complaint in its entirety. Plaintiffs' own allegations establish

4  that their conduct on April 16 fell outside the boundaries of "protected activity" under Title VII,

5  dooming Count I. Once Count I is dismissed on that threshold ground, the Court can and should

6  decline supplemental jurisdiction over the patchwork of state- and local-law claims. Yet whether

7  the Court keeps or relinquishes supplemental jurisdiction, each pendant claim suffers from fatal

8  defects which provide an independent basis for dismissal. Plaintiffs' Rule 23 allegations fare

9  no better, as Plaintiffs do not plausibly allege that their proposed classes satisfy Rule 23 criteria.

10  The Complaint should therefore be dismissed with prejudice.

11  **I.    THE COURT SHOULD DISMISS COUNT I BECAUSE PLAINTIFFS' UNREASONABLE AND**

12  **DISRUPTIVE BEHAVIOR WAS NOT PROTECTED BY TITLE VII.**

13  To state a *prima facie* retaliation claim under Title VII, Plaintiffs must show that they

14  engaged in a protected activity and experienced an adverse employment action because of that

15  protected activity. *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). To satisfy the "protected

16  activity" prong of the *prima facie* case, Plaintiffs must plead not only that they opposed a practice

17  made unlawful under Title VII, but also that their opposition activity was " 'reasonable in view of

18  the employer's interest in maintaining a harmonious and efficient operation.' " *O'Day v. McDonnell*

19  *Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (quoting *Silver v. KCA, Inc.*, 586 F.2d

20  138, 140 (9th Cir. 1976) (Title VII)); *see also Buchanan v. Genentech, Inc.*, 2010 WL 3448583,

21  at *9–11 (N.D. Cal. Aug. 31, 2010); *Buchanan v. Hilton Garden Inn Westbury*, 2008 WL 858986,

22  at *12 (E.D.N.Y. Mar. 31, 2008); *Rhodes v. Chertoff*, 2005 WL 3273566, at *7 n.8 (D.D.C. Aug. 4,

23  2005); *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000); *Laughlin v. Metro. Wash. Airports Auth.*,

24  149 F.3d 253, 260 (4th Cir. 1998); *cf. NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 257–

25  59 (1939) (plant seizure during labor dispute was "an illegal act" outside the scope of federal labor-

26  law safeguards).

27  Here, Plaintiffs' Title VII retaliation claim fails because the alleged opposition activity—

28  participation in a coordinated day of sit-ins across two Google offices—was not "reasonable in

view of [Google's] interest in maintaining a harmonious and efficient operation." *O'Day*, 79 F.3d at 763. An employer " 'has a strong interest in maintaining employee morale' " and "enforcing its legitimate policies." *Buchanan*, 2010 WL 3448583, at *10–11 (quoting *O'Day*, 19 F.3d at 763). It follows that "[a]n employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Evans v. Kan. City, Mo. Sch. Dist.*, 65 F.3d 98, 102 (8th Cir. 1995) (remanding with directions to dismiss). Indeed, Title VII "is not an insurance policy, a license to flaunt company rules . . . ." *O'Day*, 79 F.3d at 764. To that end, courts routinely hold that conduct is not protected when it results in a "serious breach of trust," *id.*, "insubordinate, disruptive, or nonproductive behavior at work," *Laughlin*, 149 F.3d at 260 (citations omitted), or "uncivil conduct" that is "highly offensive and disruptive" to other employees, *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1390–91 (8th Cir. 1988). This is especially true where the complainant "had other less objectionable and disruptive avenues open for" voicing their concerns. *Id.* at 1390. Plaintiffs' conduct during the sit-ins crossed all these lines and more.

First and foremost, Plaintiffs willfully interfered with Google's legitimate orders. The Complaint states in no uncertain terms that Plaintiffs in both San Francisco and New York disregarded Google's repeated requests for the sit-in participants to relocate. (Compl. ¶¶38, 40, 58, 60–61.) Plaintiffs concede that Google's order was grounded in its legitimate goal "to prevent escalation." (*Id.* ¶58.) Still, none of the sit-in participants responded to that initial request. (*Id.* ¶38.) And while some eventually relocated (*id.* ¶39), Plaintiffs readily concede that at least five of them (Westrick, Anderson, O'Beirne, Dudley, and Castellano) remained in the building, continued communicating with other sit-in participants across both locations, and eventually had to be forcibly removed by law enforcement after they defied Google's legitimate directives over the course of several hours. (*Id.* ¶¶40–42, 44–45, 61–63.) Title VII is not "a license to flaunt company rules," *O'Day*, 79 F.3d at 764, or to "violate[] legitimate rules and orders," *Evans*, 65 F.3d at 102. In short, Plaintiffs' defiance went beyond the bounds of what Title VII protects, and Count I should be dismissed for that reason alone.

