Aleksandr L. Felstiner
Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011-5126
(212) 627-8100
afelstiner@levyratner.com
Bar # 281906
*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEYNE ANDERSON, JESUS CASTELLANO, HANNAH MIRZA, KATHLEEN O'BEIRNE, SETH TAYLOR, WILLIAM VAN DER LAAR, MARK WESLEY DUDLEY, RACHEL WESTRICK, JIAJUN XU, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br>       Plaintiffs, <br><br>    v. <br><br>GOOGLE LLC, <br><br>       Defendant. | Case No. 5:25-cv-03268-BLF <br> **Hearing Date:** September 18, 2025, 9:00AM |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

On the Brief:  Aleksandr L. Felstiner

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

SUMMARY OF PLEADED FACTS ...............................................................................2

ARGUMENT...................................................................................................................4

I.     PLAINTIFFS ADEQUATELY PLEADED ALL ELEMENTS OF THEIR TITLE
       VII RETALIATION CLAIM...............................................................................4

       A.     Plaintiffs adequately pleaded protected activity, adverse action, and causal
              connection..................................................................................................4

       B.     Plaintiffs pleaded sufficient facts to support a conclusion that their conduct was
              protected ....................................................................................................4

       C.     Google misrepresents the pleadings and improperly asserts its own facts ............8

II.    PLAINTIFFS ADEQUATELY PLEADED ALL ELEMENTS OF THEIR STATE
       AND LOCAL LAW CLAIMS ...........................................................................11

       A.     Plaintiffs sufficiently pleaded all elements of retaliation under FEHA,
              NYSHRL, NYCHRL, WLAD, and the Seattle Fair Employment Practices
              Ordinance .................................................................................................12

       B.     Plaintiffs sufficiently pleaded political ideology discrimination under the
              Seattle Fair Employment Practices Ordinance .....................................................13

       C.     Plaintiffs adequately pleaded California and New York whistleblower claims....15

       D.     Plaintiffs pleaded the elements of wrongful discharge .......................................15

III.   PLAINTIFFS MAY MAINTAIN THEIR NEW YORK CLAIMS BECAUSE
       GOOGLE'S RETALIATION HAD A DIRECT IMPACT THERE ..............................16

IV.    PLAINTIFFS SUFFICIENTLY PLEADED CLASS CLAIMS UNDER RULE 23........18

       A.     Plaintiffs pleaded numerosity and adequacy of Class Representatives to
              satisfy Rule 23(a) .......................................................................................18

       B.     The Complaint satisfies Rule 23(b)(3), as well As Rule 23(b)(1)(A) and
              23(b)(2)....................................................................................................20

CONCLUSION...............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Timber & Trading Co. v. First Nat. Bank of Or.*,
  690 F.2d 781 (9th Cir. 1982) ........................................................................19
*Bright v. Coca Cola Refreshements* [sic] *USA*,
  No. 12 Civ. 234 (BMC), 2014 WL 5587349 (E.D.N.Y. Nov. 3, 2014)..................11
*Buchanan v. Genentech*,
  No. 09-01454 CW, 2010 WL 3448583 (N.D. Cal. Aug. 31, 2010)....................7,11
*Buchanan v. Hilton Garden Inn Westbury*,
  No. 06-CV-3085 RJD (LB), 2008 WL 858986 (E.D.N.Y. Mar. 31, 2008) .............7
*Bush v. Vaco Technology Services*,
  No. 17-CV-05605-BLF, 2019 WL 3290654 (N.D. Cal. July 22, 2019) .................21
*Collison v. WANDRD*,
  737 F. Supp. 3d 231 (S.D.N.Y. 2024).................................................................15
*Coville v. Cobarc Servs.*,
  73 Wash. App. 433 (1994)........................................................................12,13
*Doe 1 v. Univ. of San Francisco*,
  685 F. Supp. 3d 882 (N.D. Cal. 2023).................................................................4
*EEOC v. Kovacevich "5" Farms*,
  No. CV–F–06–165, 2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ........................19
*Elgindy v. AGA Serv. Co.*,
  No. 20-CV-06304-JST, 2024 WL 4634060 (N.D. Cal. 2024) ...............................19
*Emeldi v. Univ. of Or.*,
  698 F.3d 715 (9th Cir. 2012) ............................................................................4
*Evans v. Kansas City, Mo. Sch. Dist.*,
  65 F.3d 98 (8th Cir. 1995) ...............................................................................7
*Gen. Tel. Co. of the Nw. v. EEOC*,
  446 U.S. 318 (1980) ......................................................................................19
*Grant v. Hazelett Strip-Casting Corp.*,
  880 F.2d 1564 (2d Cir. 1989) ...........................................................................6
*Hochstadt v. Worcester Found. for Experimental Biology*,
  545 F.2d 222 (1st Cir. 1976)..........................................................................5,6
*Hoffman v. Parade Publ'ns.*,
  15 N.Y.3d 285 (2010)................................................................................16,17
*Jackson v. St. Joseph State Hosp.*,
  No. 84-6127-CV-SJ-6, 1986 WL 22278 (W.D. Mo. Nov. 14, 1986) ......................7
*Jefferies v. Harris Cnty. Cmty. Action Ass'n*,
  615 F.2d 1025 (5th Cir.1980) ...........................................................................7
*Laughlin v. Metro. Wash. Airports Auth.*,
  149 F.3d 253 (4th Cir. 1998) ...........................................................................7
*Liu v. UC Berkeley/UC Regents*,
  No. 15-CV-04958-PJH, 2017 WL 412639 (N.D. Cal. Jan. 31, 2017) ...................11

