JONES DAY
Aaron L. Agenbroad, Bar No. 242613
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700
Email: alagenbroad@jonesday.com

Liat Yamini, Bar No. 251238
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:     +1.213.489.3939
Facsimile:     +1.213.243.2539
Email:  lyamini@jonesday.com

Wendy C. Butler (*pro hac vice*)
Christian A. Bashi (*pro hac vice*)
250 Vesey Street
New York, NY 10080
Telephone:     +1.212.326.3723
Facsimile:     +1.212.755.7306
Email: wbutler@jonesday.com
Email:  cbashi@jonesday.com

*Attorneys for Defendant Google LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| CHEYNE ANDERSON, JESUS CASTELLANO, HANNAH MIRZA, KATHLEEN O'BEIRNE, SETH TAYLOR, WILLIAM VAN DER LAAR, MARK WESLEY DUDLEY, RACHEL WESTRICK, JIAJUN XU, individually and on behalf of all others similarly situated, | Case No. 25-CV-03268-BLF |
| *Plaintiffs*, | **DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | Date: September 18, 2025 |
| GOOGLE LLC, | Time: 9:00 AM |
| *Defendant*. | Dept.: Courtroom 1 |
| | Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.   THE COURT SHOULD DISMISS COUNT I BECAUSE PLAINTIFFS' UNREASONABLE AND
     DISRUPTIVE BEHAVIOR WAS NOT PROTECTED BY TITLE VII. ....................................... 2

II.  THE COURT SHOULD DISMISS THE REMAINING STATE-LAW CLAIMS. ............................. 5

     A.   The Court Should Decline to Exercise Supplemental Jurisdiction Over the
          Remaining State-Law Claims. ............................................................................ 5

     B.   Alternatively, the Court Should Dismiss the Remaining State-Law Claims for
          Failure to State a Claim. .................................................................................... 5

          1.   The Court Should Dismiss Counts II, III, IV, V, VI, VII, IX, X, and XI
               Because Plaintiffs Did Not Engage in Protected Activity. ......................... 6

          2.   The Court Should Dismiss Count VIII Because Plaintiff Taylor Did Not
               Engage in Protected Activity. ................................................................. 7

          3.   The Court Should Dismiss Count III Because FEHA Preempts Retaliation
               Claims Brought under the San Francisco Police Code. .............................. 8

          4.   The Court Should Dismiss Counts IV, V, and X Because Plaintiffs
               Castellano and Taylor Did Not Live or Work for Google in New York. ........ 8

III. THE COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' CLASS CLAIMS BECAUSE
     PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED COMPLIANCE WITH RULE 23. ..................... 9

     A.   Plaintiffs Do Not Sufficiently Plead Compliance with Rule 23(a) Requirements
          for Any Putative Class or Subclass. ..................................................................... 9

     B.   Plaintiffs Lack an Adequate Class Representative for Counts IV, V, and X. ............. 12

     C.   Plaintiffs Plead No Facts That Satisfy Rule 23(b). .............................................. 13

IV.  THE COURT SHOULD DENY LEAVE TO AMEND. .......................................................... 15

CONCLUSION ................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*,
  2007 WL 1582707 (D. Haw. May 31, 2007) ........................................................................ 2

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................................... 13

*Am. Timber & Trading Co. v. First Nat'l Bank of Or.*,
  690 F.2d 781 (9th Cir. 1982) .............................................................................................. 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 2, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 2, 3

*Castaneda v. Burger King Corp.*,
  264 F.R.D. 557 (N.D. Cal. 2009) ....................................................................................... 11

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ............................................................................................ 15

*Cornwell v. Microsoft Corp.*,
  430 P.3d 229 (Wash. 2018) ................................................................................................... 6

*Cotti v. Pa Chang*,
  2020 WL 2572771 (N.D. Cal. May 21, 2020) ..................................................................... 15

*Coville v. Cobarc Servs., Inc.*,
  869 P.2d 1103 (Wash. Ct. App. 1994) .................................................................................. 6

*Elgindy v. AGA Serv. Co.*,
  2024 WL 4634060 (N.D. Cal. 2024) ................................................................................... 11

*Foman v. Davis*,
  371 U.S. 178 (1962) ........................................................................................................... 15

*Forrest v. Jewish Guild for the Blind*,
  819 N.E.2d 998 (N.Y. 2004) ................................................................................................. 6

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) .................................................................................. 15

*Hanna v. Plumer*,
   380 U.S. 460 (1965) ............................................................................................... 6

*Hoffman v. Parade Pubs.*,
   933 N.E.2d 744 (N.Y. 2010) .................................................................................. 8

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016) ................................................................................. 11

*In re SunEdison, Inc. Secs. Litig.*,
   329 F.R.D. 124 (S.D.N.Y. 2019) .......................................................................... 11

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ................................................................................ 14

*Laughlin v. Metro. Wash. Airports Auth.*,
   149 F.3d 253 (4th Cir. 1998) .................................................................................. 4

*Magnuson v. Newman*,
   2013 WL 5942338 (S.D.N.Y. Nov. 6, 2013) ......................................................... 9

*Matima v. Celli*,
   228 F.3d 68 (2d Cir. 2000) ..................................................................................... 3

