Aleksandr Felstiner
Levy Ratner, P.C.
80 8th Ave., 8th Fl.
New York, NY 10011
212-627-8100
afelstiner@levyratner.com
Bar: 281906
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

-------------------------------------------------------------------X

CHEYNE ANDERSON, JESUS CASTELLANO, TINA LIU, EVAN MCELHENY, HANNAH MIRZA, KATHLEEN O'BEIRNE, ZACHARY SIEGEL, ERIC SPISHAK-THOMAS, ALEC STORY, SETH TAYLOR, WILLIAM VAN DER LAAR, MARK WESLEY DUDLEY, RACHEL WESTRICK, JIAJUN XU, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

GOOGLE LLC,

Defendant.

-------------------------------------------------------------------X

Case No. 5:25-cv-03268-BLF

**[PROPOSED] SECOND AMENDED COMPLAINT**

Class Action

1    Plaintiffs CHEYNE ANDERSON, JESUS CASTELLANO, TINA LIU, EVAN

2    MCELHENY, HANNAH MIRZA, KATHLEEN O'BEIRNE, ZACHARY SIEGEL, ERIC

3    SPISHAK-THOMAS, ALEC STORY, SETH TAYLOR, WILLIAM VAN DER LAAR, MARK

4    WESLEY DUDLEY, RACHEL WESTRICK, and JIAJUN XU, by and through their counsel,

5    LEVY RATNER, P.C., allege on behalf of themselves and all others similarly situated as follows

6    against GOOGLE LCC ("Defendant" or "Google"):

## **INTRODUCTION**

1.      This is an action to remedy the retaliatory termination of Plaintiffs' employment by Google for their engaging in protected activity on April 16, 2024 at or around Defendant's offices located in Sunnyvale, California and New York, New York.

## **IDENTIFICATION OF THE PARTIES**

2.      Plaintiff Cheyne Anderson is an individual residing in Bothell, Washington. Mr. Anderson was employed by Defendant from approximately 2022 to April 2024. Mr. Anderson worked as a Software Engineer in Google's Kirkland, Washington office. Mr. Anderson engaged in protected activity on April 16, 2024 while attending an action at Google's office located in Sunnyvale, California.

3.      Plaintiff Jesus Castellano is an individual residing in Houston, Texas. Mx. Castellano was employed by Defendant from approximately 2018 to April 2024. Mx. Castellano worked as a Partner Operations Manager in Google's Atlanta, Georgia office. Mx. Castellano engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

4.      Plaintiff Tina Liu is an individual residing in Ridgewood, New York. Ms. Liu was employed by Defendant from approximately 2021 to April 2024. Ms. Liu worked as a Software Engineer in Google's New York, New York office. Ms. Liu engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

5.      Plaintiff Evan McElheny is an individual residing in New York, New York.  Mr. McElheny was employed by Defendant from approximately 2018 to April 2024. Mr. McElheny

2

1    worked as a Software Engineer in Google's New York, New York office. Mr. McElheny engaged

2    in protected activity on April 16, 2024 while attending an action at Google's office located in New

3    York, New York.

4         6.    Plaintiff Hannah Mirza is an individual residing in Berkeley, California. Ms. Mirza

5    was employed by Defendant from approximately 2021 to April 2024. Ms. Mirza worked as a

6    Product Operations Manager in Google's San Francisco, California office. Ms. Mirza engaged in

7    protected activity on April 16, 2024 while attending an action at Google's office located in

8    Sunnyvale, California.

9         7.    Plaintiff Kathleen O'Beirne is an individual residing in Oakland, California. Ms.

10    O'Beirne was employed by Defendant from approximately 2020 to April 2024. Ms. O'Beirne

11    worked as a Talent Equity & Strategy Program Manager Lead in Google's San Francisco,

12    California office. Ms. O'Beirne engaged in protected activity on April 16, 2024 while attending

13    an action at Google's office located in Sunnyvale, California.

14         8.    Plaintiff Zachary Siegel is an individual residing in New York, New York. Mr.

15    Siegel was employed by Defendant from approximately 2015 to April 2024. Mr. Siegel worked as

16    a Senior Software Engineer in Google's San Francisco, California office. Mr. Siegel engaged in

17    protected activity on April 16, 2024 while attending an action at Google's office located in New

18    York, New York.

19         9.    Plaintiff Eric Spishak-Thomas is an individual residing in New York, New York.

20    Mr. Spishak-Thomas was employed by Defendant from approximately 2013 to April 2024. Mr.

21    Spishak-Thomas worked as a Senior Software Engineer in Google's New York, New York office.

1    Mr. Spishak-Thomas engaged in protected activity on April 16, 2024 while attending an action at

2    Google's office located in New York, New York.

3        10.    Plaintiff Alec Story is an individual residing in New York, New York. Mr. Story

4    was employed by Defendant from approximately 2012 to April 2024. Mr. Story worked as a Staff

5    Software Engineer in Google's New York, New York office. Mr. Story engaged in protected

6    activity on April 16, 2024 while attending an action at Google's office located in New York, New

7    York.

8        11.    Plaintiff Seth Taylor is an individual residing in Seattle, Washington. Mr. Taylor

9    was employed by Defendant from approximately 2022 to April 2024. Mr. Taylor worked as a

10   Software Engineer in Google's Seattle, Washington office. Mr. Taylor engaged in protected

11   activity on April 16, 2024 while attending an action at Google's office located in New York, New

12   York.

13       12.    Plaintiff William Van Der Laar is an individual who resided in San Francisco,

14   California at all times relevant to this action. Mr. Van Der Laar was employed by Defendant from

15   approximately 2021 to April 2024. Mr. Van Der Laar worked as a Software Engineer L4 in

16   Google's San Francisco, California office. Mr. Van Der Laar engaged in protected activity on

17   April 16, 2024 while attending an action at Google's office located in Sunnyvale, California.

18       13.    Plaintiff Mark Wesley Dudley is an individual residing in San Francisco,

19   California. Mr. Dudley was employed by Defendant from approximately 2015 to April 2024. Mr.

20   Dudley worked as a Senior Software Engineer in Google's San Francisco, California office. Mr.

4

1    Dudley engaged in protected activity on April 16, 2024 while attending an action at Google's

2    office located in Sunnyvale, California.