Defendant Google LLC's Motion to Dismiss
25-CV-03268-BLF

1    Even if Plaintiffs had heeded Google's requests that they relocate (they admittedly did not),

2    their Title VII retaliation claim would still fail because their conduct amounted to a "serious breach

3    of trust" and disrupted the work environment. *O'Day*, 79 F.3d at 764. In San Francisco, 15-to-20

4    sit-in participants "entered [the Google Cloud CEO's] office" without permission and defaced it by

5    "tap[ing] a banner up against the inside window" (along with "[a]dditional signs"), scrawled

6    demands on his personal white board, chanted, and posed for selfies in and around his office.

7    (Compl. ¶¶33–37.) Meanwhile "three to six" non-participating employees were attempting to work

8    just "75 feet" away. (*Id.* ¶33.) Commandeering the CEO's office, desecrating it, and boasting about

9    this conduct by livestreaming it on social media is exactly the kind of "serious breach of trust" that

10   courts have held forfeits statutory protection. *See O'Day*, 79 F.3d at 763 (plaintiff's "rummaging

11   through [his] supervisor's office" was not a "reasonable attempt[] to contest" discrimination).

12   The misconduct in New York was no less shocking. Plaintiffs occupied an area that

13   employees are "permitted to use [for] work" and that serves as a main artery of assemblage,

14   wore "t-shirts for the Action," "took some photos," "hung a banner" over a two-story mezzanine

15   railing, "distribute[d] leaflets," and "sat down on the floor"—all while there was "steady traffic"

16   of non-participant employees "pass[ing] through the area." (*Id.* ¶¶47–50, 54.) And in both

17   San Francisco and New York, Plaintiffs treated Google's premises as a stage, using company

18   resources as props for a day-long performance; they "read the Demands out loud" and engaged in

19   chanting loud enough that security and—*ultimately*—law enforcement felt compelled to intervene.

20   (*See id.* ¶52; *see also id.* ¶37.) As Plaintiffs readily concede in the Complaint, the disruptive nature

21   of their sit-in "agitated" other employees, (*id.* ¶57)—"unacceptably disrupt[ing] the office's

22   operations," *Rhodes*, 2005 WL 3273566, at *7 n.8; *see also Matima*, 228 F.3d at 79 ("unseemly

23   confrontations" not protected). "Like any employer, [Google] 'has a strong interest in maintaining

24   employee morale, and in discouraging this sort of behavior,' " *Buchanan*, 2010 WL 3448583,

25   at *10 (quoting *O'Day*, 79 F.3d at 763), especially where Plaintiffs "had other less objectionable

26   and disruptive avenues" for voicing their concerns, *Jackson*, 840 F.2d at 1390.

27   Even this abbreviated account described in the Complaint shows a day-long, multi-office

28   campaign of insubordination that commandeered executive workspaces, disrupted colleagues, and

1  required law-enforcement intervention—all of which is incompatible with the most basic norms of

2  workplace decorum. The Complaint omits still more egregious misconduct, but the facts it does

3  admit are more than enough to establish that Plaintiffs' behavior fell far outside the bounds of

4  protected activity. Nothing in Title VII obligates an employer to tolerate a day-long office

5  occupation, property defacement, and the need for police intervention. In short, Plaintiffs' defiant

6  and disruptive sit-in was not a reasonable attempt to challenge discrimination. Because Plaintiffs'

7  conduct was not protected activity under Title VII as a matter of law, the Court should dismiss

8  Count I for failure to state a claim.

9  **II.    THE COURT SHOULD DISMISS THE REMAINING STATE-LAW CLAIMS.**

10  The remaining state-law claims warrant dismissal both for lack of supplemental jurisdiction

11  and, in the alternative, for failure to state a claim.

12  **A.    The Court Should Decline to Exercise Supplemental Jurisdiction Over the**

13  **Remaining State-Law Claims.**

14  While district courts have discretion to exercise supplemental jurisdiction over state-law

15  claims that "form part of the same case or controversy" as a federal claim, 28 U.S.C. § 1367(a),

16  "[t]hat power need not be exercised in every case in which it is found to exist," *United Mine*

17  *Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Rather, "district courts may decline to exercise

18  supplemental jurisdiction over a claim" when the "court has dismissed all claims over which it has

19  original jurisdiction." 28 U.S.C. § 1367(c)(3).