*Magnuson v Newman*,
No. 10 CIV. 6211 JMF, 2013 WL 5942338 (S.D.N.Y. Nov. 6, 2013) ....................................17
*Matima v. Celli*,
228 F.3d 68 (2d Cir. 2000) ...............................................................................................7,11
*O'Day v. McDonnell Douglas Helicopter Co.*,
79 F.3d 756 (9th Cir. 1996) ...........................................................................................6,7,11
*Peterson v. Nat'l Sec. Techs.*,
No. 12-CV-5025-TOR, 2013 WL 1861895 (E.D. Wash. May 2, 2013) ....................................6
*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ...................................................................................18,19
*Rhodes v. Chertoff*,
No. CIV.A. 04-1715 RMC, 2005 WL 3273566 (D.D.C. Aug. 4, 2005) ....................................7
*Roberts v. Dudley*,
140 Wash. 2d 58 (2000) ...............................................................................................15,16
*Selberg v. United Pac. Ins. Co.*,
45 Wash. App. 469 (1986)..............................................................................................12,13
*Silver v. KCA*,
586 F.2d 138 (9th Cir. 1978) .............................................................................................5,7
*Stewart v. Prometric*,
No. C19-1362JLR, 2021 WL 124316 (W.D. Wash. Jan. 13, 2021) .......................................13
*Strother v. S. Cal. Permanente Med. Grp.*,
79 F.3d 859 (9th Cir. 1996) ..................................................................................................12
*Syeed v. Bloomberg L.P.*,
No. 1:20-CV-7464-GHW, 2022 WL 3447987 (S.D.N.Y. Aug. 17, 2022) ........................12,16
*Syeed v. Bloomberg*,
No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024) ......................................................16
*United States ex rel. Lupo v. Quality Assurance Servs.*,
242 F. Supp. 3d 1020 (S.D. Cal. 2017) ................................................................................15
*Williams v. N.Y.C. Hous. Auth.*,
61 A.D. 3d 62 (2009)......................................................................................................16,17
*Woodsford v. Friendly Ford*,
No. 2:10-CV-01996-MMD, 2012 WL 2521041 (D. Nev. June 27, 2012).................................6
*Wrighten v. Metro. Hosps.*,
726 F.2d 1346 (9th Cir. 1984) ............................................................................................5,6

## Statutes

Cal. Lab. Code § 1102.5(b) .....................................................................................................15
New York Lab. Law § 740(2)(a) ..............................................................................................15
Seattle Municipal Code § 14.04.030.....................................................................................13,14
Wash. Rev. Code § 49.60.330 ..................................................................................................13

## Rules

FRCP Rule 23(a)......................................................................................................................18
FRCP Rule 23(b)..................................................................................................................20,21

**Other Authorities**

EEOC Enforcement Guidance On Retaliation and Related Issues,
   Sec. II(A)(2)(b), 2016 WL 4688886 (2016) ............................................................................6

Plaintiffs' Memo in Opposition 5:25-cv-03268-BLF

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEYNE ANDERSON, JESUS CASTELLANO, HANNAH MIRZA, KATHLEEN O'BEIRNE, SETH TAYLOR, WILLIAM VAN DER LAAR, MARK WESLEY DUDLEY, RACHEL WESTRICK, JIAJUN XU, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 5:25-cv-03268-BLF |

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Plaintiffs file this Opposition in response to Defendant GOOGLE LLC's Memorandum of Law in Support of its Motion to Dismiss (ECF No. 22) (hereinafter "Def. Mem."). Plaintiffs sufficiently pleaded all federal, state, and local claims. Google does not dispute that Plaintiffs sufficiently pleaded their participation in protests at Google offices in Sunnyvale, CA and New York City on April 16, 2024. Nor does Google dispute that Plaintiffs adequately pleaded causation – *i.e.*, that Google fired Plaintiffs and putative class members for participation (or perceived participation) in those protests.

Google's primary argument is that Plaintiffs' oppositional conduct exceeded the bounds of protected activity under the various laws Plaintiffs invoke. Whether oppositional conduct was so egregious as to become unprotected is a "context- and fact-specific inquiry," as the courts and the EEOC have long held. Google's own brief demonstrates that there are significant disputes of

fact concerning what occurred at these two protests. The pleadings allege no disruption to work and no interference with job performance. Google apparently disagrees with those factual assertions. Google wants the Court to read the pleadings, disbelieve them at Google's request, and hold that Plaintiff's oppositional conduct was unprotected <u>as a matter of law</u>. Google also asks the Court to extend this preemptory, blanket condemnation to every single named Plaintiff and putative class member, disregarding the material differences in their actions on the day of the protest.

To persuade the Court to jump the gun, Google improperly misrepresents the pleadings and adds its own inferences and explanations, painting a picture materially different from the story Plaintiffs pleaded. While Google is certainly permitted to do this in responsive pleadings, at trial, and perhaps at summary judgment, it may not misrepresent the Complaint or demand the Court adopt its version of events on a Motion to Dismiss. The Court should decline Google's invitation to usurp the role of the fact-finder, and deny Google's Motion to Dismiss in full.

## SUMMARY OF PLEADED FACTS

The full facts are set forth in Plaintiffs' First Amendment Complaint (hereinafter "Complaint"). In summary, on April 16, 2024, Plaintiffs participated in protests at Google offices in Sunnyvale and New York City. Participants (including the named Plaintiffs) were Google employees. In Sunnyvale, the participants entered an empty area on the 6th floor, displayed signs, read a list of demands (broadcast over live stream), and took photos. They did not disrupt any other employee's work. A smaller group entered the empty office of Google Cloud CEO Thomas Kurian and wrote the demands on his white board. About 45 minutes later, Google security arrived and directed the participants to leave. All but five employees complied

with the order. The remaining five stayed in the empty office until Google placed them on administrative leave and had them arrested. *See* Compl. ¶¶ 32-46.