*O'Day v. McDonnell Douglas Helicopter Co.*,
   79 F.3d 756 (9th Cir. 1996) ................................................................................. 2, 3

*Phan v. Sargento Foods, Inc.*,
   2021 WL 2224260 (N.D. Cal. June 2, 2021) ....................................................... 14

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .............................................................................. 10

*Roman v. ESB, Inc.*,
   550 F.2d 1343 (4th Cir. 1976) .............................................................................. 11

*Russell v. Dep't of Hum. Rts.*,
   854 P.2d 1087 (Wash. Ct. App. 1993) ................................................................... 6

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) ................................................................................ 12

Defendant Google LLC's Motion to Dismiss
25-CV-03268-BLF

*Selberg v. United Pac. Ins.*,
726 P.2d 468 (Wash. Ct. App. 1986) .................................................................... 6

*Skaf v. Google, LLC*,
No. 23-CV-6029 (S.D.N.Y. July 23, 2025) ......................................................... 11

*Strother v. S. Cal. Permanente Med. Grp.*,
79 F.3d 859 (9th Cir. 1996) .................................................................................. 6

*Syeed v. Bloomberg, L.P.*,
2022 WL 3447987 (S.D.N.Y. Aug. 17, 2022) ...................................................... 6

*Syeed v. Bloomberg L.P.*,
235 N.E.3d 351 (N.Y. 2024) ................................................................................. 8

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016) .............................................................................. 13

*Unicorn Field, Inc. v. Cannon Grp., Inc.*,
60 F.R.D. 217 (S.D.N.Y. 1973) .......................................................................... 10

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .............................................................................. 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .............................................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................... 13

*Williams v. N.Y.C. Hous. Auth.*,
61 A.D.3d 62 (N.Y. App. Div. 2009) .................................................................... 9

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ............................................................................ 14

**RULES**

Civil Local Rule 10-1 ................................................................................................ 15

Federal Rule of Civil Procedure 8 .............................................................................. 6

Federal Rule of Civil Procedure 12 ............................................................................ 2

Federal Rule of Civil Procedure 23 ................................................................... passim

Rule 23(b)(3) ................................................................................................................. 14

**INTRODUCTION**

Plaintiffs' Opposition does nothing to cure the fatal defects that permeate their Amended Complaint. Their sole federal cause of action must be dismissed because the non-conclusory facts in their Amended Complaint establish that their alleged oppositional activity was not protected by Title VII. Plaintiffs try to deflect attention from those facts by raising erroneous arguments, including baselessly accusing Google of misrepresenting their Amended Complaint. But Google did not misrepresent anything—Plaintiffs' Amended Complaint clearly lays out how they engaged in a full-day occupation of two Google locations that involved chanting and hanging banners with divisive political slogans, drew counter-protestors, caused other employees to become agitated, and required intervention by both Google security and the police. Given Plaintiffs' own allegations, there was no need to misrepresent anything; this conduct is unambiguously unprotected.

Because the sole federal claim fails, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state- and local-law claims. But even if the Court retains jurisdiction, those claims fail for similar reasons as the Title VII claim. Although Plaintiffs attempt to argue that the state and local laws have more relaxed standards than Title VII, they provide no legal support for those arguments. And Plaintiffs' egregious conduct would be unprotected even under a more relaxed test.

Finally, Plaintiffs' Opposition fails to salvage their deficient class allegations. While they strain to inflate the size of the class to establish numerosity, Plaintiffs plead no facts establishing that joinder is impracticable. Moreover, and significantly, their Opposition expressly acknowledges "material differences" in the claims of different Plaintiffs and putative class members based on, *inter alia*, location, behaviors, and duration of the sit-in activity. If the Court agrees with Plaintiffs that those differences are indeed "material" to the resolution of their claims, then the nationwide class would need to be divided into subclasses, which would defeat numerosity even if Plaintiffs' claim of additional putative class members is accepted at face value. Their allegations are also fatally defective under Rule 23(b): the claims present no risk of inconsistent obligations under Rule 23(b)(1); the individualized reinstatement and damages they seek are incompatible with the indivisible relief contemplated by Rule 23(b)(2); and the factual and legal variations that Plaintiffs

acknowledge in their Opposition preclude both predominance and superiority under Rule 23(b)(3). For these and other reasons set forth below, the Court should exercise its gatekeeping role and dismiss the Amended Complaint with prejudice.

## ARGUMENT

### I.    THE COURT SHOULD DISMISS COUNT I BECAUSE PLAINTIFFS' UNREASONABLE AND DISRUPTIVE BEHAVIOR WAS NOT PROTECTED BY TITLE VII.

As Google explained in its Motion (at 7), to qualify as "protected activity" under Title VII, an employee's opposition to alleged discrimination must be " 'reasonable in view of the employer's interest in maintaining a harmonious and efficient operation.' " *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (citation omitted). Plaintiffs do not dispute this. (*See* Opp. at 5–7.) Instead, they attempt to avoid dismissal by labeling Google's Motion as premature, improperly relying on conclusory allegations, and trying to deflect attention from the factual allegations in their Amended Complaint by accusing Google of misrepresenting those allegations. Each of Plaintiffs' attempts fails.