3        14.    Plaintiff Rachel Westrick is an individual who resided in Mountain View,

4    California at all times relevant to this action. Ms. Westrick was employed by Defendant from

5    approximately 2021 to April 2024. Ms. Westrick worked as a Software Engineer in Google's

6    Sunnyvale, California office. Ms. Westrick engaged in protected activity on April 16, 2024 while

7    attending an action at Google's office located in Sunnyvale, California.

8        15.    Plaintiff Jiajun Xu is an individual who resided in San Francisco, California at all

9    times relevant to this action. Mr. Xu was employed by Defendant from approximately 2019 to

10   April 2024. Mr. Xu worked as a Software Engineer in Google's San Francisco, California office.

11   Mr. Xu engaged in protected activity on April 16, 2024 while attending an action at Google's

12   office located in Sunnyvale, California.

13       16.    Defendant Google, LLC is a Delaware limited liability corporation with its

14   principal place of business in Mountain View, California. Google does business throughout the

15   state of California, including within this judicial district, and in all states throughout the United

16   States, including New York and Washington.

17       17.    Google is in the business of marketing, selling, developing, and providing

18   technology, search and advertising, internet services, software and operating systems, and

19   enterprise and hardware products. At the times the alleged violations took place, Plaintiffs and

20   members of the class they seek to represent were employees of Google within the definitions set

21   forth in 42 U.S.C. § 2000e(f), Cal. Gov't Code § 12926 and Cal. Code of Reg. § 11008(c), Cal.

5

1    Labor Code § 1102.5, San Francisco Police Code § 3310, N.Y. Exec. Law § 290 *et seq*, New York

2    Labor Law § 740(a), NYC Admin. Code §8-102, Wash. Rev. Code § 49.60 *et seq.*, and Section

3    14.04.040 of the Seattle Charter.

4        18.    At all relevant times, Google has continuously been an employer within the

5    definition of 42 U.S.C. § 2000e(b), Cal. Gov't Code §§ 12926(d) and 12940, Cal. Labor Code §

6    1102.5, N.Y. Exec. Law § 292(5), New York Labor Law § 740(b), NYC Admin. Code §8-102,

7    Wash. Rev. Code § 49.60.040(11), and Section 14.04.040 of the Seattle Charter.

8        19.    Defendant employs more than fifteen employees.

9        20.    At all times relevant herein, Google acted via its agents, servants, and employees,

10    each of whom acted in the course and scope of their employment with and for the Defendant.

## JURISDICTION AND VENUE

11        21.    This Court has subject matter jurisdiction over this action based on federal question

12    jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), as Plaintiffs allege

13    violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*. ("Title VII").

14        22.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs'

15    state and local law claims because those claims derive from a common nucleus of operative facts.

16    The federal claims are so intertwined with the state and local claims as to make exercise of

17    supplemental jurisdiction appropriate.

18        23.    The Northern District of California has personal jurisdiction over Google because

19    Google transacts significant business in the State of California and in this District.

24.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts substantial business in the Northern District of California, and because, upon information and belief, unlawful employment practices originated in this District.

## STATEMENT OF THE FACTS

25.      On April 16, 2024 Plaintiffs participated in a Day of Action ("Action") at Google campuses in Sunnyvale, California ("SVL") and New York, New York ("NYC").

26.      The Action was organized by a group of technology industry workers, including Google employees, called No Tech for Apartheid ("NOTA").

27.      Plaintiffs participated in the Action in part to oppose Google's discrimination and discriminatory harassment against Palestinian, Arab, and Muslim Google employees.

28.      Prior to the Action, NOTA published a list of demands ("Demands") in connection with the Action:

(1)      Drop Project Nimbus: We demand that Google stop providing material support to this genocide by canceling its Project Nimbus contract and immediately cease doing business with the Israeli apartheid government and military.

(2)      Stop the harassment, intimidation, bullying, silencing, and censorship of Palestinian, Arab, Muslim Googlers: We demand that Google leadership immediately halt its continuous empowerment of hate, abuse, and retaliation against those who speak out and establish a working environment where Muslim,

7

1    Arab, and Palestinian Googlers are not subject to harassment, racism, and collusion

2    against them.

3    (3)    Address the health and safety crisis among Google workers: Project Nimbus

4    has become a major health & safety workplace conditions issue. Multiple workers

5    have quit citing the serious mental health consequences of working at a company

6    that is using their labor to enable a genocide. We demand that Google stop the

7    retaliation against and doxing of workers speaking out, and create a safe working

8    environment for workers.

9    29.    Project Nimbus is a cloud-computing contract with the Israeli government, that had

10    been confirmed to support Israeli military operations in Gaza.

11    30.    "Googler" is a term used within Google to refer to Google employees.