20  Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right," *Gibbs*,

21  383 U.S. at 726, and its exercise "is informed by the *Gibbs* values of economy, convenience,

22  fairness, and comity," *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). When

23  federal claims are dismissed at the pleading stage, those factors ordinarily "point toward declining

24  to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*,

25  484 U.S. 343, 350 n.7 (1988); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir.

26  2010). Indeed, dismissing state and local claims "at an early stage in the proceedings, [when the]

27  Court has not devoted significant resources to it . . . will not impair either party's rights." *Newman*

28  *v. Stanford Health Care*, 2016 WL 6393516, at *1 (N.D. Cal. Oct. 28, 2016) (Freeman, J.). Because

1    this case is at the pleading stage, remitting this dispute to state court will promote economy and

2    convenience without prejudicing either side. *See NetApp, Inc. v. Nible Storage, Inc.*, 41 F. Supp.

3    3d 816, 837–38 (N.D. Cal. 2014) ("Judicial resources are best conserved by dismissing the case

4    at this stage."). For that reason alone, the Court should dismiss the state- and local-law claims.

5    "Comity also weighs in favor of declining supplemental jurisdiction," *Willis v. Konig

6    Assocs.*, 2023 WL 3569998, at *8 (N.D. Cal. May 19, 2023) (Freeman, J.), as Plaintiffs' remaining

7    claims invoke state- and local-law issues better adjudicated by local courts given "the strong state

8    interest[s]" in shaping the contours of their own labor and employment laws, *Nat'l Audubon Soc'y

9    v. Dep't of Water*, 869 F.2d 1196, 1206 (9th Cir. 1988). In short, the *Gibbs* values of "economy,

10   convenience, fairness, and comity" counsel against the exercise of supplemental jurisdiction, and

11   the Court should dismiss the Complaint in its entirety.

12       **B.      Alternatively, the Court Should Dismiss the Remaining State-Law Claims for

13               Failure to State a Claim.**

14       Even if the Court were to exercise supplemental jurisdiction (it should not),

15   the remaining state- and local-law claims suffer from myriad pleading defects that independently

16   compel dismissal. Because Plaintiffs flagrantly violated legitimate workplace rules and materially

17   disrupted business operations, the sit-ins were not cognizable "protected activity" under California,

18   New York, Washington, or Seattle law. Likewise, Plaintiff Taylor's political-ideology claim fails

19   because his conduct interfered with job performance, placing it outside the Seattle Ordinance's

20   protections. The San Francisco Police Code claim is also preempted by FEHA's express occupation

21   of the employment-discrimination field. And the New York counts fail the state's "impact" test,

22   as Plaintiffs Castellano and Taylor neither lived nor worked in New York and felt no adverse

23   effects there. Each of these independent grounds warrants dismissal of the corresponding claims

24   with prejudice.

25       **1.      The Court Should Dismiss Counts II, III, IV, V, VI, VII, IX, X, and XI

26               Because Plaintiffs Did Not Engage in Protected Activity.**

27       Like the Title VII claims, each of the remaining retaliation claims require a showing that

28   Plaintiffs engaged in protected activity. *See Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 382,

1  396 (N.Y. 2004) (NYSHRL and NYCHRL); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d

2  859, 968 (9th Cir. 1996) (FEHA); *Lawson v. PPG Architectural Finishes, Inc.*, 503 P.3d 659, 667

3  (Cal. 2022) (Cal. Lab. Code); *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018)

4  (en banc) (WLAD); *Russell v. Dep't of Hum. Rts.*, 70 Wash. App. 408, 415 (Wash. Ct. App. 1993)

5  (Seattle Ordinance).

6        Under each of these state and local laws, the dispositive legal requirement is the same:

7  the conduct asserted must constitute a reasonable, lawful effort to oppose discrimination

8  or wrongdoing. Courts interpreting these statutes repeatedly hold that protection is forfeited when

9  an employee's method of opposition violates legitimate work rules, disregards direct orders,

10  or materially disrupts business operations. *See Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000)

11  (NYHRL); *Bright v. Coca Cola Refreshments* [*sic*] *USA, Inc.*, 2014 WL 5587349, at *20

12  (E.D.N.Y. Nov. 3, 2014) (NYCHRL); *Buchanan v. Genentech, Inc.*, 2010 WL 3448583, at *10–11

13  (N.D. Cal. Aug. 31, 2010) (FEHA); *see also Liu v. UC Berkeley/UC Regents*, 2017 WL 412639,