In New York City, a group of participants gathered in the "Commons" area, a general-purpose space open to all employees that was not private or designated exclusively for work. A smaller group of 8 participants sat down on the floor, with signs, read their demands, hung a banner, and chanted. The rest of the participants did not sit down. They either remained in the area, handing out leaflets, or went to other areas of the Commons to hand out leaflets. Although the area was busy, they took care not to disrupt the flow of any traffic or interfere with anyone's work. After a request from security, they took down the banner and stopped chanting. When security revoked their consent to be in the area, all but four participants left. Those four participants remained seated on the ground, without disrupting traffic or other employees' work, until Google placed them on administrative leave and had them arrested. A group of counter-protestors was not asked to leave. *See* Compl. ¶¶ 47-63.

Google fired all the named Plaintiffs and putative Class Members, giving their participation in the "sit-in" as the reason. Google accused the nine arrestees of "trespass," and the other fired employees of "occupying Google workspace without permission for non-work related activity, i.e. participating in a sit-in." Counter-protestors were not discharged or disciplined. *See* Compl. ¶¶ 64-67.

Plaintiffs' Memo in Opposition 5:25-cv-03268-BLF

## ARGUMENT

### I. PLAINTIFFS ADEQUATELY PLEADED ALL ELEMENTS OF THEIR TITLE VII RETALIATION CLAIM

#### A. PLAINTIFFS ADEQUATELY PLEADED PROTECTED ACTIVITY, ADVERSE ACTION, AND CAUSAL CONNECTION

"To plead a *prima facie* case of retaliation, the plaintiff need only make a minimal threshold showing of retaliation." *Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 902 (N.D. Cal. 2023) (citing *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012)). Plaintiffs adequately pleaded all three elements of a *prima facie* retaliation claim: (1) protected activity; (2) adverse action; and (3) causal link. *Emeldi*, 698 F.3d at 724.

Plaintiffs allege that they engaged in a protest against discriminatory conduct by their employer. Compl. ¶¶ 22, 23 (published demand that Google "Stop the harassment, intimidation, bullying, silencing, and censorship of Palestinian, Arab, Muslim Googlers"), 31 (leaflet calling on Google to "stop the harassment, intimidation, and censorship of Palestinian, Arab, and Muslim Googlers"); 35 (broadcast of anti-discrimination demand over livestream); 52 (reading of demands out loud during protest). Plaintiffs also allege that the protest was part of a sequence of prior actions opposing Google's discriminatory conduct. Compl. ¶¶ 26-30.

Plaintiffs assert that they were discharged from employment (adverse action), and that Google fired them because of their participation (or perceived participation) in the protest. Compl. ¶¶ 64-66. Google does not challenge the sufficiency of the pleading on any of these points. *See* Def. Mem. at 7-10.

#### B. PLAINTIFFS PLEADED SUFFICIENT FACTS TO SUPPORT A CONCLUSION THAT THEIR CONDUCT WAS PROTECTED

Google's only argument is that the conduct of every single Plaintiff was *per se* unreasonable, and thus *per se* unprotected, such that no Plaintiff can make out a retaliation claim.

This argument finds no support in case law. Whatever courts may say in general about the limits of protection afforded to oppositional conduct, the law nevertheless requires a specific analysis of the employees' conduct and the surrounding context to determine whether, under the circumstances, the opposition exceeded the bounds of "protected activity."

Google improperly asks the Court to make those factual findings at the pleading stage. Even worse, Google aggressively thumbs the scale when it characterizes Plaintiffs' conduct, misrepresenting the pleadings and drawing every inference in its favor – the exact opposite of what is supposed to happen on a Motion to Dismiss.

The Ninth Circuit applies a "balancing test" when assessing the boundaries of protected oppositional conduct under Title VII and related statutes. *See Wrighten v. Metro. Hosps.*, 726 F.2d 1346, 1355 (9th Cir. 1984) ("a court must balance the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel") (internal quotations omitted).

The Circuit adopted this test from the First Circuit's 1976 decision in *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222 (1st Cir. 1976), and has since reiterated in various ways that oppositional conduct must be "reasonable" in order to constitute "protected activity" under Title VII. *See Wrighten*, 726 F.2d at 1355 (adopting *Hochstadt* balancing test); *Silver v. KCA*, 586 F.2d 138, 141 (9th Cir. 1978) (requiring that oppositional conduct be "reasonable in view of the employer's interest in maintaining a harmonious and efficient operation").

The balancing test is to be applied with care. "*Hochstadt* must be read narrowly lest legitimate activism by employees asserting civil rights be chilled." *Wrighten*, 726 F.2d at 1355.

Plaintiffs' Memo in Opposition 5:25-cv-03268-BLF

Courts in this Circuit have unanimously maintained that the "reasonableness" of an employee's opposition is a factual question dependent upon the specific context in which the opposition occurred. *See Peterson v. Nat'l Sec. Techs.*, No. 12-CV-5025-TOR, 2013 WL 1861895, at *2 (E.D. Wash. May 2, 2013) (finding genuine issue of fact as to whether plaintiff's conduct "rose to [the] level" of "unreasonably interfer[ing]" with employer interests); *Woodsford v. Friendly Ford*, No. 2:10-CV-01996-MMD, 2012 WL 2521041, at *10 (D. Nev. June 27, 2012) (finding genuine issue of material fact as to whether plaintiff's conduct was "so disruptive in nature" as to lose protection); *Wrighten*, 726 F.2d at 1355 (describing a lower court's conclusion that an employee's conducted exceeded the protections of Title VII as "essentially a factual one"); *see also Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1570 (2d Cir. 1989) ("whether plaintiff went too far in his activities and general deportment is essentially a factual conclusion") (internal quotations omitted).