Plaintiffs appear unconvinced by their own argument that Google's Motion is premature. Although they argue at length that assessing the reasonableness of oppositional conduct is fact-intensive and cannot be decided on the pleadings, they ultimately "take back" this argument, conceding that "[t]here may be scenarios in which a court could conclude based on pleadings alone that some form of purportedly oppositional conduct was so facially egregious that no set of factual circumstances could conceivably render it protected." (*Id*. at 7.) This concession is hardly surprising given the Supreme Court's clear pronouncement that the same pleading requirements apply in "all civil actions," regardless of the nature of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009); *see also Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*, 2007 WL 1582707, at *2 (D. Haw. May 31, 2007) ("To claim that a fact-intensive inquiry is not permitted under Fed. R. Civ. P. 12(b)(6) is misleading.").

Plaintiffs next argue that dismissal is precluded by the Amended Complaint's allegation that "none of the conduct . . . was significantly disruptive." (Opp. at 9.) But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007). *Twombly* instructs that the Court must rely on *non-conclusory* facts to determine whether Plaintiffs' conduct was disruptive and thus not protected. *Id.* And the Amended Complaint is filled with non-conclusory descriptions of highly disruptive activities. In Sunnyvale, participants occupied the office of Thomas Kurian, CEO and head of Google Cloud, taping "a banner up against the inside window," along with "[a]dditional signs," and writing "Demands in dry-erase marker on Mr. Kurian's white board." (Am. Compl. ¶34.) "The group chanted various chants." (*Id*. ¶37.) "One Class Member read the Demands on a livestream, standing in Mr. Kurian's doorway." (*Id*. ¶35.) Meanwhile, "three to six people were working about 75 feet from Mr. Kurian's office." (*Id.* ¶33.) Similarly, in New York, participants occupied an area that "people are permitted to use . . . to work or socialize." (*Id.*) "Some Class Members hung a banner . . . off the 10th floor railing into the atrium." (*Id*. ¶48.) "Approximately eight Class Members then sat down on the floor," (*id*. ¶49), while "[o]ther Class Members" distributed leaflets," (*id*. ¶50). "Three Class Members . . . read [their] Demands out loud," while "[s]ome Class Members who were sitting down" chanted. (*Id*. ¶52.) Security had to ask them to "tone down the chanting" and take down the banner. (*Id*. ¶56.) Counter-protesters emerged, (*id.* ¶57)—which is unsurprising given that Plaintiffs were addressing a divisive military conflict using inflammatory political slogans critical of Israel, (*e.g.*, *id.* ¶48 (hung banner reading, "No Tech for Genocide"); *id.* ¶52 (chanted "no more cloud for Israel's crimes"); *id.* ¶23 (demands included "cease doing business with the Israeli apartheid government")).

These facts leave no doubt that the sit-in activities disrupted Google's workplace. Defiant employees hanging banners and chanting divisive political slogans flouts Google's interest in "maintaining a harmonious workplace" and thus is not protected. *See O'Day*, 79 F.3d at 763. Indeed, the Amended Complaint details how Plaintiffs' activities detracted from the workplace and Google's operations: other employees became "agitated," security had to intervene to stop the chanting and de-escalate the disruption, and ultimately the police had to forcibly remove some of the sit-in participants. As courts have consistently recognized, conduct that is insubordinate, disruptive, or interferes with the employer's operations is not protected by Title VII or analogous statutes. *See id.* ("[Title VII] is not an insurance policy, a license to flaunt company rules."); *Matima*

1   *v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) (disruptive protests are not protected activity); *Laughlin v.*

2   *Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (no protection for "insubordinate,

3   disruptive, or nonproductive behavior at work").

4       Plaintiffs' final attack—accusing Google of mischaracterizing their allegations—is nothing

5   more than smoke and mirrors: a transparent attempt to distract attention from the allegations that

6   doom their claim. Plaintiffs object to Google "homogeniz[ing] the conduct of all named Plaintiffs,"

7   (Opp. at 9), but they cannot fault Google for treating them as a group when that is the basis of their

8   class theory, (*see* Am. Compl. ¶75.A (alleging that "[w]hether Class Members engaged in protected

9   activity" is a "question[] of law and fact common to all Class Members")). Moreover, the

10  distinctions that Plaintiffs now insist on drawing among themselves are irrelevant to the

11  reasonableness inquiry. All the Plaintiffs participated in a sit-in that involved chanting divisive

12  political slogans, hanging banners, and other activities that agitated other employees and required

13  a security response. This is the very definition of conduct that disrupts the workplace and an

14  employer's operations.

15      Plaintiffs' remaining attacks are similarly misguided. Plaintiffs fault Google for describing

16  security's motives, for instance, by stating that security acted "to prevent further escalation." (Opp.

17  at 9.) But security's motivations are clear from the Amended Complaint, including Plaintiffs'

18  allegation that a security officer "stated that he wanted the Action participants to leave, *to prevent*

19  *escalation*." (Am. Comp. ¶58 (emphasis added).) Moreover, repeated orders from security to cease

20  chanting, remove banners, vacate executive offices, and disperse are plainly efforts to prevent

21  escalation and restore order. Plaintiffs' remaining claims of "misrepresentation" likewise fail.