12    31.    NOTA's second demand referred to a series of prior actions by Google that NOTA

13    members believed to be discriminatory or retaliatory towards Arab, Muslim, and Palestinian

14    Google employees. NOTA had previously raised these concerns.

15    32.    In or around October 2023, multiple Google employees circulated a petition urging

16    Google to drop Project Nimbus. Defendant conducted a Human Resources investigation into the

17    only Muslim employee to circulate the petition, accusing him of terrorism.

18    33.    In or around November 2023, NOTA published an open letter condemning

19    Google's "internal culture of hate, abuse, and retaliation towards Muslim, Palestinian, and Arab

20    employees." NOTA's letter accused Google of "allowing dehumanizing, racist comments against

8

1    Palestinians as a people on official Google work platforms." NOTA also claimed that Google

2    managers used their "rank to question, report, and attempt to get fired Muslim, Arab, and

3    Palestinian Googlers who express sympathy with the plight of the besieged Palestinian people."

4    The conduct by Google that is described in the open letter was opposed by Plaintiffs during the

5    Action.

6        34.    In or around March 2024, at least two Muslim Employees were "doxed" when their

7    colleagues leaked their messages on Defendant's internal employee chat platform to the Daily

8    Wire. The Daily Wire published an article on March 8, 2024 including the Muslim employees'

9    full names, positions, photos, and work locations. Defendant failed to take substantive steps to

10   address the doxing. Google's failure to support these employees was opposed by Plaintiffs during

11   the Action.

12       35.    NOTA members at Google compiled a document entitled "Google Disregards

13   Worker Safety," which detailed issues of harassment and discrimination against Palestinian, Arab,

14   and Muslim employees, along with other workplace safety concerns. Action participants circulated

15   the document within Google on the day of the Action. Google's discriminatory conduct, as

16   outlined in the document, was opposed by Plaintiffs during the Action.

17       36.    On the day of the Action, Class Members at Defendant's NYC office distributed

18   leaflets to Google employees and the public, which directly opposed conduct by Google that the

19   Plaintiffs perceived as discriminatory. The leaflet stated in part:

20           Google must stop the harassment, intimidation, and censorship of Palestinian, Arab,

21           and Muslim Googlers. Google leadership and Employee Resources must halt its

9

1    continuous empowerment of hate, abuse, doxxing, and retaliation against those who

2    speak out…Google has…engendered a health and safety workplace crisis by

3    facilitating harassment, retaliating against workers who speak out, and condoning

4    the censorship and discrimination of Palestinian, Arab, and Muslim Googlers.

5    The leaflet also accused Google of "aiding and abetting Israel's genocide in Gaza."

6    **SVL April 16 Action**

7    37.    Plaintiffs Cheyne Anderson, Hannah Mirza, Kathleen O'Beirne, William Van Der

8    Laar, Mark Wesley Dudley, Rachel Westrick, Jiajun Xu, and other Class Members participated in

9    the April 16 Action taking place in and around the "MP4" building, a Google office at 1190

10   Bordeaux Drive in Sunnyvale, CA (hereinafter the "SVL Action").

11   38.    Between approximately 8:00 and 9:00 AM on April 16, 2024, SVL Action

12   participants entered MP4. All were Google employees and had permission to enter the building.

13   Around fifteen to twenty people went up to the sixth floor, which contains the office of Thomas

14   Kurian, head of Google Cloud. Mr. Kurian's office is the last in a row of executive offices and

15   conference rooms located along one side of a large, open, rectangular space. The open space is

16   approximately 1200 square feet, with some workstations in the area. Although there was a badge

17   reader near the entrance to the open area, the area was not locked and it was not necessary to scan

18   badges in order to enter. Mr. Kurian's office was empty, and the door was open. The conference

19   rooms in the immediate vicinity were empty. When the SVL Action participants entered,  three to

20   six people were working about 75 feet from Mr. Kurian's office.

10

39.     Around 9:00 AM, a smaller group of SVL Action participants, including Plaintiffs Anderson, O'Beirne, Van der Laar, Wesley Dudley, and Westrick, entered Mr. Kurian's office. A participant taped a banner up against the inside window that said: "Thomas Kurian, Drop Project Nimbus." Additional signs said "end worker retaliation" and "no AI for military." Plaintiffs Mirza and Xu remained outside Mr. Kurian's office and did not sit down there.

40.     One Class Member read the Demands on a livestream, standing in Mr. Kurian's doorway. There was no amplification.

41.     Some Plaintiffs and certain Class Members took a group photo in Mr. Kurian's office, after which a group of participants left to assist with the rally outside. Another group photo was taken outside Mr. Kurian's office.

42.     A participant in the office wrote the Demands in dry-erase marker on Mr. Kurian's white board, along with an internal link to the "Google Disregards Worker Safety" document. The group chanted various chants for a short time.

43.     Around 9:45 AM, two or three security personnel approached some SVL participants and asked them to relocate to a 4th floor common space. One Class Member, acting as a security liaison, spoke with security for a few minutes outside of Mr. Kurian's office. The liaison returned to Mr. Kurian's office and told the participants that security had revoked their access.

44.     About ten participants, including Plaintiff Van Der Laar, immediately left Mr. Kurian's office once their access was revoked. Plaintiffs Mirza and Xu, who were already outside

11

1    Mr. Kurian's office, also left the building, along with the other participants outside Mr. Kurian's

2    office. They took signage with them. Security blocked the exit in order to scan the badges of

3    participants before they left. Plaintiffs Mirza, Van der Laar, and Xu complied with all requests

4    from security, left when asked, and were not detained or arrested.