14  at *8 (N.D. Cal. Jan. 31, 2017) ("The elements needed to prove whistleblower retaliation under

15  [Cal. Lab. Code § 1102.5] parallel those of Title VII."); *Russell*, 70 Wash. App. at 415 (WLAD and

16  Seattle Ordinance "substantially parallel[] the provisions of Title VII").

17        As noted above (*supra* Section I), Plaintiffs' sit-ins—marked by defiance of workplace

18  rules, disruption of operations, and forced police intervention—breached that settled line. As they

19  acknowledge, Plaintiffs did far more than merely voice objections: they occupied executive offices,

20  draped multi-story banners from railings, posted signs, disregarded repeated directives to relocate,

21  and ultimately had to be removed by police—all while livestreaming the spectacle to a global

22  audience and chanting slogans designed to enflame. The sit-ins and outburst activities transformed

23  the workplace into a broadcast studio; Plaintiffs commandeered common workspaces, interfered

24  with non-participants' ability to perform their duties, and undermined Google's obligation to

25  provide a safe and efficient workplace. Even this account drawn from the Complaint—which omits

26  the most unsettling episodes of the affair—describes conduct that is precisely the type that courts

27  have deemed outside the ambit of "protected activity." Because Plaintiffs' opposition was not

28

Defendant Google LLC's Motion to Dismiss
25-CV-03268-BLF

1  conducted in a reasonable manner, each of their state- and local-law retaliation claims fail at the

2  first and should be dismissed.

3        **2.      The Court Should Dismiss Count VIII Because Plaintiff Taylor Did**

4              **Not Engage in Protected Activity.**

5        Section 14.04.040 of the Seattle Ordinance prohibits employment discrimination based on

6  "political ideology." However, the statute explicitly protects only "conduct, reasonably related to

7  political ideology, *which does not interfere with job performance*." *Id.* § 14.04.030 (emphasis

8  added). By definition, conduct that disrupts the work environment, agitates coworkers, and defies

9  managerial directives "interfere[s] with job performance" and therefore falls outside the statute's

10  protective scope. Thus, Count VIII should likewise be dismissed because Plaintiff Taylor's conduct

11  interfered with job performance and thus was unprotected under the plain language of the

12  Seattle Ordinance.

13        **3.      The Court Should Dismiss Count III Because FEHA Preempts**

14              **Retaliation Claims Brought under the San Francisco Police Code.**

15        Count III of the Complaint, which asserts retaliation under the San Francisco Police Code,

16  should be dismissed because it is preempted by California's FEHA. In FEHA, the California

17  Legislature declared its "intention . . . to occupy the field of regulation of discrimination in

18  employment and housing encompassed by the provisions of [FEHA], exclusive of all other laws

19  banning discrimination in employment and housing by any city, city and county, county, or other

20  political subdivision of the state." Cal. Gov't Code § 12993(c). Courts have repeatedly construed

21  this declaration to mean that, when a local enactment seeks to regulate the very forms of

22  employment discrimination or retaliation that FEHA already governs, the local measure is void for

23  express preemption. For example, in *Delaney v. Superior Fast Freight*, the California Court of

24  Appeals acknowledged that "FEHA encompasses discrimination in employment" and held that

25  FEHA therefore displaced a Los Angeles ordinance that attempted to prohibit the same conduct,

26  explaining that the local law "has the same purpose as the FEHA, to outlaw discrimination in

27  employment." 18 Cal. Rptr. 2d 33, 37–38 (Cal. Ct. App. 1993). And in *City and County of*

28  *San Francisco v. Post*, the California Court of Appeals again confirmed that FEHA's "field of

1    exclusivity acts to prevent cities and counties from enforcing their own laws regarding the kinds of

2    discrimination in housing and employment that FEHA addresses." 231 Cal. Rptr. 3d 235, 244

3    (Cal. Ct. App. 2018).

4         Federal courts applying California law have followed suit. In *Kovalenko v. Kirkland & Ellis*

5    *LLP*, the court dismissed retaliation claims pleaded under the very ordinance at issue here, holding

6    that "Plaintiff's S.F. Police Code claims are preempted by FEHA." 2023 WL 5444728, at *6

7    (N.D. Cal. Aug. 23, 2023). Likewise, *Marsili v. Baker Places* also involved discrimination and

8    retaliation claims brought under the San Francisco Police Code, and the court found that these

9    claims were preempted because the ordinance mirrored FEHA. 2003 WL 27396373, at *4

10    (N.D. Cal. Nov. 24, 2003).