A fact-specific inquiry into the circumstances surrounding oppositional conduct is consistent with the overall "balancing test," insofar as a court can hardly balance interests without understanding what those interests were and how they may have been advanced or impinged. The Equal Employment Opportunity Commission's guidance on oppositional conduct similarly reflects the need for a case-by-case factual analysis. *See* EEOC Enforcement Guidance On Retaliation and Related Issues, Sec. II(A)(2)(b), 2016 WL 4688886, at *9 (2016) ("whether the manner of opposition is unreasonable is a context- and fact-specific inquiry").

*Hochstadt* itself, the original source of the balancing test, explicitly directs that "in each case" the "requirements of the job and the tolerable limits of conduct in a particular setting must be explored." 545 F.2d at 231. *O'Day v. McDonnell Douglas Helicopter Co.*, the ADEA case heavily replied upon by Google, also reiterates that oppositional conduct must be "reasonable <u>in</u>

light of the circumstances." 79 F.3d 756, 763 (9th Cir. 1996) (quoting *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir.1980)) (emphasis added).

The importance of the specific factual circumstances surrounding the oppositional conduct may explain why every single case Google cites in support of its position was decided at the summary judgment stage or later *See O'Day*, 79 F.3d at 758 (summary judgment); *Silver*, 586 F.2d at 140 (trial); *Buchanan v. Genentech*, No. 09-01454 CW, 2010 WL 3448583, at *1 (N.D. Cal. Aug. 31, 2010) (summary judgment); *Buchanan v. Hilton Garden Inn Westbury*, No. 06CV3085RJD(LB), 2008 WL 858986, at *1 (E.D.N.Y. Mar. 31, 2008) (summary judgment); *Rhodes v. Chertoff*, No. CIV.A. 04-1715 RMC, 2005 WL 3273566, at *1 (D.D.C. Aug. 4, 2005) (summary judgment); *Matima v. Celli*, 228 F.3d 68, 71 (2d Cir. 2000) (trial); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 256 (4th Cir. 1998) (summary judgment); *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995) (trial); *Jackson v. St. Joseph State Hosp.*, No. 84-6127-CV-SJ-6, 1986 WL 22278, at *2 (W.D. Mo. Nov. 14, 1986), *aff'd*, 840 F.2d 1387 (8th Cir. 1988) (trial). The courts in those cases had an opportunity to develop the factual record and determine whether, under the specific circumstances, the employee's conduct was protected. The same process should occur here.

There may be scenarios in which a court could conclude based on pleadings alone that some form of purportedly oppositional conduct was so facially egregious that no set of factual circumstances could conceivably render it protected – *e.g.*, theft or arson. Plaintiffs pleaded nothing so outrageous. The Complaint describes a peaceful, non-disruptive protest aimed at publicizing discriminatory conduct. Plaintiffs pleaded that the vast majority of participants complied with all orders from Google security, including orders to disperse. The small number of employees who declined to follow the dispersal order remained peaceful and non-disruptive until

Plaintiffs' Memo in Opposition 5:25-cv-03268-BLF

Google decided to place them on administrative leave and have them arrested. Plaintiffs also pleaded that Google's unnecessary security response, not Plaintiff's conduct, was responsible for any disruption of work that may have occurred. Taking these facts in the light most favorable to Plaintiffs, a reasonable factfinder could determine that Plaintiffs' oppositional conduct was protected.

## C.    GOOGLE MISREPRESENTS THE PLEADINGS AND IMPROPERLY ASSERTS ITS OWN FACTS

Google does not describe the facts in the light most favorable to Plaintiffs. To the contrary, Google repeatedly misrepresents the pleadings, exaggerates, and improperly offers its own facts and explanations alongside a liberal dose of editorializing.

Plaintiffs will not catalogue every instance, but will offer some examples. At multiple points Google asserts that "Plaintiffs in San Francisco [sic] and New York" disregarded requests from security to relocate. *See* Def. Mem. at 8, 9. As Plaintiffs pleaded, the large majority of participants in both locations (including four of the named Plaintiffs) complied with the directives of Google security. In Sunnyvale, 15-20 participants entered lawfully, and all but five promptly left the area upon security's demand to relocate. Plaintiffs Mirza, Van Der Laar, and Xu were among those who left, while Plaintiffs Anderson, O'Bierne, Dudley, and Westrick stayed. *See* ¶¶ 38-40. In New York, the majority of participants left the area when security revoked their consent to be there, with only four staying seated on the ground. Plaintiff Taylor left, while Plaintiff Castellano stayed. *See* ¶¶ 60-61.

Google's refrain about the length of the actions – *see* Def. Mem. at 4 ("entire business day"); 9 ("day-long performance" and "day-long, multi-office campaign"); 10 ("day-long office occupation") – disregards the explicitly pleaded timetable of events. Only the nine employees the

Complaint describes as "sitters" stayed on premises or in the relevant area for substantial periods of time. In Sunnyvale the non-sitters were gone in 45 minutes. *See* ¶¶ 34-38. In New York, the majority were gone after approximately 80 minutes. *See* ¶¶ 48, 60.