22  Plaintiffs admit counter-protesters "became agitated," but object to Google noting that this agitation

23  flowed from Plaintiffs' own conduct—an inference both obvious and unavoidable.[1] Indeed, by

24  _____

25      [1] Plaintiffs, on the other hand, repeatedly claim in their Opposition that they "engaged in

26  a protest." (*See* Opp. at 1–2, 4, 7, 14, 17.) But according to the Amended Complaint, Plaintiffs did

27  not engage in a protest; they engaged in a **sit-in**. (*See* Am. Compl. ¶¶40, 61 (referring to themselves

28  as "Sitters").) That distinction is important because Plaintiffs allege that there was a "rally" being

labeling them "***counter***-protestors," Plaintiffs concede that their agitation was caused by Plaintiffs'

sit-in activities. Consistent with Supreme Court guidance, the Court should decline Plaintiffs'

invitation to ignore common sense in drawing inferences from the Amended Complaint. *Iqbal*,

556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."); *id*. at 678 (requiring court to "draw [a] reasonable inference" when deciding

whether a claim is plausible). In short, Google did not misrepresent facts; rather, Google quoted

Plaintiffs' Amended Complaint extensively and invited the Court to use "judicial experience and

common sense" to determine whether Plaintiffs could plausibly assert that their conduct was

protected. *See id*. at 679. The Amended Complaint's allegations make clear that it was not.

## II.    THE COURT SHOULD DISMISS THE REMAINING STATE-LAW CLAIMS.

The remaining state-law claims warrant dismissal both for lack of supplemental jurisdiction

and, in the alternative, for failure to state a claim.

### A.    The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims.

With Count I dismissed, no federal claim remains. Plaintiffs do not oppose Google's request

that the Court decline to exercise supplemental jurisdiction over the state and local claims in the

absence of a federal claim.

### B.    Alternatively, the Court Should Dismiss the Remaining State-Law Claims for Failure to State a Claim.

Even if the Court were to retain supplemental jurisdiction, every remaining state- and local-

law cause of action must be dismissed because Plaintiffs have failed to plausibly allege protected

activity.

---

held outside "on public property," (*id.* ¶63), and they do not contend that anyone suffered an

adverse employment action merely for participating in the rally—rather, only those who occupied

Google's buildings and interfered with Google's operations and workplace were terminated.

1

**1.     The Court Should Dismiss Counts II, III, IV, V, VI, VII, IX, X, and XI**

2

**Because Plaintiffs Did Not Engage in Protected Activity.**

3        As explained in Google's Motion (at 11–13), to state a claim for retaliation under the

4   California Fair Employment and Housing Act (FEHA), New York State Human Rights Law

5   (NYSHRL), New York City Human Rights Law (NYCHRL), Washington Law Against

6   Discrimination (WLAD), and the Seattle Fair Employment Practices Ordinance, Plaintiffs must

7   plausibly allege that they engaged in "protected activity." Under each statute, the dispositive legal

8   requirement is the same: the conduct asserted must amount to a reasonable, lawful effort to oppose

9   discrimination or wrongdoing. *See, e.g.*, *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859,

10  868 (9th Cir. 1996) (FEHA); *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1012 (N.Y.

11  2004) (NYSHRL/NYCHRL); *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018)

12  (WLAD); *Russell v. Dep't of Hum. Rts.*, 854 P.2d 1087, 1091 (Wash. Ct. App. 1993) (Seattle

13  Ordinance).

14        Plaintiffs do not dispute that each statute "require[s] employees to plead some form of

15  protected activity." (Opp. at 12.) Although they suggest that "state and local pleading standards are

16  more relaxed," (*id.* at 13), they cite no authority for this proposition. In fact, pleading standards in

17  federal court are governed by Rule 8 of the Federal Rules of Civil Procedure, "irrespective of

18  whether the substantive law at issue is state or federal." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

19  1097, 1102–105 (9th Cir. 2003) (citing *Hanna v. Plumer*, 380 U.S. 460, 471–74 (1965) (holding

20  that the Federal Rules of Civil Procedure apply in federal court despite contrary state procedures)).

21  To the extent that Plaintiffs argue that the legal standard for protected activity differs, they offer no

22  support for this conclusion. In fact, in *Syeed v. Bloomberg, L.P.*, 2022 WL 3447987, at *8 (S.D.N.Y.

23  Aug. 17, 2022)—a case Plaintiffs themselves cite—the court held that several of the plaintiff's

24  complaints were unprotected under the NYSHRL and NYCHRL and dismissed those claims

25  accordingly. Plaintiffs' reliance on *Coville v. Cobarc Services, Inc.*, 869 P.2d 1103, 1106 (Wash.

26  Ct. App. 1994), is similarly misplaced; there, the court found the plaintiff's refusal to return to work

27  was **not** protected. And the *Coville* court relied on *Selberg v. United Pacific Insurance*, 726 P.2d

28  468, 472 (Wash. Ct. App. 1986), which Plaintiffs also erroneously cite, where the court held that

1  "Washington anti-discrimination law substantially parallels Title VII"—directly contrary to

2  Plaintiffs' assertion that there is a heightened or different standard under Washington law. (Opp.

3  at 12.)