5          45.    Plaintiffs Rachel Westrick, Cheyne Anderson, Kathleen O'Beirne, Mark Wesley

6    Dudley, and one other Class Member (hereinafter "SVL Sitters") remained in Mr. Kurian's office.

7    The liaison requested permission to stay as well, so that they could continue to serve as a liaison

8    with security. Google security granted the liaison permission to stay.  The liaison remained outside

9    Mr. Kurian's office with security. Security took photos of the badges of SVL Sitters and read their

10   names out loud to confirm.

11         46.    The SVL Sitters continued to read the Demands over the livestream, as well as

12   worker testimonials from the NOTA website, including testimonials describing discrimination by

13   Google. They answered questions submitted to the livestream and spoke over the phone with the

14   NYC Action participants. All speaking occurred at normal conversational volume.

15         47.    Around 10:30 AM, security notified the SVL Sitters, through the liaison, that police

16   had been called. Police arrived outside around 11:00 AM, and left within 30 minutes, without

17   interacting with any participants inside. Security closed down the area on the sixth floor outside

18   Mr. Kurian's office, shut the window blinds, and stationed themselves at the entrance to the open

19   area.

1      48.     Simultaneous with the actions inside MP4, SVL participants held a rally outside

2   Google's premises, on public property. The peaceful rally started in front of building MP2 (1175

3   Borregas Ave., Sunnyvale, CA 94089) and moved to the southern entrance of MP4.

4      49.     Around 3:30 PM, Google security notified the SVL Sitters that their badge access

5   had been revoked and they were being placed on administrative leave. Security gave them until

6   5:30 PM to leave or be taken out by police.

7      50.     Around 7:00 PM security again asked the SVL Sitters to leave. The SVL Sitters

8   declined and were arrested and removed.

9      51.     SVL Sitters were processed and released with a citation the same night.

10   **NYC April 16 Action**

11      52.     The Action in NYC ("NYC Action") occurred on the 10th floor "Commons" area

12   in Google's office building at 111 8th Avenue, New York, NY. The Commons is a three-floor

13   open area, spanning the 8th through 10th floors. A staircase runs through the middle, from the 8th

14   floor to the 10th floor. The main 10th floor Commons area has open seating with tables, couches,

15   plants, and decorations. It is not designated as a quiet area or a workspace. It contains no designated

16   workstations, though people are permitted to use it to work or socialize. A hallway runs along the

17   southern edge of the main Commons area. There is a locker on the left "branch" of the U-shaped

18   space, surrounding the atrium. Next to the locker is a meeting room called "Strato-spheric." The

19   right "branch" of the U contains a micro-kitchen. Music is sometimes played in the area.

13

1    53.    On April 16, 2024 at around 11:55 AM, Plaintiffs Castellano, Liu, McElheny,

2    Siegel, Spishak-Thomas, Story, Taylor, and Class Members who participated at the NYC Action

3    gathered in the main Commons area, wearing t-shirts for the Action, and took some photos. Some

4    Class Members hung a banner which read "Google Workers Sit In Against Project Nimbus. No

5    Tech for Genocide" off the 10th floor railing into the atrium. They attached the banner, without

6    adhesives, by draping the end of the banner over the railing.

7    54.    Approximately eight participants, including Plaintiffs Castellano and Siegel, then

8    sat down on the floor, against the railing to ensure that they would not obstruct passersby. The

9    seated participants did not obstruct access to the elevator, Strato-spheric, the locker, or any seating

10    in the main Commons area.

11    55.    Plaintiffs Liu, McElheny, Spishak-Thomas, Story, Taylor and other participants

12    remained nearby in the main Commons area, distributing leaflets which listed the Demands. A few

13    others left the 10th floor to distribute leaflets on the 9th and 8th floors. None of the Class Members

14    disrupted Defendant's operation of business or flow of work.

15    56.    A few Class Members were assigned the role to de-escalate conflicts, if needed.

16    They did not directly participate in the NYC Action, but observed or acted as liaisons with

17    Google's security team.

18    57.    Three Class Members spoke in the Commons, without amplification. They read the

19    Demands out loud. Some Class Members who were sitting down repeated the phrase, "Not another

20    push, not another line, no more cloud for Israel's crimes" and "When workers' rights are under

21    attack, what do we do? Rise up fight back."

14

[Proposed] Second Amended Complaint – 5:25-cv-03268

58.     Plaintiff Siegel spoke about his reasons for sitting in, including "for my Muslim, Arab, and Palestinian Googlers and upstanding coworkers who have suffered discrimination and retaliation at Google[.]"

59.     There was also steady traffic in the Commons' hallway, and Google played ambient music over the loudspeaker. Employees passed through the area undisturbed, on foot and on scooters, to get to the locker area, seating area, Strato-Spheric, and the micro-kitchen. Elevators were in use to transport supplies.

60.     At or around 12:15 PM, Google security arrived. The security team was led by Jimmy West. Security asked a Class Member serving as security liaison to tone down the chanting. The seated Class Members discontinued chanting. West later noticed the banner that had been hung and requested that it be taken down, which it was.

61.     West asked the liaison whether the participants would leave. West said he was not telling them to leave, just asking. The liaison asked if their access to the building was being revoked, and West said "No."

62.     During the Action, four to six counter-protestors stood nearby in the 10th floor Commons space. The counter-protestors talked, laughed, and occasionally became agitated and yelled at Action participants. De-escalators instructed participants not to engage. The counter-protestors stayed in the area for at least an hour, if not longer. Counter-protestors occasionally followed people who took flyers and tried to engage them in conversation.

15

[Proposed] Second Amended Complaint – 5:25-cv-03268

63.     Upon information and belief, Google security did not record the identity of the counter-protestors. West stated that he wanted the Action participants to leave, to prevent escalation.