11         Article 33 of the San Francisco Police Code unambiguously regulates the same subject

12    matter as FEHA. Section 3303 makes it unlawful for an "employer . . . to discriminate against any

13    individual" in employment on specified protected bases, and Section 3305.2(b) expressly forbids

14    "retaliation against a person because that person . . . has opposed" such discrimination.

15    Those provisions track FEHA, which already prohibits both discrimination and retaliation on the

16    same grounds. *See* Cal. Gov't Code § 12940. Because Article 33 seeks to police the very conduct

17    that FEHA comprehensively regulates, it falls squarely within FEHA's occupied field. Count III is

18    therefore preempted and should be dismissed.

19         **4.    The Court Should Dismiss Counts IV, V, and X Because Plaintiffs**

20         **Castellano and Taylor Did Not Live or Work for Google in New York.**

21         The Complaint's causes of action under New York State and City law fail from the start

22    because, as non-residents who performed no work for Google in New York, Plaintiffs Castellano

23    and Taylor cannot satisfy the territorial-impact requirement that governs each of these claims.

24         The New York Court of Appeals has made clear that the protections of the NYSHRL and

25    the NYCHRL extend only to persons who either work or reside in New York and can show that

26    "the alleged discriminatory conduct had an impact in New York." *Hoffman v. Parade Pubs.*,

27    933 N.E.2d 744, 747 (N.Y. 2010). Subsequent decisions have reiterated that rule and rejected

28    attempts by out-of-state employees to invoke New York's discrimination statutes when their work,

Defendant Google LLC's Motion to Dismiss
                                                          25-CV-03268-BLF

1  their residence, and the effects of the alleged misconduct were all located elsewhere. *See, e.g.*,

2  *Pakniat v. Moor*, 192 A.D.3d 596, 597 (N.Y. App. Div. 2021) (impact element not met even though

3  "the alleged discriminatory acts and unlawful decision to terminate plaintiff's employment

4  occurred in New York"); *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012) (no liability

5  where the alleged discriminatory conduct did not have an impact within New York City); *King v.

6  Aramark Servs. Inc.*, 96 F.4th 546, 557 (2d Cir. 2024) (dismissing NYSHRL and NYCHRL claims

7  because any in-state impact was "tangential").

8      The Complaint itself confirms that neither Castellano nor Taylor can satisfy the impact test.

9  Castellano resides in Houston, Texas, and worked for Google in Atlanta, Georgia. (Compl. ¶3.)

10  Taylor resides in Seattle, Washington, and worked for Google in Seattle. (*Id.* ¶6.) Neither alleges

11  that he ever lived, worked, or even regularly reported to a Google office in New York. Their only

12  connection to New York is that each travelled to Google's Manhattan campus on April 16, 2024,

13  to participate in the sit-in. That single day of off-site sit-in activity does not establish that any

14  adverse employment action had an "impact" in New York. *See Shiber v. Centerview Partners LLC*,

15  2022 WL 1173433, at *3 (S.D.N.Y. Apr. 20, 2022) ("Courts have repeatedly held that a non-

16  resident plaintiff's occasional meetings in or travel to the city are tangential and do not satisfy the

17  impact requirement."). The focus is on where Plaintiff "worked" and where the consequences of

18  the challenged conduct were "felt," not on the happenstance of where Google happened to make

19  its decision. *Hoffman*, 933 N.E.2d at 747. The Court should therefore dismiss Counts IV, V, and X.

20  **III.    THE COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' CLASS CLAIMS BECAUSE**

21          **PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED COMPLIANCE WITH RULE 23.**

22      Plaintiffs seek to certify a nationwide class under Title VII of those "whose employment

23  was terminated by [Google] for participation in [sit-in activities] on April 16, 2024." (Compl. ¶78.)

24  Plaintiffs also appear to seek certification of several state- and local-law subclasses, including

25  (i) two apparently nationwide classes under California law (*id.* ¶¶86, 124), (ii) a subclass of

26  "San Francisco-based Class Members" under the San Francisco Police Code (*id.* ¶92),

27  (iii) two subclasses of "New York-based Class Members" under New York law (*id.* ¶¶97, 130),

28  (iv) a subclass of "New York City-based Class Members" under New York City law (*id.* ¶103),

(v) two subclasses of "Washington-based Class Members" under Washington law (*id.* ¶¶109, 136), and (vi) two subclasses of "Seattle-based Class Members" under Seattle law (*id.* ¶¶115, 119).