Google includes these misrepresentations in an attempt to combine and homogenize the conduct of all named Plaintiffs (and by extension, all the employees Google decided to fire) so it can apportion "misconduct" equally among everyone it has deemed culpable. Plaintiffs trust that the Court will review the Complaint itself and disregard Google's invitation to paint everyone with the same brush. There are meaningful distinctions in the conduct of the different named Plaintiffs. Those distinctions matter because Google ultimately must show that the oppositional conduct of each named Plaintiff was so unreasonable as to lose protection.

The supposed summary of facts in Google's brief contains many other outright misrepresentations, as well as several of Google's own factual assertions that Google either tries to disguise as citations to the Complaint or does not try to disguise at all. For example, Google asserts the motivations for the actions of its own security forces, and takes the liberty of explaining the motivations of law enforcement as well. *See* Def. Mem. at 4 ("seeking to restore a modicum of order;" "local police were summoned because of the continued insubordination"); 5 ("security formally revoked…due to ongoing disruption"); 8 (security acted "to prevent escalation"); 9 ("security and – *ultimately* – law enforcement felt compelled to intervene"). Plaintiffs pleaded nothing about the motivations of Google security or law enforcement, nor did Plaintiffs plead anything about the necessity of intervention. Plaintiffs maintain that "[n]one of the conduct by participants in the NYC Action or SVL Action was significantly disruptive to Defendant's operations," and that "[a]ny disruption manufactured by Defendant's security personnel was the independent decision of Defendant." ¶ 82. Google may disagree, and it is free

Plaintiffs' Memo in Opposition 5:25-cv-03268-BLF

to express that disagreement in its Answer or subsequent stages of this proceeding, but it is not proper for Google to assert its own facts on a Motion to Dismiss.

This principle extends equally to Google's constant description of the actions as "disruptive" or "disrupting," which directly contradicts the pleadings. *See* Def. Mem. at 3-5, 9-10. Plaintiffs did not plead, and do not concede, that their conduct caused any significant disruption. Google seems to disagree, and it may make that point at the appropriate moment, but may not represent to the Court that Plaintiffs have pleaded or conceded something that they haven't.

Google plays fast and loose with the counter-protestors as well. Plaintiffs pleaded simply that "four to six counter-protestors stood nearby" in the NYC "Commons" space, stayed in the area for at least an hour, "talked," "laughed," and "occasionally became agitated and yelled at Action participants." ¶ 57. Google characterizes the counter-protesters as "nearby employees," as if they were actively engaged in work nearby. Google also asserts that the counter-protestors "became 'agitated' by the outbursts and misconduct." Def. Mem. at 4-5. Plaintiffs pleaded only that the counter-protestors "became agitated." Google infers (and asks the Court to infer) that Plaintiffs provoked them or engaged in some kind of "misconduct" to agitate them.

Finally, Google cannot resist giving the Court of teaser of "still more egregious misconduct," that it claims Plaintiffs omitted from the Complaint. Def. Mem. at 10. Google similarly claims that its inflammatory description of the pleaded facts "represents only a fraction of the chaos that unfolded," and alludes to "other incidents – some unsanitary." Def. Mem. at 5. Google should pick a lane: either answer the Complaint and present whatever facts it considers relevant, or move to dismiss on the pleadings themselves. Dropping hints about "still more egregious misconduct" and smearing Plaintiffs with vague accusations is inappropriate.

In sum, Google offers its own alternate version of the story, including its own inferences about the necessity of its security actions, the degree of disruption, the prevailing workplace norms, etc. It also concludes that the Ninth Circuit's balancing test weighs in its favor, as a matter of law, with respect to every named Plaintiff (and putative class member).

The finder of fact will ultimately make a "factual conclusion" (*Grant*, 880 F.2d at 1570) about whether Plaintiffs' oppositional conduct was "reasonable in light of the circumstances." *O'Day*, 79 F.3d at 763. Because the Complaint alleges facts from which a reasonable fact-finder could determine that Plaintiffs' opposition fell within Title VII's protection, the Court must deny Google's Motion to Dismiss. The Court should disregard Google's generous preview of its closing arguments and focus on the sufficiency of the pleaded allegations.

## II.    PLAINTIFFS ADEQUATELY PLEADED ALL ELEMENTS OF THEIR STATE AND LOCAL LAW CLAIMS

Google's rationale for dismissal of the state and local claims mirrors its argument on Title VII. *See* Def. Mem. at 11-12. Again, Google relies entirely on cases decided at the summary judgment stage or later, which is misleading. *See Matima*, 228 F.3d at 71 (trial); *Bright v. Coca Cola Refreshments* [sic] *USA*, No. 12 Civ. 234 (BMC), 2014 WL 5587349, at *1 (E.D.N.Y. Nov. 3, 2014) (summary judgment); *Genentech*, 2010 WL 3448583, at *1 (summary judgment); *Liu v. UC Berkeley/UC Regents*, No. 15-CV-04958-PJH, 2017 WL 412639, at *1 (N.D. Cal. Jan. 31, 2017) (summary judgment). Courts do not routinely dismiss state and local retaliation claims at the pleading stage due to some *per se* "unreasonableness" or "excessiveness" of an employee's oppositional conduct. As with Title VII, the boundaries of protected opposition under state and local law depend on the specific facts and circumstances. Employees need only plead facts from

which a reasonable fact-finder could determine that the opposition was protected. For reasons stated below, Plaintiffs have done so here.

      **A.    PLAINTIFFS SUFFICIENTLY PLEADED ALL ELEMENTS OF RETALIATION UNDER FEHA, NYSHRL, NYCHRL, WLAD, AND THE SEATTLE FAIR EMPLOYMENT PRACTICES ORDINANCE**

Although the various anti-retaliation statutes raised in this litigation use different language, and apply different standards on certain elements, they all require employees to plead some form of protected activity, retaliatory action by the employer, and a causal connection.