4      Accordingly, because Plaintiffs' pleaded conduct—an insubordinate, disruptive occupation

5  of Google's worksites—cannot reasonably be construed as protected activity under any of the cited

6  state or local statutes, Counts II, III, IV, V, VI, VII, IX, X, and XI should be dismissed

7  with prejudice.

8              **2.     The Court Should Dismiss Count VIII Because Plaintiff Taylor Did**

9                      **Not Engage in Protected Activity.**

10     As explained in Google's Motion (at 13), Plaintiff Taylor's claim under Section 14.04.040

11  of the Seattle Ordinance fails because his conduct "interfere[d] with job performance"—

12  specifically, by disrupting the work environment, agitating coworkers, and defying managerial

13  directives. (*See* Am. Compl. ¶¶47–60.)

14     In response, Plaintiffs argue that simply alleging that "none of the conduct by Plaintiff

15  Taylor and Seattle-based Class Members was significantly disruptive to Defendant's operations"

16  is enough for the Court to conclude that Taylor's conduct did not "interfere with job performance."

17  (Opp. at 14.) That is wrong. Whether conduct is disruptive is a determination for the Court to make

18  based on well-pled facts; Plaintiffs cannot substitute a conclusory assertion that Taylor was

19  "not disruptive" for the factual allegations needed to state a plausible claim.

20     Nor can Plaintiffs credibly deny that Taylor disobeyed managerial directives. The Amended

21  Complaint itself alleges that Google security asked whether participants would leave—and they did

22  not do so until later, when Google formally "revoked consent" for their presence. (Am. Compl.

23  ¶60.) Nor do Plaintiffs dispute that Taylor occupied the Commons, participated in hanging a multi-

24  story banner, and engaged in chanting—activities security explicitly requested be stopped.

25     To suggest that such conduct does not "interfere with job performance"—for both Taylor

26  and his former coworkers—defies both the pleadings and common sense. Because Taylor's alleged

27  conduct plainly meets the Ordinance's interference standard, his retaliation claim under

28  Section 14.04.040 should be dismissed with prejudice.

**3.**    **The Court Should Dismiss Count III Because FEHA Preempts Retaliation Claims Brought under the San Francisco Police Code.**

As explained in Google's Motion (at 13–14), Plaintiffs' claim under the San Francisco Police Code is preempted by California's FEHA. Plaintiffs offer no response to this argument. Accordingly, Count III should be dismissed with prejudice.

**4.**    **The Court Should Dismiss Counts IV, V, and X Because Plaintiffs Castellano and Taylor Did Not Live or Work for Google in New York.**

As explained in Google's Motion (at 14–15), Plaintiffs' New York claims fail because neither Plaintiff Castellano (a Houston, Texas resident who worked for Google in Atlanta, Georgia) nor Plaintiff Taylor (a Seattle, Washington resident who worked for Google in Seattle) can establish that any adverse employment action they suffered had an "impact" in New York. *See Hoffman v. Parade Pubs.*, 933 N.E.2d 744, 747 (N.Y. 2010) (dismissing a non-resident plaintiff's NYCHRL and NYSHRL claims when the plaintiff only attended quarterly meetings in New York, had managers in the City, and the termination decision occurred there).

Plaintiffs do not allege that they ever lived, worked, or regularly reported to a Google office in New York. Nor do they allege that they allege any adverse impact in the State. Their only "connection" to New York is that they traveled there for the sit-in. Courts have repeatedly held that a non-resident plaintiff's occasional meetings or travel to New York are tangential and do not satisfy the impact requirement. (*See* Mot. at 14–15 (citing cases).)

In response (at 16–17), Plaintiffs argue that their terminations had an "impact" in New York based on a hypothetical "chilling effect" on New York residents. This argument is legally unsupported. None of Plaintiffs' cited cases establish that a speculative effect on others satisfies the impact requirement.

For example, Plaintiffs rely on *Syeed v. Bloomberg L.P.*, 235 N.E.3d 351, 355 (N.Y. 2024), which held that a non-resident could satisfy the impact requirement by showing they were either "working in New York" or "proactively [seeking] an actual New York City- or State-based job opportunity." That case does not support recognizing New York claims brought by a non-resident plaintiff who never lived, worked, or applied for a position in New York.

Plaintiffs' reliance on *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 71 (N.Y. App. Div. 2009), is even further off-point. That case did not concern the application of New York law to non-residents; rather, the "chilling effect" discussed in *Williams* related to assessing retaliation claims where there were neither ultimate actions nor materially adverse changes in employment terms. Here, by contrast, Plaintiffs were terminated—an ultimate and materially adverse action—making *Williams* inapplicable. Moreover, the relevant inquiry under the impact test is whether the alleged legal violation impacted the plaintiff in New York, not whether it affected other employees. Plaintiffs suggest that they can satisfy the impact requirement by pointing to effects on people other than themselves, but *Williams* does not support this argument. In *Williams*, the court focused on whether the plaintiff's own rights were violated or chilled, and did not find that chilling the rights of employees other than the plaintiff would violate the plaintiff's legal rights. If the plaintiff's rights are not violated, there is no impact in New York under the impact test. Thus, the analysis in *Williams* does not advance Plaintiffs' position.