64.     One counter-protestor, a Google employee named Amos Berger, began filming the participants about 10 minutes into the NYC Action, without their permission. Participants believed that Berger was the same person who had doxed and harassed a Class Member earlier in the year. Berger stated he intended to show everyone who was involved. A security liaison asked West to do something about Berger filming people without their consent, reminding him that this violates Google policy. West responded "What did you expect?" and did not intervene.

65.     At or around 1:15 PM, West formally "revoked consent" for participants to be there. West agreed that two Class Members serving as liaisons could stay in the area, which they did. Some participants who had been sitting down on the floor immediately complied and left the area, including Plaintiff Siegel. Other participants who had not been sitting also left the area, or dispersed to other parts of the Commons. Security took photos of the NYC Action participants' badges upon exit. Security did not scan the badges of counter-protestors or ask them to leave.

66.     Jesus Castellano and three Class Members (hereinafter the "NYC Sitters") remained seated in the Commons.

67.     Plaintiff Liu did not sit down on the floor at any point. She had been passing out leaflets in the 10th floor Commons, then left after a short time to pass out leaflets in other areas of the campus. She returned later to the area and worked nearby until her access was revoked and she left at security's request. She complied with all requests by security. She was not arrested.

16

1    68.    Plaintiff McElheny did not sit down on the floor. He passed out leaflets in the area

2    and observed, until his access was revoked and he left at security's request. He complied with all

3    requests by security. He was not arrested.

4    69.    Plaintiff Spishak-Thomas did not sit down on the floor. He passed out leaflets in

5    the area and observed, until his access was revoked and he left at security's request. He complied

6    with all requests by security. He was not arrested.

7    70.    Plaintiff Story took photos and wore a NOTA shirt. He did not sit down on the

8    floor, chant, hand out leaflets, or otherwise participate in the Action. Security did not ask him to

9    leave or revoke his access. He worked in his office during the afternoon and evening.

10    71.    Plaintiff Taylor stood nearby and observed. He did not sit down on the floor. He

11    complied with all requests by security. He was not arrested.

12    72.    Around 6:00 PM, Google security told the NYC Sitters and Plaintiffs Liu and

13    McElheny that they had been placed on administrative leave and had to exit the building. Security

14    stated that because they were on administrative leave, they were now trespassing. Plaintiffs Liu

15    and McElheny immediately left, escorted by security. The four NYC Sitters refused to leave and

16    were arrested.

17    73.    NOTA held a rally outside on public property starting around midday on the day of

18    the NYC Action. Class Members and NYC Action participants distributed flyers near the rally and

19    at entrances to the building (without blocking ingress or egress).

20    **Discipline and Termination**

17

74.     In or around late April 2024, Plaintiffs and Class Members received termination notices from Defendant that included the following language:

> After a review of your conduct from April 16, 2024, we found that you violated Google's workplace policies. Specifically, your conduct violated Google's Code of Conduct and Policy on Harassment, Discrimination, Retaliation, Standards of Conduct, and Workplace Concerns. As a result, Google is terminating your employment.

75.     In or around late April 2024, Plaintiffs Liu, McElheny, Mirza, Spishak-Thomas, Siegel, Story, Taylor, Van Der Laar, Xu, and Class Members who were not NYC Sitters or SVL Sitters received communication from Defendant that the following statement was placed in their personnel files:

> Rationale for Termination / Description of Misconduct: On April 16, 2024, Google security received concerns that [employee] engaged in extremely disruptive behavior by occupying Google workspace without permission for non-work related activity, i.e. participating in a sit-in. This conduct created safety concerns for multiple Googlers, making them feel unsafe and uncomfortable. As a result, termination is warranted. Specific Policy Violation(s): Policy on Harassment, Discrimination, Retaliation, Standards of Conduct and Workplace Policies; Code of Conduct.

76.     In or around late April 2024 after the Action, NYC Sitters and SVL Sitters (including Plaintiffs Anderson, Castellano, O'Bierne, Wesley Dudley, and Westrick) received communications from Defendant that the following statement was placed in their personnel files:

[Proposed] Second Amended Complaint – 5:25-cv-03268

1       Rationale for Termination / Description of Misconduct: On April 16, 2024, Google security

2       received concerns that [employee] engaged in extremely disruptive behavior by trespassing

3       in Google workspace without permission for non-work related activity by participating in

4       a sit-in and refusing to vacate the workspace when requested. Ultimately, after multiple

5       warnings, [employee] had to be physically removed by local law enforcement due to non-

6       cooperation and non-compliance with Google's Code of Conduct and Policy on

7       Harassment, Discrimination, Retaliation, Standards of Conduct, and Workplace Concerns.

8       This conduct created safety concerns for multiple Googlers, making them feel unsafe and

9       uncomfortable. As a result, termination is warranted. Specific Policy Violation(s): Policy

10      on Harassment, Discrimination, Retaliation, Standards of Conduct and Workplace Policies;

11      Code of Conduct.

12      77.     Upon information and belief, at least fifty Google employees were discharged for

13  participation in the SVL and NYC Actions. This number includes employees who worked in the

14  San Francisco, Sunnyvale, Seattle, New York, and Atlanta offices, at minimum.

15      78.     Upon information and belief, no "counter protestors" were terminated or

16  disciplined in any way.

17      79.     Plaintiffs have complied with all prerequisites to bringing this claim under Title

18  VII. This action is founded on timely complaints of discrimination filed with the U.S. Equal

19  Employment Opportunity Commission, which issued Notices of Right to Sue. This action is

20  commenced within ninety (90) days of Plaintiffs' receipt of those notices, which are annexed

21  hereto as Attachment "A".