"[T]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). Class certification is appropriate only when the putative class satisfies all requirements of Rule 23(a)—including numerosity, commonality, typicality, and adequacy—and one of the requirements of Rule 23(b). "[E]ach subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

Courts can and should dispose of legally deficient class allegations at the Rule 12 stage. *Bush v. Vaco Tech. Servs., LLC*, 2019 WL 3290654, at *4–6 (N.D. Cal. July 22, 2019) (Freeman, J.) (dismissing class allegations under Rule 12(b)(6) "in light of the pleading requirements of *Twombly/Iqbal*"); *see also Webb v. Rejoice Delivers LLC*, 2025 WL 974996, at *4–5 (N.D. Cal. Apr. 1, 2025) (Freeman, J.) (similar); *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018) (Freeman, J.) (similar); *Mish v. TForce Freight, Inc.*, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (similar); *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 2015 WL 12912337, at *4 (C.D. Cal. Mar. 16, 2015) (similar); *Mendez v. H.J. Heinz Co., L.P.*, 2012 WL 12888526, at *4 (C.D. Cal. Nov. 13, 2012) (similar); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975) (affirming dismissal of class allegations); *see also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (striking deficient class allegations under Rule 12(f)).

Here, dismissal of Plaintiffs' class allegations is warranted under Rule 12(b)(6) because the Complaint does not sufficiently plead compliance with Rule 23 criteria for any of the asserted classes or subclasses. Alternatively, the Court should strike the class allegations under Rule 12(f) because "'the complaint demonstrates that a class action cannot be maintained on the facts alleged.'" *Webb*, 2025 WL 974996, at *2 (Freeman, J.) (quoting *Sanders*, 672 F. Supp. 2d at 990).

**A.      Plaintiffs Do Not Sufficiently Plead Compliance with Rule 23(a) Requirements for Any Putative Class or Subclass.**

Rule 23(a)(1) requires, *inter alia*, a showing that the "class is so numerous that joinder of all members is impracticable." Numerosity is not a fixed numerical threshold. *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Instead, it requires a fact-specific inquiry. *See Lil' Man in Boat, Inc. v. City & County of San Francisco*, 2019 WL 125905, at *3 (N.D. Cal. 2019). When the class size is small, courts do not presume that joinder is impracticable but instead consider other indicia of impracticability such as "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought." *Id.* (quoting *Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 562 (N.D. Cal. 2015)).

The Complaint falls woefully short of plausibly alleging that joinder in impracticable. The Complaint describes a putative class that is significantly smaller than the numerosity threshold accepted by most courts. *See, e.g.*, *Sandoval*, 309 F.R.D. at 562 (subclasses of 17 and 23 putative class members insufficient); *Berry v. Baca*, 226 F.R.D. 398, 403 (C.D. Cal. 2005) (33 putative class members insufficient); *Astorga v. County of Los Angeles*, 2021 WL 5986912, at *3 (C.D. Cal. Oct. 21, 2021) (38 putative class members insufficient). The Complaint alleges that only "[a]round fifteen to twenty" sit-in participants entered the Sunnyvale office (Compl. ¶33), and eight sat on the floor in the New York City workspace (*id.* ¶¶48–50). Three class members spoke in the Commons in New York City, but it is unclear if these were among the eight or in addition to the eight. (*Id.* ¶52.) Regardless, the total number alleged is well under 40.

And despite the paltry size of the putative class, Plaintiffs make no effort to address other factors relevant to whether joinder is impracticable. For instance, although they allege in conclusory fashion that "Plaintiffs and Class Members are located across the United States," (*id.* ¶73), they do not plausibly demonstrate that this alleged geographic dispersion would impose burdens on putative class members. Nor can they. Almost all putative class members are located in two states— New York and California—and the few who reside in other states faced no hardship in traveling across the country to participate in the sit-ins and disruptive actions that gave rise to this litigation. (Compl. ¶¶2–10.) Nor did any of the putative class members face any difficulty coordinating these

highly organized and disruptive sit-in activities across the two geographic locations. *See, e.g.*, *Crawford v. Texaco, Inc.*, 40 F.R.D. 381, 385 (S.D.N.Y. 1966) (rejecting plaintiff's contention that it would be impracticable to join 20 putative class members who resided in six states where plaintiff experienced "no great difficulty . . . in getting each [putative class member] to execute the lease" that gave rise to the dispute). Plaintiffs also fail to allege any other facts to establish impracticability of joinder under Rule 23(a)(1). They do not allege that the putative class members are unable to bring separate suits, or that it would be difficult to identify or locate putative class members. Lastly, the fact that Plaintiffs are "not seeking injunctive or declaratory relief weighs against finding" that Rule 23(a)(1) is satisfied. *Bentley v. United of Omaha Life Ins.*, 2018 WL 3357458, at *7 (C.D. Cal. May 1, 2018).