The FEHA pleading standard appears to mimic Title VII. *See Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 868 (9th Cir. 1996). Google has not established that an employee must actually plead the "reasonableness" of their opposition to make out a FEHA claim.

Following the 2019 amendments to the New York State Human Rights Law ("NYSHRL"), New York courts now interpret NYSHRL and New York City Human Rights Law ("NYCHRL") claims according to the same relaxed requirements, *i.e.*, more broadly than Title VII. See *Syeed v. Bloomberg L.P.*, No. 1:20-CV-7464-GHW, 2022 WL 3447987, at *7 (S.D.N.Y. Aug. 17, 2022).

Retaliation claimants under the Washington Law Against Discrimination ("WLAD") must make pleadings similar to Title VII claimants, but Washington courts do not evaluate oppositional conduct in the same way as federal courts interpreting Title VII. Rather, the courts consider whether "the employee's protest so interferes with job performance that he or she is rendered ineffectual in his or her employed position." *Coville v. Cobarc Servs.*, 73 Wash. App. 433, 439 (1994) (quoting *Selberg v. United Pac. Ins. Co.*, 45 Wash. App. 469, 472 (1986)). "[M]ere proof that the opposition activity is 'disloyal' to the employer is insufficient by itself to

prove a legitimate reason for discharge." *Id.* The degree of interference with job performance is a factual question dependent not on the employer's assertions but on "objective evidence" showing that the oppositional conduct was "so excessive as to render [the employee] unfit for employment." *Stewart v. Prometric*, No. C19-1362JLR, 2021 WL 124316, at *9 (W.D. Wash. Jan. 13, 2021).

The Seattle Fair Employment Practices Ordinance ("FEPO") is expressly authorized in the WLAD as a form of parallel local regulation. *See* Wash. Rev. Code § 49.60.330. Absent contrary authority, the Court may reasonably presume that Washington courts review such local claims under the same WLAD standard described in *Coville*, *Selberg*, and *Stewart*.

Plaintiffs have adequately pleaded claims under these state and local anti-retaliation laws, for the same reason that they adequately pleaded claims under Title VII. *See* Section I(A)-(B), *supra*. If anything, the state and local pleading standards are more relaxed.

### B. PLAINTIFFS SUFFICIENTLY PLEADED POLITICAL IDEOLOGY DISCRIMINATION UNDER THE SEATTLE FAIR EMPLOYMENT PRACTICES ORDINANCE

The Seattle FEPO prohibits discrimination against employees on the basis of their "political ideology." Seattle Municipal Code ("SMC") § 14.04.030. "Political ideology" means "any idea or belief, or coordinated body of ideas or beliefs, relating to the purpose, conduct, organization, function, or basis of government and related institutions and activities," and "includes conduct, reasonably related to political ideology, which does not interfere with job performance." *Id.* Participants in the April 16, 2024 action criticized Israeli government and military operations in Gaza, and criticized Google for "providing material support" and "doing business with" the "Israeli apartheid government." Comp. ¶ 23. These are fairly read as criticisms "related to the purpose, conduct, organization, function, or basis of government and

related institutions and activities." SMC § 14.04.030. The conduct engaged in by Plaintiff Taylor and Seattle-based Class Members is therefore fairly characterized as "conduct, reasonably related to political ideology." *Id.* Plaintiffs also alleged that "[n]one of the conduct by Plaintiff Taylor and Seattle-based Class Members was significantly disruptive to Defendant's operations" and "[a]ny disruption manufactured by Defendant's security personnel was the independent decision of Defendant." Compl. ¶¶ 120-121. A reasonable factfinder could conclude based on these pleadings that Plaintiff Taylor's conduct did not "interfere with job performance." Plaintiffs also pleaded that Google fired Plaintiff Taylor for engaging in the protest, which satisfies the other two elements (adverse action and causal link). This is sufficient to state a claim under FEPO.

Google nevertheless argues that "[b]y definition, conduct that disrupts the work environment, agitates coworkers, and defies managerial directives 'interfere[s] with job performance' and therefore falls outside the statute's protective scope." Def. Mem. at 13. Once again Google attempts to paint every participant with the same brush, asks the Court to accept the moving party's version of the story at the pleading stage, and urges the Court to decide factual questions as a matter of law before the parties have presented any evidence. Plaintiffs did not allege disruption to the work environment and did not allege that any "coworkers" were agitated by the protest – to the contrary. Plaintiffs did not allege that Plaintiff Taylor disobeyed any "managerial directive." Plaintiff Taylor was not among the small group of four employees who remained seated in the NYC commons after security ordered participants to leave. He left with the other participants, when directed to do so. *See* Compl. ¶¶ 60-61.

### C.    PLAINTIFFS ADEQUATELY PLEADED CALIFORNIA AND NEW YORK WHISTLEBLOWER CLAIMS

The California and New York whistleblower statutes both require plaintiffs to plead protected activity, adverse action, and a causal link. *See United States ex rel. Lupo v. Quality Assurance Servs.*, 242 F. Supp. 3d 1020, 1029 (S.D. Cal. 2017) (CA whistleblower pleading standard); *Collison v. WANDRD*, 737 F. Supp. 3d 231, 245–46 (S.D.N.Y. 2024) (NY whistleblower pleading standard).