Finally, Plaintiffs assert that *Hoffman*'s "impact requirement" does not apply to their so-called "New York whistleblower claim" under the New York Labor Law (NYLL). (Opp. at 17.) The only case they cite is *Magnuson v. Newman*, 2013 WL 5942338, at *2 (S.D.N.Y. Nov. 6, 2013), in which the court declined to consider *Hoffman* on reconsideration because it had not been raised in summary judgment briefing. Thus, Plaintiffs' claim that their NYLL whistleblower cause of action is "fundamentally different" from their NYSHRL and NYCHRL claims is unsupported.

In short, Plaintiffs concede that the named class representatives never lived or worked in New York. Because the alleged adverse actions had no meaningful impact in New York, Plaintiffs' claims fail as a matter of law.

### III.    THE COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' CLASS CLAIMS BECAUSE PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED COMPLIANCE WITH RULE 23.

#### A.    Plaintiffs Do Not Sufficiently Plead Compliance with Rule 23(a) Requirements for Any Putative Class or Subclass.

As Google explained in its Motion (at 17–19), the Amended Complaint identified at most 28 putative class members (15-to-20 in Sunnyvale and eight in New York), with even smaller state-

1   law subclasses. These numbers fall far short of satisfying Rule 23(a)(1), which requires a showing

2   that "the class is so numerous that joinder of all members is impracticable."

3        In their Opposition (at 18), Plaintiffs now contend that the putative class comprises "at least

4   40–50 people," asserting that 20-to-30 participated in New York even though their own pleading

5   identifies only eight. This last-minute inflation is unavailing for several reasons. First, as Plaintiffs

6   acknowledge, Rule 23 requires more than a head-count; they must allege "specific facts" showing

7   that joinder would be impracticable. (*Id*. at 19.) They offer none. Instead, they rely on the

8   conclusory assertion that class members "are located across the United States." (*Id.*) But the

9   Amended Complaint makes clear that nearly all participants were in New York and California—

10  and none of the putative class members claim to have encountered any difficulty traveling to,

11  or organizing, the highly coordinated sit-ins held in those states.

12       Numerosity is further eroded by the legal and factual distinctions that Plaintiffs' Opposition

13  draws among different groups of class members. Factually, Plaintiffs identify two groups:

14  (1) those who remained on Google premises a full day and were arrested (nine Plaintiffs by their

15  own concession), and (2) those who left after a partial day of occupation and were not arrested. (*Id*.

16  at 8–9.) If, as Plaintiffs stress, "[t]hose distinctions matter" and the Court must separately evaluate

17  the oppositional conduct of each member of these two distinct groups, (*id.* at 9), then each group

18  must be treated as a subclass, each of which must independently satisfy numerosity. And these

19  groups must be further subclassed as Plaintiffs contend that there are meaningful distinctions in the

20  state and local laws on which their claims rely. (*See id.* at 11–16.) These factual and legal

21  distinctions will require a separate analysis of subgroups far smaller than the alleged group of 40-

22  to-50 people Plaintiffs seek to represent. None of these subgroups satisfies numerosity.

23       Plaintiffs argue that subclasses are unnecessary absent conflicts of interest. (*Id*. at 19.)

24  But subclasses are required not only to resolve conflicts but also when "there is little factual

25  overlap" among claims asserted by different groups or claims arise under distinct state laws.

26  *Rodriguez v. Hayes*, 591 F.3d 1105, 1123–24 (9th Cir. 2010) (requiring subclasses for state-law

27  claims because without subclasses, "differing statutes . . . will render class adjudication of class

28  members' claims impractical or undermine effective representation of the class"); *Unicorn Field,*

*Inc. v. Cannon Grp., Inc.*, 60 F.R.D. 217, 226–27 (S.D.N.Y. 1973) (requiring separate subclasses for different causes of action when they proceed on distinct legal theories and requirements of proof); *In re SunEdison, Inc. Secs. Litig.*, 329 F.R.D. 124, 132–33 (S.D.N.Y. 2019); *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 567–69, 572 (N.D. Cal. 2009) (requiring distinct class for each store in accessibility lawsuit under Americans with Disabilities Act where patrons faced identical access barriers at each store, but denying certification across all stores where plaintiffs failed to show they faced common barriers across all stores).

Plaintiffs' reliance on *Elgindy v. AGA Service Co.*, 2024 WL 4634060 (N.D. Cal. 2024), *appeal filed*, No. 47320 (9th Cir. Dec. 5, 2024), is misplaced. There, the court held that "sub-classing is 'one mechanism . . . by which courts can solve conflict of interest problems,'" but the court did not hold that subclassing is **only** required where there is a conflict of interest. *Id.* at *5. Similarly, *American Timber & Trading Co. v. First National Bank of Oregon*, 690 F.2d 781 (9th Cir. 1982), concerned Rule 23(d) case-management subclasses, not the Rule 23(c)(5) subclasses required here. *Id.* at 786. Because Plaintiffs themselves emphasize factual and legal differences among putative class members, subclassing is mandatory. And once subclasses are recognized, each subgroup's small size renders numerosity unsatisfied.