1                                    **CLASS ALLEGATIONS**

2          80.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23.

3          81.     The members of the Class are so numerous that joinder of all members is

4   impracticable. Upon information and belief the Plaintiffs estimate the Class consists of at least

5   fifty members. The exact number of Class Members can be determined by reviewing Defendant's

6   records.

7          82.     Plaintiffs have retained counsel who are experienced and competent in class action

8   and employment litigation. Plaintiffs have no interests that are contrary to, or in conflict with,

9   members of the Class.

10         83.     Plaintiffs' claims are representative and typical of the claims of the Class. All Class

11  Members engaged in protected activity, on the same day, for the same purpose (or were perceived

12  by Defendant as doing so). All Plaintiffs and Class Members were terminated from their positions

13  with Defendant as result of protected activity in connection with the same Action.

14         84.     Plaintiffs and Class Members are located across the United States. Litigation in one

15  forum is desirable for efficiency.

16         85.     Absent class certification the members of the Class likely will not obtain redress of

17  their injuries.

18         86.     The following questions of law and fact are common to all Class Members:

19                 A.     Whether Class Members engaged in protected activity?

20

[Proposed] Second Amended Complaint – 5:25-cv-03268

1         B.     Whether Defendant terminated the employment of Class Members for

2  participating in protected activity?

3        87.    Prosecuting separate actions by individual Class Members would create a risk of

4  inconsistent or varying adjudications with respect to individual Class Members that would

5  establish incompatible standards of conduct for Defendant.

6        88.    Prosecuting separate actions by individual Class Members would be unduly

7  burdensome to the judicial system. Concentrating this litigation in one forum will promote judicial

8  economy and parity and provide for judicial consistency.

9        89.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek a Class on behalf of:

10  All persons whose employment was terminated by Defendant for participation in the Day of Action

11  on April 16, 2024 (the "Class").

## AS AND FOR A FIRST CAUSE OF ACTION

12      (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

13  *seq.*)

14        90.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

15  paragraphs, as if fully set forth herein.

16        91.    On April 16, 2024, Plaintiffs and Class Members engaged in protected opposition

17  within the meaning of 42 U.S.C. § 2000e-3(a) by opposing Defendant's discrimination against

18  Palestinian, Arab, and Muslim employees.

92.     Within a few days of Plaintiffs and Class Members opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs and Class Members, explicitly citing participation in the Action as the reason for the discharges.

93.     None of the conduct by participants in the NYC Action or SVL Action was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

94.     Plaintiffs and Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

95.     Upon information and belief, Defendant was well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated Plaintiffs' and Class Members' rights under Title VII, with malice or reckless indifference. As a result, Defendant is liable for punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

(Retaliation in Violation of the Fair Employment Housing Act (FEHA), California Government Code § 12940(h))

96.     Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

[Proposed] Second Amended Complaint – 5:25-cv-03268

1       97.    On April 16, 2024, Plaintiffs and Class Members were employees of Defendant, a

2    California-based company, who engaged in protected opposition within the meaning of FEHA by

3    opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees.

4       98.    Within a few days of its employees opposing Defendant's discriminatory conduct,

5    Defendant terminated the employment of Plaintiffs and Class Members, citing participation in the

6    Action as the reason for the discharges. Upon information and belief, the decision to terminate was

7    made in California.

8       99.    None of the conduct by Plaintiffs or Class Members was significantly disruptive to

9    Defendant's operations. Any disruption manufactured by Defendant's security personnel was the

10   independent decision of Defendant.

11      100.   Plaintiffs and Class Members suffered damages because of Defendant's unlawful

12   retaliatory actions, including but not limited to past and future lost wages and benefits and

13   emotional distress.

14      101.   Upon information and belief, Defendant's managers were well aware of the

15   protected activity, as well as the absence of any significant disruption, and intentionally violated

16   employees' rights under FEHA, with malice or oppression. As a result, Defendant is liable for

17   punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

1     (Retaliation in Violation of New York State Human Rights Law, New York Executive Law

2     §§ 296(e), on behalf of Plaintiffs Seth Taylor, Jesus Castellano, Tina Liu, Evan McElheny, Zachary

3     Siegel, Eric Spishak-Thomas, and Alec Story, individually and New York-based Class Members)

4     102.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

5     paragraphs, as if fully set forth herein.

6     103.    On April 16, 2024, Plaintiffs Liu, McElheny, Siegel, Spishak-Thomas, Story

7     Taylor, Castellano, and New York-based Class Members were employees of Defendant, which

8     maintains offices and conducts business within New York, who engaged in protected opposition

9     within the meaning of New York Executive Law §§ 296(e) by opposing Defendant's

10     discrimination against Palestinian, Arab, and Muslim employees and their supporters.

11     104.    Within a few days of its employees opposing Defendant's discriminatory conduct,

12     Defendant terminated the employment of Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel,

13     Spishak-Thomas, Story, and New-York based Class Members, citing participation in the Action

14     as the reason for the discharges.

15     105.    None of the conduct by Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel,

16     Spishak-Thomas, Story, or the New York-based Class Members was significantly disruptive to

17     Defendant's operations. Any disruption manufactured by Defendant's security personnel was the

18     independent decision of Defendant.

1    106.    Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-Thomas, Story, and

2    New York-based Class Members suffered damages because of Defendant's unlawful retaliatory

3    actions, including but not limited to past and future lost wages and benefits and emotional distress.