Plaintiffs' pleading deficiencies are even more stark with respect to the state- and local-law subclasses. If Plaintiffs' nationwide class does not satisfy Rule 23's requirements, then they certainly cannot demonstrate numerosity for a subset of participants in each jurisdiction. Plaintiffs' own pleadings confirm that each putative state or local subclass comprises, at most, a handful of individuals—far short of rendering joinder impracticable under Rule 23(a)(1):

– **California.** Plaintiffs identify at most "fifteen to twenty people" who participated in the Sunnyvale sit-in. (Compl. ¶33.)

– **New York.** Plaintiffs' New York allegations expose an even smaller cohort. They allege "eight Class Members" sat in public areas and vaguely suggest that "[a] few others" remained nearby distributing leaflets. (*Id.* ¶¶49–50.)

– **San Francisco.** The local ordinance covers only San Francisco employees. Plaintiffs list only five such individuals. (*Id.* ¶¶4–5, 7–8, 10.) No additional San Francisco employees are alleged to have been present or disciplined.

– **Washington and Seattle.** The Complaint identifies only two Washington-based Plaintiffs and does not allege that any sit-ins occurred there. (*Id.* ¶¶2, 6, 109–12.)

These figures, drawn directly from the Complaint, are not merely low; they are fatal. Plaintiffs' failure to plead any plausible basis for numerosity or impracticability of joinder mandates dismissal. *Cf. Jue v. Costco Wholesale Corp.*, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010)

1   ("Class allegations must [be] supported by sufficient factual allegations demonstrating that the
2   class device is appropriate and discovery on class certification is warranted.").

3        Plaintiffs' assertion that "[t]he exact number of Class Members can be determined by
4   reviewing Defendant's records" (Compl. ¶70) does not relieve them of their pleading obligation.
5   Notably, Plaintiffs do not contend they lack knowledge of the size of the groups that entered the
6   buildings, and their detailed pleadings establish quite the contrary. Moreover, the fact that Google's
7   records may also shed light on numerosity—or lack thereof—is beside the point. Plaintiffs bear the
8   burden of pleading facts that state a plausible claim that class certification is appropriate.
9   *Jue*, 2010 WL 889284, at *6. They cannot satisfy this burden by pointing out that Google also
10  knows the size of the putative class.

11       **B.**    **Plaintiffs Lack an Adequate Class Representative for Counts IV, V, and X.**

12       The adequacy requirement of Rule 23(a)(4) demands that a named plaintiff possess a viable
13  individual claim under the law they seek to enforce. *See* Fed. R. Civ. P. 23(a)(4); *Sandoval v. Ali*,
14  34 F. Supp. 3d 1031, 1043–44 (N.D. Cal. 2014). Here, the only Plaintiffs who attended the
15  New York sit-in—Castellano (a Houston resident working in Atlanta) and Taylor (a Seattle resident
16  working in Seattle)—never lived or worked in New York. (Compl. ¶¶3, 6.) Because New York law
17  applies only where the alleged discriminatory impact is felt within the state, these Plaintiffs have
18  no viable individual claim under New York law and are *per se* inadequate representatives.
19  (*Supra* Section II(B)(4).) Accordingly, the Court should dismiss the class allegations with respect
20  to the New York claims alleged in Counts IV, V, and X. *See Sandoval*, 34 F. Supp. 3d at 1043–44
21  (striking subclass where named plaintiff lacked individual cause of action); *Bush*, 2019 WL
22  3290654, at *4–6 (Freeman, J.) (dismissing class allegations where named plaintiff could not
23  represent absent class members in other locations); *see also Gen Tel. Co. v. Falcon*, 457 U.S.
24  147, 156, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine
25  whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim
26  [under Rule 23(a)].").