Both California and New York protect internal complaints or publication concerning potential illegal conduct by the employer. *See* Cal. Lab. Code § 1102.5(b) (prohibiting retaliation for disclosures "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance"); New York Lab. Law ("NYLL") § 740(2)(a) (prohibiting retaliation for disclosures to a "supervisor"). Google does not dispute that Plaintiffs' pleadings meet this basic definition. Google claims that Plaintiffs' conduct exceeded the boundaries of protected activity under these whistleblower statutes. Assuming courts would indeed impose some limitation on the type of conduct that receives protection under these whistleblower laws, the courts' analysis would still depend on the specific factual circumstances surrounding the conduct (as in Title VII and state/local anti-retaliation laws). Google offers no authority to support dismissing the claims at the pleading stage.

### D.    PLAINTIFFS PLEADED THE ELEMENTS OF WRONGFUL DISCHARGE

Washington courts recognize a wrongful discharge tort claim based on the public policy against retaliatory discharge of employees who complain about discrimination and/or engage in whistleblowing. *See Roberts v. Dudley*, 140 Wash. 2d 58, 71 (2000). Employees must plead that

- 15 -

Plaintiffs' Memo in Opposition 5:25-cv-03268-BLF

their conduct caused the dismissal. *Id.* at 64-65. Employers then have an opportunity to present "an overriding justification for the dismissal." *Id.* at 71.

Per the Complaint, Plaintiffs accused Google of discriminating against Palestinian, Muslim, and Arab employees, and of "aiding and abetting Israel's genocide," both of which are fairly construed as accusations of illegal conduct. Compl. ¶ 136. Plaintiffs alleged that Plaintiff Anderson, Plaintiff Taylor, and the Washington-based Class Members did not "significantly disrupt" Google's operations, and that Google was responsible for any disruption caused. ¶ 138. Accordingly, Plaintiffs have alleged sufficient facts to state a plausible claim that Google's discharge decisions contradicted public policy and that Google lacked an "overriding justification."

## III. PLAINTIFFS MAY MAINTAIN THEIR NEW YORK CLAIMS BECAUSE GOOGLE'S RETALIATION HAD A DIRECT IMPACT THERE

New York law normally requires, at minimum, that an employee work in New York state (or, for purposes of New York City law, within the city), and that an employee show that the discriminatory or retaliatory conduct "had an impact" within the jurisdiction. *See Hoffman v. Parade Publ'ns.*, 15 N.Y.3d 285, 289 (2010). Protection was recently extended to nonresidents proactively seeking city- or state-based employment. *See Syeed v. Bloomberg*, No. 22-1251, 2024 WL 2813563, at *1 (2d Cir. June 3, 2024).

After the 2019 amendments, NYSHRL and NYCHRL claims receive the same analysis, focused on whether an employer's retaliation was "reasonably likely to deter a person from engaging in…protected activity." *Syeed*, 2022 WL 3447987, at *7. Courts are counseled to assess an employer's retaliatory conduct "with a keen sense of workplace realities, of the fact that the 'chilling effect' of particular conduct is context-dependent, and of the fact that a jury is

generally best suited to evaluate the impact of retaliatory conduct in light of those realities." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 71 (2009).

The instant case is unusual, in that a group of employees, some based in New York, some not, engaged in a protest on Google premises in New York City. *See* Compl. ¶ 97. Plaintiffs Taylor and Castellano were not based in New York, but were present there, identifiable as Google employees. They were visible to Google's other employees on premises as participants in the action, alongside New York-based class members. They were then fired along with New York-based class members for participating. ¶ 98. A reasonable factfinder could determine that such retaliation against Plaintiffs and New York-based class members, for a protest on employer premises in New York, "had an impact" on New York employees, in New York. That is the "chilling effect" referenced by the *Williams* court. This is not a case of an out-of-state employee "coming to New York" to sue their employer for a harm (*e.g.* discrimination or wage theft) that occurred outside the state. The harm – the "chilling effect" on other employees, the conduct "reasonably likely to deter a person from engaging in protected activity" – was caused by a New York employer and felt by its employees in New York.

Unlike NYSHRL/NYCHRL claims, the New York whistleblower claim is not analyzed under *Hoffman*'s "impact requirement." *See Magnuson v Newman*, No. 10 CIV. 6211 JMF, 2013 WL 5942338, at *2 (S.D.N.Y. Nov. 6, 2013). Whistleblower claims are fundamentally different from discrimination claims or pay-related NYLL claims (*e.g.* minimum wage). Research revealed no whistleblower cases involving a non-resident employee of a New York employer who engaged in public whistleblowing on employer premises within the state.

Should the Court grant Google's motion to dismiss the New York state or city claims due to the absence of a named Plaintiff based in New York, Plaintiffs request that the Court dismiss without prejudice, with leave to amend.

## IV.    PLAINTIFFS SUFFICIENTLY PLEADED CLASS CLAIMS UNDER RULE 23

### A.    PLAINTIFFS PLEADED NUMEROSITY AND ADEQUACY OF CLASS REPRESENTATIVES TO SATISFY RULE 23(A)

Google challenges the sufficiency of the pleadings under Rule 23(a) based on claimed defects in numerosity and the adequacy of class representatives for certain causes of action. *See* Def. Mem. at 17-19. The total number of people Google fired for participation in the Sunnyvale and New York actions is unknown to Plaintiffs at this time (*see* Compl. ¶ 70). However, taking the pleadings in the light most favorable to Plaintiffs, a reasonable factfinder could determine that the putative class is numerous enough to satisfy Rule 23(a)(1). Fifteen to twenty participants entered the building in Sunnyvale, and all had their badges scanned by Google security, which can be reasonably inferred as a predicate to disciplinary action against them. ¶¶ 33, 39. Eight class members sat down on the floor in New York, others leafleted on the 10th floor, others leafletted on the 9th and 8th floors, and others remained on the 10th floor to de-escalate any conflicts and communicate with security. ¶¶ 49-51. Again, security photographed the badges of participants, reasonably inferable as a predicate to discipline. Plaintiffs allege that Google fired other class members besides the seven named Plaintiffs who attended the Sunnyvale action and the two that attended in New York.