That conclusion is reinforced by recently filed, parallel individual litigation. One putative class member, Joelle Skaf, has filed her own action in the Southern District of New York arising out of the New York sit-in. *See Skaf v. Google, LLC*, No. 23-CV-6029, ECF No. 5 (S.D.N.Y. July 23, 2025). Her suit undercuts Plaintiffs' numerosity theory because it confirms that members are perfectly capable of vindicating their rights through individual actions, demonstrating that joinder is not impracticable. Courts recognize that when putative class members are already litigating separately, numerosity is far more difficult to establish. *See, e.g.*, *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348–49 (4th Cir. 1976) (no numerosity where 44 plaintiffs had come forward individually and there were only 11 other putative class members); *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 258–59 (3d Cir. 2016) (district court erred by failing to consider "the ability and motivation" of members who had already sued individually). Here, Skaf's separate filing confirms that joinder is practicable. That is especially true given that several Plaintiffs travelled cross-country

1    to participate in the sit-ins, undercutting any claim that geography makes joinder impracticable.

2    When these considerations are combined with the additional subclasses that Plaintiffs' own

3    theory would require—i.e., subclasses for (1) full-day arrestees versus partial-day participants and

4    (2) distinct state and local statutory regimes—the total number of litigants in any one subclass falls

5    well below the threshold normally deemed sufficient for Rule 23(a)(1).

6    In short, far from salvaging their numerosity showing, Plaintiffs' new assertions—coupled

7    with concrete evidence that putative class members are willing and able to proceed individually—

8    confirm that joinder is the most practicable, and readily available, path for resolving these claims.

9    **B.    Plaintiffs Lack an Adequate Class Representative for Counts IV, V, and X.**

10    As Google explained in its Motion (at 19), Rule 23(a)(4) requires that "the representative

11    parties will fairly and adequately protect the interests of the class." The Ninth Circuit has made

12    clear that "[a] named plaintiff must be a member of the class she seeks to represent." *Sali v. Corona*

13    *Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Counts IV (NYSHRL), V (NYCHRL), and X

14    (NYLL § 740) are pleaded on behalf of "New York-based" and "New York City-based" subclasses.

15    Yet not one named Plaintiff satisfies the threshold membership requirement.

16    As discussed above, neither Plaintiff Castellano nor Plaintiff Taylor lived or worked in

17    New York, nor do they plausibly allege that any adverse employment consequence was felt in

18    New York. (*See supra* Section II.B.4.) Because the New York statutes protect only persons who

19    live or work in New York and experience an in-state impact, Castellano and Taylor are outside the

20    subclasses they purport to represent. (*See id.*) Without a single adequate representative, the

21    New York subclasses cannot be certified, and the claims asserted in Counts IV, V, and X must be

22    dismissed or stricken.

23    Plaintiffs request that, should the Court find the current representatives inadequate, they be

24    granted leave to amend to identify a proper representative in the future. (Opp. at 20.) This request

25    does not cure the present defect. Rule 23 requires actual, not prospective, adequacy; courts

26    routinely strike or dismiss class claims when no named plaintiff is a member of the proposed class.

27    (*See* Mot. at 19 (citing cases).)

28    Because Counts IV, V, and X lack a representative, the Court should dismiss or strike the

1 class allegations in those Counts.

2       **C.**     **Plaintiffs Plead No Facts That Satisfy Rule 23(b).**

3       As Google explained in its Motion (at 20–21), Plaintiffs invoked only Rule 23(b)(1)(A) in

4 their Amended Complaint. The rule applies only when "prosecuting separate actions by or against

5 individual class members would create a risk of . . . incompatible standards of conduct for the party

6 opposing the class." Fed. R. Civ. P. 23(b)(1)(A). But the remedies sought—reinstatement,

7 back pay, front pay, punitive damages, and service awards—pose no risk of subjecting Google to

8 irreconcilable legal directives. Different results in individual suits do not create "incompatible

9 standards." (*See* Mot. at 20–21 (citing cases).) The rule requires a true conflict where Google could

10 not comply with multiple judgments—not simply varied damages or individualized relief. Because

11 Plaintiffs plead no such risk, Rule 23(b)(1)(A) cannot apply.

12       Plaintiff simply responds that separate cases might yield different injunctive relief.

13 (Opp. at 21.) But Rule 23(b)(1)(A) applies only when the defendant must treat all class members

14 alike as a legal or practical necessity—such as riparian-rights or utility-rate disputes. *Amchem*

15 *Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). That is not this case. Here, monetary relief is

16 primary, and reinstatement can be awarded individually without creating conflicting obligations.

17       Rather than confront that defect, Plaintiffs pivot for the first time to Rules 23(b)(2)

18 and 23(b)(3). (Opp. at 20–21.) The shift only underscores the inadequacy of their pleadings.