4    107.    Upon information and belief, Defendant was well aware of the protected activity,

5    as well as the absence of any significant disruption, and intentionally violated employees' rights

6    under the New York State Human Rights Law, with malice or reckless indifference, and, as a

7    result, is liable for punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION

8    (Retaliation in Violation of the New York City Human Rights Law, NYC Admin. Code

9    §8-107(7), on behalf of Plaintiffs Seth Taylor, Jesus Castellano, Tina Liu, Evan McElheny,

10   Zachary Siegel, Eric Spishak-Thomas, and Alec Story, individually and New York City-based

11   Class Members)

12   108.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

13   paragraphs, as if fully set forth herein.

14   109.    On April 16, 2024, Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-

15   Thomas, Story, and New York City-based Class Members were employees of Defendant, which

16   maintains an office and conducts business within New York City, who engaged in protected

17   opposition within the meaning of NYC Admin. Code §8-107(7) by opposing Defendant's

18   discrimination against Palestinian, Arab, and Muslim employees and their supporters.

110.    Within a few days of its employees opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-Thomas, Story, and New York City-based Class Members, citing participation in the Action as the reason for the discharges.

111.    None of the conduct by Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-Thomas, Story, or the New York City-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

112.    Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-Thomas, Story, and New York City-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

113.    Upon information and belief, Defendant was well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated employees' rights under the New York City Human Rights Law, with willful or wanton negligence, recklessness, or with a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, and, as a result, is liable for punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

(Retaliation in Violation of Washington State Law Against Discrimination, Wash. Rev. Code § 49.60.210, on behalf of Plaintiffs Cheyne Anderson and Seth Taylor individually and Washington-based Class Members)

26

[Proposed] Second Amended Complaint – 5:25-cv-03268

114.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

115.    Plaintiffs Anderson, Taylor, and Washington-based Class Members were employed by Defendant and worked in person and/or remotely from Defendant's Washington offices, where Defendant regularly conducts business.

116.    On April 16, 2024, Plaintiffs Anderson, Taylor, and Washington-based Class Members were employees of Defendant who engaged in protected opposition within the meaning of Wash. Rev. Code § 49.60.210 by opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees and their supporters. .

117.    Within a few days of its employees opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs Anderson, Taylor, and Washington-based Class Members, citing participation in the Action as the reason for the discharges. None of the conduct by Plaintiffs Anderson, Taylor, and Washington-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

118.    Plaintiffs Anderson, Taylor, and Washington-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

## AS AND FOR A SIXTH CAUSE OF ACTION

1    (Retaliation in Violation of Section 14.04.040(f) of the Seattle Charter, on behalf of

2    Plaintiff Seth Taylor individually and Seattle-based Class Members)

3    119.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

4    paragraphs, as if fully set forth herein.

5    120.    Plaintiff Taylor and Seattle-based Class Members were employed by Defendant

6    and worked in person and/or remotely from Defendant's Seattle, Washington office, where

7    Defendant regularly conducts business.

8    121.    On April 16, 2024, Plaintiff Taylor and Seattle-based Class Members engaged in

9    protected opposition within the meaning of Section 14.04.040 of the Seattle Charter by opposing

10    Defendant's discrimination against Palestinian, Arab, and Muslim employees and their supporters.

11    122.    Within a few days of its employees expressing their political beliefs via their

12    protected activity, Defendant terminated the employment of Plaintiff Taylor and Seattle-based

13    Class Members, explicitly citing participation in the Action as the reason for the discharges. None

14    of the conduct by Plaintiff Taylor or Seattle-based Class Members was significantly disruptive to

15    Defendant's operations. Any disruption manufactured by Defendant's security personnel was the

16    independent decision of Defendant.

17    123.    Plaintiff Taylor and Seattle-based Class Members suffered damages because of

18    Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages

19    and benefits and emotional distress.

[Proposed] Second Amended Complaint – 5:25-cv-03268

## AS AND FOR AN SEVENTH CAUSE OF ACTION

1    (Political Ideology Discrimination in Violation of Section 14.04.040(c) of the Seattle

2    Charter, on behalf of Plaintiff Seth Taylor individually and Seattle-based Class Members)

3    124.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

4    paragraphs, as if fully set forth herein.

5    125.    Plaintiff Taylor and Seattle-based Class Members were employed by Defendant

6    and worked in person and/or remotely from Defendant's Seattle, Washington office, where

7    Defendant regularly conducts business.

8    126.    On April 16, 2024, Plaintiff Taylor and Seattle-based Class Members expressed

9    their political beliefs during the NOTA Action.

10    127.    Within a few days of Plaintiff Taylor and Seattle-based Class Members expressing

11    their political beliefs, Defendant terminated their employment and cited participation in the Action

12    as the reason for the discharges. None of the conduct by Plaintiff Taylor or the Seattle-based Class

13    Members was significantly disruptive to Defendant's operations. Any disruption manufactured by

14    Defendant's security personnel was the independent decision of Defendant.

15    128.    Plaintiff Taylor and Seattle-based Class Members suffered damages because of

16    Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages

17    and benefits and emotional distress.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

1    (Retaliation in Violation of California Whistleblower Law, California Labor Code

2    §1102.5)

3    129.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

4    paragraphs, as if fully set forth herein.

5    130.    On April 16, Plaintiffs and Class Members were employees of Defendant, a

6    California-based company. Plaintiffs and Class Members openly and directly accused Google of

7    "aiding and abetting Israel's genocide," and of discriminating against Arab, Muslim, and

8    Palestinian employees. Upon information and belief, the April 16 action was widely publicized

9    within Google, such that management with authority to investigate and correct these alleged

10    violations was aware of the allegations.