27
28

1

### C.       Plaintiffs Plead No Facts That Satisfy Rule 23(b)(1)(A).

2        On top of meeting the requirements of Rule 23(a), Plaintiffs bear the burden of satisfying

3    "at least one of the [three] subdivisions of Rule 23(b)." *Green v. Occidental Petroleum Corp.*,

4    541 F.2d 1335, 1339 (9th Cir. 1976). Plaintiffs do not even attempt to plead facts that would satisfy

5    Rule 23(b)(2) or 23(b)(3). And their fleeting reference to Rule 23(b)(1)(A) does not withstand

6    scrutiny. (*Compare* Compl. ¶76, *with* Fed. R. Civ. P. 23(b)(1)(A).) Rule 23(b)(1)(A) is a narrow,

7    "incompatible-standards" device reserved for the rare case where separate actions could compel a

8    defendant to follow irreconcilable legal directives. *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180,

9    1193 (9th Cir. 2001); *Green*, 541 F.2d at 1340; *McDonnell-Douglas Corp. v. U.S. Dist. Ct. for the*

10   *Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975). Plaintiffs' termination claims—brought

11   mainly for compensatory, statutory, and punitive damages—present no such risk. Their attempt to

12   invoke Rule 23(b)(1)(A) therefore fails as a matter of law.

13       Rule 23(b)(1)(A) authorizes a mandatory class action only where "prosecuting separate

14   actions by or against individual class members would create a risk of . . . incompatible standards of

15   conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). The rule "takes in cases

16   where the party is obliged by law to treat the members of the class alike . . . or where the party must

17   treat all alike as a matter of practical necessity," such as riparian-rights or utility-rate disputes.

18   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). In other words, unlike Rule 23(b)(3),

19   the provision is not concerned with efficiency or uniformity; it is concerned solely with preventing

20   conflicting legal directives. Consistent with the Rule 23(b)(1)(A)'s narrow purpose, "[c]ourts have

21   routinely refused to certify classes under this provision where the Plaintiff seeks primarily

22   money damages." *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *20 (N.D. Cal. Dec. 9, 2014);

23   *see also Zinser*, 253 F.3d at 1193 ("Certification under Rule 23(b)(1)(A) is therefore not

24   appropriate in an action for damages."); *Wood v. City of San Diego*, 2009 WL 10672470, at *3

25   (S.D. Cal. May 13, 2009) ("Certification under Rule 23(b)(1)(A) is appropriate only when the

26   named plaintiff seeks a form of injunctive relief that would bind the entire class.").

27       Plaintiffs' bare assertion that their putative classes may proceed under Rule 23(b)(1)(A)

28   collapses under this settled authority. Plaintiffs seek reinstatement, back pay, front pay, statutory

Defendant Google LLC's Motion to Dismiss
25-CV-03268-BLF

penalties, and punitive damages. Nothing about those remedies could plausibly subject Google to irreconcilable legal directives. Even if a jury found Google liable as to one sit-in participant and another jury reached a different result as to a different sit-in participant, Google would simply pay one judgment and not the other. That routine possibility does not constitute "incompatible standards of conduct" under Rule 23(b)(1)(A). *See McDonnell-Douglas*, 523 F.2d at 1086 (no incompatibility where defendant can "act consistently with both judgments" by paying one and not the other); *Green*, 541 F.2d at 1340 (same); *Draney v. Westco Chems., Inc.*, 2021 WL 4458953, at *7 (C.D. Cal. Sept. 29, 2021) (individual damage awards do not create incompatible standards). Rather, the risk must be that Google would be <u>unable to act</u> in response to both judgments. "Infrequently, if ever, will this be the case when the action is for money damages." *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973). Nor does Plaintiffs' request for reinstatement transform their damages-driven complaint into the kind of indivisible injunctive action contemplated by Rule 23(b)(1)(A). Reinstatement turns on employee-specific considerations, like performance history and position availability, and thus, like money damages, is an individualized remedy incompatible with Rule 23(b)(1)(A). *See O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 377 & n.21 (C.D. Cal. 1997) ("[W]hen the relief in question is fraught with individualized issues, resort to Rule 23(b)(1) is inappropriate." (citations omitted)).

Having failed to trigger the narrow "incompatible standards" rationale, Plaintiffs' Rule 23(b)(1)(A) theory fails as a matter of law. The Complaint therefore alleges no facts—indeed, no theory at all—that could sustain certification under that subdivision, and the class allegations should be dismissed—or, alternatively, stricken—in their entirety.

## CONCLUSION

For the foregoing reasons, Google asks the Court to dismiss the Complaint in its entirety with prejudice.

1

2

Respectfully submitted,

3

4

Dated: June 16, 2025

JONES DAY

5

6

By: */s/ Aaron L. Agenbroad*

Aaron L. Agenbroad

7

Liat Yamini

Wendy C. Butler

Christian A. Bashi

8

9

*Attorneys for Defendant Google LLC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Google LLC's Motion to Dismiss
25-CV-03268-BLF