Taking the pleadings all together, the Complaint plausibly alleges the firing of at least 40-50 people for participation (or perceived participation) in the two actions. Though not as large as most classes, that number is sufficient to satisfy Rule 23(a)(1). "The numerosity requirement is

not tied to any fixed numerical threshold—it 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980)). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Id.* (citing *EEOC v. Kovacevich "5" Farms*, No. CV–F–06–165, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007)). The court in *Rannis* approved a class of 20.

There is no particular need for compulsory subclasses at this stage, as Plaintiffs have not pleaded any facts to indicate the type of conflict of interest that obligates a court to establish subclasses under Rule 23. *See Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2024 WL 4634060 at *5 (N.D. Cal. 2024) (describing "groups of plaintiffs with significantly conflicting interests"). Should the Court determine at a later date that subclasses are appropriate for purposes of managing the action, the Court may evaluate the subclasses at that time and determine whether strict compliance with Rule 23 is required under the circumstances. *See Am. Timber & Trading Co. v. First Nat. Bank of Or.*, 690 F.2d 781, 787 n.5 (9th Cir. 1982) (where subclass appropriate to manage the action, unnecessary to analyze for compliance with numerosity, typicality, commonality, and adequacy of representation).

Plaintiff pleaded sufficient facts to infer that joinder of all class members would be impractical. The Complaint makes clear that class members worked for Google in at least three different states, on opposite sides of the country, and specifically states that "Plaintiffs and Class Members are located across the United States." ¶ 73. "Joinder need not be impossible, as long as potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." *Rannis*, 380 F. App'x at 650. The "litigation hardship or inconvenience" of

joining 40-50 class members from three different states is self-evident, or at least can be fairly inferred.

Google also challenges the adequacy of the class representatives for Counts IV, V, and X (New York state/city claims). As discussed above, the named plaintiffs do have viable New York state/city claims, and thus can serve as class representatives. Should the Court disagree and dismiss or strike class claims for those three counts, Plaintiffs request leave to amend for the same reasons discussed above.

## B.    THE COMPLAINT SATISFIES RULE 23(B)(3), AS WELL AS RULE 23(B)(1)(A) AND 23(B)(2)

Class action plaintiffs must satisfy at least one of the four subdivisions of FRCP Rule 23(b). Plaintiffs need not specifically invoke particular subdivisions and identify which pleaded facts satisfy the requirements of each subdivision invoked. Rather, the Complaint as a whole must satisfy at least one of the subdivisions.

The Complaint includes sufficient allegations to support a conclusion that common questions of law and fact predominate over questions affecting only individual members. FRCP 23(b)(3). Plaintiffs pleaded that all class members participated (or were perceived as participating) in one of two actions that occurred on the same day in two Google offices. Google fired all class members for participation (or perceived participation) in those actions. Google used virtually the same stated reason for all the discharges, with the only distinction drawn between the small number of class members who were arrested, and the rest, who complied with security's directives. *See* Compl. ¶¶ 64-66. In other words, Plaintiffs allege that Google treated all putative class members substantially the same. Although the law requires individual assessment of each employee's oppositional conduct, to determine whether it exceeded the

Plaintiffs' Memo in Opposition 5:25-cv-03268-BLF

boundaries of protected activity, that is not what Google did. Plaintiffs claim that Google chose to fire everyone who participated or was perceived as participating.

Plaintiffs are seeking injunctive relief in addition to money damages. *See* Compl., p. 32 (seeking declaratory relief, reinstatement, injunctive relief to correct, and injunction to restrain future violations). As such, given the pleaded facts, they have satisfied Rule 23(b)(2) and 23(b)(1)(A) as well. In alleging that Google summarily fired all class members for participating in the actions, Plaintiffs sufficiently pleaded that Google "acted…on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FRCP 23(b)(2). If individual class members were to prosecute separate actions, different injunctive relief could be granted in separate actions to correct the same violations of law, or injunctive relief could be granted in one case and denied in another, thereby creating "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." FRCP 23(b)(1)(A).

*Bush v. Vaco Technology Services*, the very first case Google cites to support its assertion that "courts can and should" dispose of class claims at the pleading stage (Def. Mem. at 16), directly undercuts Google's argument. After observing that "dismissing class allegations is rare" at the pleading stage, the *Bush* court dismissed certain class claims specifically because the plaintiff had failed to plead sufficient facts after "numerous opportunities to amend." No. 17-CV-05605-BLF, 2019 WL 3290654, at *6 (N.D. Cal. July 22, 2019). Even then, the court still granted leave to amend, noting that "[i]f a claim or defense is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party." *Id.* at *4.

- 21 -

Plaintiffs do not believe dismissal or striking of any class claims is appropriate at this stage, but should the Court disagree, Plaintiffs request leave to amend.

## CONCLUSION

For the reasons set forth above, Google's Motion to Dismiss should be denied in its entirety. If the Court disagrees as to any element of the Complaint, Plaintiffs request leave to amend.

Dated:     July 25, 2025
           New York, New York

                                        LEVY RATNER, P.C.

                              By:       Aleksandr L. Felstiner
                                        Attorneys for Plaintiffs
                                        80 Eighth Avenue Floor 8
                                        New York, New York 10011
                                        (212) 627-8100
                                        (212) 627-8182 (fax)
                                        afelstiner@levyratner.com