19 Rule 23(b)(2) applies only where "a single injunction or declaratory judgment would provide relief

20 to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

21 But reinstatement is inherently individualized, depends on job-specific factors, and necessarily

22 varies from one former employee to the next. *Id.* at 365–67 (holding that Rule 23(b)(2) does not

23 accommodate individualized remedies, and reinstatement requires individualized proceedings

24 and defenses); *see also Teutscher v. Woodson*, 835 F.3d 936, 951 (9th Cir. 2016) (discussing

25 factors like hostility, position elimination, and feasibility when weighing reinstatement). Monetary

26 damages are even less suited to Rule 23(b)(2) because they vary by class member and are

27 not "indivisible." *Dukes*, 564 U.S. at 360. Plaintiffs' belated reliance on Rule 23(b)(2) therefore

28 fails as a matter of law.

Equally unavailing is Plaintiffs' new appeal to Rule 23(b)(3). To invoke that provision, they must plausibly plead predominance and superiority, yet the Amended Complaint contains not one well-pled fact addressing either element. Predominance is defeated by the very nature of their claims: what each plaintiff did (sit-in, leaflet, chant, refuse to leave), where they worked, what law applies, and whether they are even eligible for reinstatement are quintessentially individualized. Plaintiffs themselves admit there are "material differences in their actions on the day of the protest," (Opp. at 2), and "meaningful distinctions in the conduct of the different named Plaintiffs," (*id.* at 9). These concessions confirm that individualized evidence and standards will control, foreclosing predominance. *See, e.g.*, *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *6–*10 (N.D. Cal. June 2, 2021) (dismissing nationwide class claims at the pleading stage where variations in state law created individualized issues that would overwhelm common ones, defeating both predominance and superiority under Rule 23(b)(3)).

Nor do Plaintiffs allege facts showing superiority—a separate, independently fatal flaw under Rule 23(b)(3). A small group of well-resourced employees could readily pursue individual actions. Indeed, one putative class member, Skaf, has already done so. Rule 23(b)(3)(B) expressly directs courts to consider "the extent and nature of any litigation concerning the controversy already begun by or against class members." The fact that at least one putative class member has chosen to pursue her own case and several others have joined this case as named plaintiffs—coupled with the small cohort at issue—decisively weighs against superiority. Even a handful of individual suits can defeat superiority because they demonstrate both the desirability and feasibility of individual control. *See, e.g.*, *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (no superiority where nine individual suits were pending); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996) (class mechanism not superior given alternative individual actions and MDL coordination); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210–11 (9th Cir. 1975) (affirming dismissal of class allegations at the pleading stage because a parallel state enforcement action rendered a class action not "superior" under Rule 23(b)(3)).

In sum, Plaintiffs plead no facts justifying certification under any subdivision of Rule 23(b). Their own admissions about differences among named Plaintiffs only reinforce that class-wide

1    adjudication is inappropriate. The class allegations should be dismissed or stricken with prejudice.

2    **IV.    THE COURT SHOULD DENY LEAVE TO AMEND.**

3        In a letter brief, Plaintiffs seek to add a new plaintiff to represent the New York putative

4    class. (ECF No. 29.) That request should be denied because it does not comply with Civil Local

5    Rule 10-1, which requires that "[a]ny party filing or moving to file an amended pleading must

6    reproduce the entire proposed pleading and may not incorporate any part of a prior pleading

7    by reference." Plaintiffs submitted no proposed amended complaint at all, which not only violates

8    the Local Rule but leaves both the Court and Google unable to evaluate whether the proposed

9    amendment is permissible. This procedural failure alone warrants denial. *See Cotti v. Pa Chang*,

10   2020 WL 2572771, at *5 (N.D. Cal. May 21, 2020) (Freeman, J.); *Gardner v. Martino*, 563 F.3d

11   981, 991 (9th Cir. 2009).

12       Second, Plaintiffs broadly request leave to amend "any element of the [Amended]

13   Complaint" the Court finds deficient. (Opp. at 22.) This request should also be denied because

14   amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Cervantes v.

15   Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011); *Gardner*, 563 F.3d at 991.

16   Plaintiffs' own allegations foreclose relief: they describe conduct—such as occupying executive

17   offices, hanging banners, chanting slogans, and refusing to leave—that is, as a matter of law,

18   unprotected and disruptive. They further admit that the named plaintiffs for the New York claims

19   neither lived nor worked in New York, and they concede material differences among putative class

20   members that defeat class treatment. These are not technical pleading defects but fundamental

21   barriers that cannot be cured by amendment. Plaintiffs cannot rewrite what occurred on the day of

22   the sit-in, nor can they retract admissions already made in the Amended Complaint. Because no

23   amendment could overcome these deficiencies, the Court should dismiss the Amended Complaint

24   with prejudice.

25                                    **CONCLUSION**

26       For the foregoing reasons, Google asks the Court to dismiss the Amended Complaint in its

27   entirety with prejudice.

28

Defendant Google LLC's Reply in Support of Its Motion to Dismiss
25-CV-03268-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

JONES DAY

Dated: August 28, 2025

By: */s/ Aaron L. Agenbroad*
      Aaron L. Agenbroad
      Liat Yamini
      Wendy C. Butler
      Christian A. Bashi

*Attorneys for Defendant Google LLC*