11    131.    Within a few days of this disclosure, Defendant terminated the employment of

12    Plaintiffs and Class Members, citing participation in the Action as the reason for the discharges.

13    Upon information and belief, the decision to terminate was made in California.

14    132.    None of the conduct by Plaintiffs or Class Members was significantly disruptive to

15    Defendant's operations. Any disruption manufactured by Defendant's security personnel was the

16    independent decision of Defendant.

17    133.    Plaintiffs and Class Members suffered damages because of Defendant's unlawful

18    retaliatory actions, including but not limited to past and future lost wages and benefits and

19    emotional distress.

[Proposed] Second Amended Complaint – 5:25-cv-03268

1        134.    Upon information and belief, Defendant's managers were well aware of the

2    protected activity, as well as the absence of any significant disruption, and intentionally violated

3    employees' rights under the California Whistleblower Law, with malice. As a result, Defendant is

4    liable for punitive damages.

**AS AND FOR A NINTH CAUSE OF ACTION**

5        (Retaliation in Violation of New York State Whistleblower Law, New York Labor Law §

6    740, on behalf of Plaintiffs Seth Taylor, Jesus Castellano, Tina Liu, Evan McElheny, Zachary

7    Siegel, Eric Spishak-Thomas, and Alec Story, individually and New York-based Class Members)

8        135.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

9    paragraphs, as if fully set forth herein.

10        136.    On April 16, 2024, Plaintiffs Seth Taylor, Jesus Castellano, Tina Liu, Evan

11    McElheny, Zachary Siegel, Eric Spishak-Thomas, Alec Story, and New York-based Class

12    Members were employees of Defendant, which maintains offices and conducts business within

13    New York. Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-Thomas, Story, and New

14    York-based Class Members openly and directly accused Google of "aiding and abetting Israel's

15    genocide," and of discriminating against Arab, Muslim, and Palestinian employees. Upon

16    information and belief, the April 16 action was widely publicized within Google, such that

17    management with authority to investigate and correct these alleged violations was aware of the

18    allegations.

[Proposed] Second Amended Complaint – 5:25-cv-03268

1    137.    Within a few days of this disclosure, Defendant terminated the employment of

2    Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-Thomas, Story, and New York-

3    based Class Members, citing participation in the Action as the reason for the discharges.

4    138.    None of the conduct by Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel,

5    Spishak-Thomas, Story, or the New York-based Class Members was significantly disruptive to

6    Defendant's operations. Any disruption manufactured by Defendant's security personnel was the

7    independent decision of Defendant.

8    139.    Plaintiffs Taylor, Castellano, Liu, McElheny, Siegel, Spishak-Thomas, Story, and

9    New York-based Class Members suffered damages because of Defendant's unlawful retaliatory

10   actions, including but not limited to past and future lost wages and benefits and emotional distress.

11   140.    Upon information and belief, Defendant was well aware of the protected activity,

12   as well as the absence of any significant disruption, and intentionally violated employees' rights

13   under the New York State Whistleblower Law, with willfulness, wantonness, or malice, and, as a

14   result, is liable for punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION

15   (Wrongful Discharge in Violation of Public Policy, on behalf of Plaintiffs Cheyne

16   Anderson and Seth Taylor individually and Washington-based Class Members)

17   141.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding

18   paragraphs, as if fully set forth herein.

[Proposed] Second Amended Complaint – 5:25-cv-03268

142.    Plaintiffs Anderson, Taylor, and Washington-based Class Members were employed by Defendant and worked in person and/or remotely from Defendant's Washington offices, where Defendant regularly conducts business. Plaintiffs Anderson, Taylor, and Washington-based Class Members openly and directly accused Google of "aiding and abetting Israel's genocide," and of discriminating against Arab, Muslim, and Palestinian employees. Upon information and belief, the April 16 action was widely publicized within Google, such that management with authority to investigate and correct these alleged violations was aware of the allegations.

143.    Within a few days of this disclosure, Defendant terminated the employment of Plaintiffs Anderson, Taylor, and Washington-based Class Members, citing participation in the Action as the reason for the discharges.

144.    None of the conduct by Plaintiffs Anderson, Taylor, and Washington-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

145.    Plaintiffs Anderson, Taylor, and Washington-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class Members, respectfully pray for judgment and relief as follows:

A.    An Order that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certify Plaintiffs as the class representatives;

[Proposed] Second Amended Complaint – 5:25-cv-03268

1        B.      Declaration that the acts and practices complained of herein are in violation of the

2  above statutes;

3        C.      Equitable relief in the form of reinstatement, backpay, front pay and lost fringe

4  benefits in amounts to be determined by the Court;

5        D.      Compensatory and consequential damages for past and future pecuniary losses and

6  other injuries resulting from the unlawful employment practices described above, in amounts to

7  be determined by the Court;

8        E.      Punitive Damages, liquidated damages, or other penalties as permitted by

9  applicable statutes described above;

10       F.      Injunctive relief to correct the effects of Defendant's wrongful conduct and

11  permanently restrain violations of the above statutes;

12       G.      Attorneys' fees and costs;

13       H.      Expert witness fees, costs and expenses;

14       I.      Service awards to the named Plaintiffs in amounts to be determined by the Court;

15  and

16       J.      Such further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

17     146.    Plaintiffs demand that this action be tried by a jury.

Dated: September 24, 2025
       New York, New York

34

LEVY RATNER, P.C.

By:    Aleksandr L. Felstiner
Attorneys for Plaintiffs
80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
afelstiner@levyratner.com