LEVY RATNER, P.C.
Aleksandr L. Felstiner, Bar No. 281906
80 Eighth Avenue, Floor 8
New York, NY 10011
Telephone:     +1.212.627.8100
Facsimile:     +1.212.627.8182
Email: afelstiner@levyratner.com

Dana Lossia, Bar No. 240984
80 Eighth Avenue, Floor 8
New York, NY 10011
Telephone:     +1.212.627.8100
Facsimile:     +1.212.627.8182
Email: dlossia@levyratner.com

*Attorneys for Plaintiffs*

JONES DAY
Aaron L. Agenbroad, Bar No. 242613
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700
Email: alagenbroad@jonesday.com

Liat Yamini, Bar No. 251238
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:     +1.213.489.3939
Facsimile:     +1.213.243.2539
Email: lyamini@jonesday.com

Wendy C. Butler (*pro hac vice*)
Christian A. Bashi (*pro hac vice*)
250 Vesey Street
New York, NY 10080
Telephone:     +1.212.326.3723
Facsimile:     +1.212.755.7306
Email: wbutler@jonesday.com
Email: cbashi@jonesday.com

Makayla L. Halkinrude-Allmaras *(pro hac vice)*
51 Louisiana Ave NW
Washington, D.C.
Telephone:     +1.202.879.3820
Email: mhalkinrude@jonesday.com

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---------------------------------------------------------------------

CHEYNE ANDERSON, PAZIA BERMUDEZ-SILVERMAN, HARRISON BRONFELD, JESUS CASTELLANO, TINA LIU, FARHEEN MALIK, EVAN MCELHENY, HANNAH MIRZA, KATHLEEN O'BEIRNE, ZACHARY SIEGEL, ERIC SPISHAK-THOMAS, ALEC STORY, SETH TAYLOR, WILLIAM VAN DER LAAR, JIAJUN XU, individually and on behalf of all others similarly situated,

Plaintiffs,

Case No. 5:25-cv-03268-BLF

**[PROPOSED] THIRD AMENDED COMPLAINT**

Class Action



-against-

GOOGLE LLC,

Defendant.

-------------------------------------------------------------------X

Plaintiffs CHEYNE ANDERSON, PAZIA BERMUDEZ-SILVERMAN, HARRISON BRONFELD, JESUS CASTELLANO, TINA LIU, FARHEEN MALIK, EVAN MCELHENY, HANNAH MIRZA, KATHLEEN O'BEIRNE, ZACHARY SIEGEL, ERIC SPISHAK-THOMAS, ALEC STORY, SETH TAYLOR, WILLIAM VAN DER LAAR, and JIAJUN XU, by and through their counsel, LEVY RATNER, P.C., allege on behalf of themselves and all others similarly situated as follows against GOOGLE LCC ("Defendant" or "Google"):

## INTRODUCTION

1. This is an action to remedy the retaliatory termination of Plaintiffs' employment by Google for their engaging in protected activity on April 16, 2024 at or around Defendant's offices located in Sunnyvale, California and New York, New York.

## IDENTIFICATION OF THE PARTIES

2. Plaintiff Cheyne Anderson is an individual residing in Bothell, Washington. Mr. Anderson was employed by Defendant from approximately 2022 to April 2024. Mr. Anderson worked as a Software Engineer in Google's Kirkland, Washington office. Mr. Anderson engaged in protected activity on April 16, 2024 while attending an action at Google's office located in Sunnyvale, California.

2

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

3.    Plaintiff Pazia Bermudez-Silverman is an individual residing in New York, New York. Mx. Bermudez-Silverman was employed by Defendant from approximately 2020 to April 2024. Mx. Bermudez-Silverman worked as a Software Engineer in Google's New York, New York office. Mx. Bermudez-Silverman engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

4.    Plaintiff Harrison Bronfeld is an individual residing in New York, New York. Mr. Bronfeld was employed by Defendant from approximately June 2021 to April 2024. Mr. Bronfeld worked as a Software Engineer in Google's New York, New York office. Mr. Bronfeld engaged in protected activity on April 16, 2024, or was perceived as engaging in protected activity, during an action at Google's office located in New York, New York.

5.    Plaintiff Jesus Castellano is an individual residing in Houston, Texas. Mx. Castellano was employed by Defendant from approximately 2018 to April 2024. Mx. Castellano worked as a Partner Operations Manager in Google's Atlanta, Georgia office. Mx. Castellano engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

6.    Plaintiff Tina Liu is an individual who resided in Ridgewood, New York at all times relevant to this action. Ms. Liu was employed by Defendant from approximately 2021 to April 2024. Ms. Liu worked as a Software Engineer in Google's New York, New York office. Ms. Liu engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

3

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

7.    Plaintiff Farheen Malik is an individual residing in New York, New York. Ms. Malik was employed by Defendant from approximately 2018 to April 2024. Ms. Malik worked remotely as a Senior Interaction Designer out of Google's New York, New York office. Ms. Malik engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

8.    Plaintiff Evan McElheny is an individual residing in New York, New York. Mr. McElheny was employed by Defendant from approximately 2018 to April 2024. Mr. McElheny worked as a Software Engineer in Google's New York, New York office. Mr. McElheny engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

9.    Plaintiff Hannah Mirza is an individual residing in Berkeley, California. Ms. Mirza was employed by Defendant from approximately 2021 to April 2024. Ms. Mirza worked as a Product Operations Manager in Google's San Francisco, California office. Ms. Mirza engaged in protected activity on April 16, 2024 while attending an action at Google's office located in Sunnyvale, California.

10.    Plaintiff Kathleen O'Beirne is an individual residing in Oakland, California. Ms. O'Beirne was employed by Defendant from approximately 2020 to April 2024. Ms. O'Beirne worked as a Talent Equity & Strategy Program Manager Lead in Google's San Francisco, California office. Ms. O'Beirne engaged in protected activity on April 16, 2024 while attending an action at Google's office located in Sunnyvale, California.

4

11. Plaintiff Zachary Siegel is an individual residing in New York, New York. Mr. Siegel was employed by Defendant from approximately 2015 to April 2024. Mr. Siegel worked as a Senior Software Engineer in Google's San Francisco, California office. Mr. Siegel engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

12. Plaintiff Eric Spishak-Thomas is an individual residing in New York, New York. Mr. Spishak-Thomas was employed by Defendant from approximately 2013 to April 2024. Mr. Spishak-Thomas worked as a Senior Software Engineer in Google's New York, New York office. Mr. Spishak-Thomas engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

13. Plaintiff Alec Story is an individual residing in New York, New York. Mr. Story was employed by Defendant from approximately 2012 to April 2024. Mr. Story worked as a Staff Software Engineer in Google's New York, New York office. Mr. Story engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

14. Plaintiff Seth Taylor is an individual residing in Seattle, Washington. Mr. Taylor was employed by Defendant from approximately 2022 to April 2024. Mr. Taylor worked as a Software Engineer in Google's Seattle, Washington office. Mr. Taylor engaged in protected activity on April 16, 2024 while attending an action at Google's office located in New York, New York.

5

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

15.    Plaintiff William Van Der Laar is an individual who resided in San Francisco, California at all times relevant to this action. Mr. Van Der Laar was employed by Defendant from approximately 2021 to April 2024. Mr. Van Der Laar worked as a Software Engineer L4 in Google's San Francisco, California office. Mr. Van Der Laar engaged in protected activity on April 16, 2024 while attending an action at Google's office located in Sunnyvale, California.

16.    Plaintiff Jiajun Xu is an individual who resided in San Francisco, California at all times relevant to this action. Mr. Xu was employed by Defendant from approximately 2019 to April 2024. Mr. Xu worked as a Software Engineer in Google's San Francisco, California office. Mr. Xu engaged in protected activity on April 16, 2024 while attending an action at Google's office located in Sunnyvale, California.

17.    Defendant Google, LLC is a Delaware limited liability corporation with its principal place of business in Mountain View, California. Google does business throughout the state of California, including within this judicial district, and in all states throughout the United States, including New York and Washington.

18.    Google is in the business of marketing, selling, developing, and providing technology, search and advertising, internet services, software and operating systems, and enterprise and hardware products. At the times the alleged violations took place, Plaintiffs and members of the class they seek to represent were employees of Google within the definitions set forth in 42 U.S.C. § 2000e(f), Cal. Gov't Code § 12926 and Cal. Code of Reg. § 11008(c), Cal. Labor Code § 1102.5, N.Y. Exec. Law § 290 *et seq*, New York Labor Law § 740(a), NYC Admin. Code §8-102, Wash. Rev. Code § 49.60 *et seq.*, and Section 14.04.040 of the Seattle Charter.

6

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

19. At all relevant times, Google has continuously been an employer within the definition of 42 U.S.C. § 2000e(b), Cal. Gov't Code §§ 12926(d) and 12940, Cal. Labor Code § 1102.5, N.Y. Exec. Law § 292(5), New York Labor Law § 740(b), NYC Admin. Code §8-102, Wash. Rev. Code § 49.60.040(11), and Section 14.04.040 of the Seattle Charter.

20. Defendant employs more than fifteen employees.

21. At all times relevant herein, Google acted via its agents, servants, and employees, each of whom acted in the course and scope of their employment with and for the Defendant.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), as Plaintiffs allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*. ("Title VII").

23. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state and local law claims because those claims derive from a common nucleus of operative facts. The federal claims are so intertwined with the state and local claims as to make exercise of supplemental jurisdiction appropriate.

24. The Northern District of California has personal jurisdiction over Google because Google transacts significant business in the State of California and in this District.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts substantial business in the Northern District of California, and because, upon information and belief, unlawful employment practices originated in this District.

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

## STATEMENT OF THE FACTS

26.     On April 16, 2024 Plaintiffs participated in a Day of Action ("Action") at Google campuses in Sunnyvale, California ("SVL") and New York, New York ("NYC").

27.     The Action was organized by a group of technology industry workers, including Google employees, called No Tech for Apartheid ("NOTA").

28.     Plaintiffs participated in the Action in part to oppose Google's discrimination and discriminatory harassment against Palestinian, Arab, and Muslim Google employees.

29.     Prior to the Action, NOTA published a list of demands ("Demands") in connection with the Action:

(1)     Drop Project Nimbus: We demand that Google stop providing material support to this genocide by canceling its Project Nimbus contract and immediately cease doing business with the Israeli apartheid government and military.

(2)     Stop the harassment, intimidation, bullying, silencing, and censorship of Palestinian, Arab, Muslim Googlers: We demand that Google leadership immediately halt its continuous empowerment of hate, abuse, and retaliation against those who speak out and establish a working environment where Muslim, Arab, and Palestinian Googlers are not subject to harassment, racism, and collusion against them.

(3)     Address the health and safety crisis among Google workers: Project Nimbus has become a major health & safety workplace conditions issue. Multiple workers

have quit citing the serious mental health consequences of working at a company that is using their labor to enable a genocide. We demand that Google stop the retaliation against and doxing of workers speaking out, and create a safe working environment for workers.

30. Project Nimbus is a cloud-computing contract with the Israeli government, that had been confirmed to support Israeli military operations in Gaza.

31. "Googler" is a term used within Google to refer to Google employees.

32. NOTA's second demand referred to a series of prior actions by Google that NOTA members believed to be discriminatory or retaliatory towards Arab, Muslim, and Palestinian Google employees. NOTA had previously raised these concerns.

33. In or around October 2023, multiple Google employees circulated a petition urging Google to drop Project Nimbus. Defendant conducted a Human Resources investigation into the only Muslim employee to circulate the petition, accusing him of terrorism.

34. In or around November 2023, NOTA published an open letter condemning Google's "internal culture of hate, abuse, and retaliation towards Muslim, Palestinian, and Arab employees." NOTA's letter accused Google of "allowing dehumanizing, racist comments against Palestinians as a people on official Google work platforms." NOTA also claimed that Google managers used their "rank to question, report, and attempt to get fired Muslim, Arab, and Palestinian Googlers who express sympathy with the plight of the besieged Palestinian people."

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

The conduct by Google that is described in the open letter was opposed by Plaintiffs during the Action.

35. In or around March 2024, at least two Muslim Employees were "doxed" when their colleagues leaked their messages on Defendant's internal employee chat platform to the Daily Wire. The Daily Wire published an article on March 8, 2024 including the Muslim employees' full names, positions, photos, and work locations. Defendant failed to take substantive steps to address the doxing. Google's failure to support these employees was opposed by Plaintiffs during the Action.

36. NOTA members at Google compiled a document entitled "Google Disregards Worker Safety," which detailed issues of harassment and discrimination against Palestinian, Arab, and Muslim employees, along with other workplace safety concerns. Action participants circulated the document within Google on the day of the Action. Google's discriminatory conduct, as outlined in the document, was opposed by Plaintiffs during the Action.

37. On the day of the Action, Class Members at Defendant's NYC office distributed leaflets to Google employees and the public, which directly opposed conduct by Google that the Plaintiffs perceived as discriminatory. The leaflet stated in part:

> Google must stop the harassment, intimidation, and censorship of Palestinian, Arab, and Muslim Googlers. Google leadership and Employee Resources must halt its continuous empowerment of hate, abuse, doxxing, and retaliation against those who speak out…Google has…engendered a health and safety workplace crisis by

10

facilitating harassment, retaliating against workers who speak out, and condoning the censorship and discrimination of Palestinian, Arab, and Muslim Googlers.

The leaflet also accused Google of "aiding and abetting Israel's genocide in Gaza."

**SVL April 16 Action**

38.     Plaintiffs Cheyne Anderson, Hannah Mirza, Kathleen O'Beirne, William Van Der Laar, Jiajun Xu, and other Class Members participated in the April 16 Action taking place in and around the "MP4" building, a Google office at 1190 Bordeaux Drive in Sunnyvale, CA (hereinafter the "SVL Action").

39.     Between approximately 8:00 and 9:00 AM on April 16, 2024, SVL Action participants entered MP4. All were Google employees and had permission to enter the building. Around fifteen to twenty people went up to the sixth floor, which contains the office of Thomas Kurian, head of Google Cloud. Mr. Kurian's office is the last in a row of executive offices and conference rooms located along one side of a large, open, rectangular space. The open space is approximately 1200 square feet, with some workstations in the area. Although there was a badge reader near the entrance to the open area, the area was not locked and it was not necessary to scan badges in order to enter. Mr. Kurian's office was empty, and the door was open. The conference rooms in the immediate vicinity were empty. When the SVL Action participants entered, three to six people were working about 75 feet from Mr. Kurian's office.

40.     Around 9:00 AM, a smaller group of SVL Action participants, including Plaintiffs Anderson, O'Beirne, and Van der Laar, entered Mr. Kurian's office. A participant taped a banner

11

up against the inside window that said: "Thomas Kurian, Drop Project Nimbus." Additional signs said "end worker retaliation" and "no AI for military." Plaintiffs Mirza and Xu remained outside Mr. Kurian's office and did not sit down there.

41.     One Class Member read the Demands on a livestream, standing in Mr. Kurian's doorway. There was no amplification.

42.     Some Plaintiffs and certain Class Members took a group photo in Mr. Kurian's office, after which a group of participants left to assist with the rally outside. Another group photo was taken outside Mr. Kurian's office.

43.     A participant in the office wrote the Demands in dry-erase marker on Mr. Kurian's white board, along with an internal link to the "Google Disregards Worker Safety" document. The group chanted various chants for a short time.

44.     Around 9:45 AM, two or three security personnel approached some SVL participants and asked them to relocate to a 4th floor common space. One Class Member, acting as a security liaison, spoke with security for a few minutes outside of Mr. Kurian's office. The liaison returned to Mr. Kurian's office and told the participants that security had revoked their access.

45.     About ten participants, including Plaintiff Van Der Laar, immediately left Mr. Kurian's office once their access was revoked. Plaintiffs Mirza and Xu, who were already outside Mr. Kurian's office, also left the building, along with the other participants outside Mr. Kurian's office. They took signage with them. Security blocked the exit in order to scan the badges of

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

participants before they left. Plaintiffs Mirza, Van der Laar, and Xu complied with all requests from security, left when asked, and were not detained or arrested.

46.     Plaintiffs Cheyne Anderson, Kathleen O'Beirne, and three other Class Members (hereinafter "SVL Sitters") remained in Mr. Kurian's office. The liaison requested permission to stay as well, so that they could continue to serve as a liaison with security. Google security granted the liaison permission to stay.  The liaison remained outside Mr. Kurian's office with security. Security took photos of the badges of SVL Sitters and read their names out loud to confirm.

47.     The SVL Sitters continued to read the Demands over the livestream, as well as worker testimonials from the NOTA website, including testimonials describing discrimination by Google. They answered questions submitted to the livestream and spoke over the phone with the NYC Action participants. All speaking occurred at normal conversational volume.

48.     Around 10:30 AM, security notified the SVL Sitters, through the liaison, that police had been called. Police arrived outside around 11:00 AM, and left within 30 minutes, without interacting with any participants inside. Security closed down the area on the sixth floor outside Mr. Kurian's office, shut the window blinds, and stationed themselves at the entrance to the open area.

49.     Simultaneous with the actions inside MP4, SVL participants held a rally outside Google's premises, on public property. The peaceful rally started in front of building MP2 (1175 Borregas Ave., Sunnyvale, CA 94089) and moved to the southern entrance of MP4.

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

50. Around 3:30 PM, Google security notified the SVL Sitters that their badge access had been revoked and they were being placed on administrative leave. Security gave them until 5:30 PM to leave or be taken out by police.

51. Around 7:00 PM security again asked the SVL Sitters to leave. The SVL Sitters declined and were arrested and removed.

52. SVL Sitters were processed and released with a citation the same night.

**NYC April 16 Action**

53. The Action in NYC ("NYC Action") occurred on the 10th floor "Commons" area in Google's office building at 111 8th Avenue, New York, NY. The Commons is a three-floor open area, spanning the 8th through 10th floors. A staircase runs through the middle, from the 8th floor to the 10th floor. The main 10th floor Commons area has open seating with tables, couches, plants, and decorations. It is not designated as a quiet area or a workspace. It contains no designated workstations, though people are permitted to use it to work or socialize. A hallway runs along the southern edge of the main Commons area. There is a locker on the left "branch" of the U-shaped space, surrounding the atrium. Next to the locker is a meeting room called "Strato-spheric." The right "branch" of the U contains a micro-kitchen. Music is sometimes played in the area.

54. On April 16, 2024 at around 11:55 AM, Plaintiffs Bermudez-Silverman, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and Class Members who participated at the NYC Action gathered in the main Commons area, wearing t-shirts for the Action, and took some photos. Plaintiff Malik left after a group photo was taken, and distributed

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

flyers outside the building. Some Class Members hung a banner which read "Google Workers Sit In Against Project Nimbus. No Tech for Genocide" off the 10th floor railing into the atrium. They attached the banner, without adhesives, by draping the end of the banner over the railing.

55. Approximately eight participants, including Plaintiffs Bermudez-Silverman, Castellano, and Siegel, then sat down on the floor, against the railing to ensure that they would not obstruct passersby. The seated participants did not obstruct access to the elevator, Strato-spheric, the locker, or any seating in the main Commons area.

56. Plaintiffs Liu, McElheny, Spishak-Thomas, Story, Taylor and other participants remained nearby in the main Commons area, distributing leaflets which listed the Demands. A few others left the 10th floor to distribute leaflets on the 9th and 8th floors. None of the Class Members disrupted Defendant's operation of business or flow of work.

57. A few Class Members were assigned the role to de-escalate conflicts, if needed. They did not directly participate in the NYC Action, but observed or acted as liaisons with Google's security team.

58. Three Class Members spoke in the Commons, without amplification. They read the Demands out loud. Some Class Members who were sitting down repeated the phrase, "Not another push, not another line, no more cloud for Israel's crimes" and "When workers' rights are under attack, what do we do? Rise up fight back."

15

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

59. Plaintiff Siegel spoke about his reasons for sitting in, including "for my Muslim, Arab, and Palestinian Googlers and upstanding coworkers who have suffered discrimination and retaliation at Google[.]"

60. There was also steady traffic in the Commons' hallway, and Google played ambient music over the loudspeaker. Employees passed through the area undisturbed, on foot and on scooters, to get to the locker area, seating area, Strato-Spheric, and the micro-kitchen. Elevators were in use to transport supplies.

61. At or around 12:15 PM, Google security arrived. The security team was led by Jimmy West. Security asked a Class Member serving as security liaison to tone down the chanting. The seated Class Members discontinued chanting. West later noticed the banner that had been hung and requested that it be taken down, which it was.

62. West asked the liaison whether the participants would leave. West said he was not telling them to leave, just asking. The liaison asked if their access to the building was being revoked, and West said "No."

63. During the Action, four to six counter-protestors stood nearby in the 10th floor Commons space. The counter-protestors talked, laughed, and occasionally became agitated and yelled at Action participants. De-escalators instructed participants not to engage. The counter-protestors stayed in the area for at least an hour, if not longer. Counter-protestors occasionally followed people who took flyers and tried to engage them in conversation.

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

64. Upon information and belief, Google security did not record the identity of the counter-protestors. West stated that he wanted the Action participants to leave, to prevent escalation.

65. One counter-protestor, a Google employee named Amos Berger, began filming the participants about 10 minutes into the NYC Action, without their permission. Participants believed that Berger was the same person who had doxed and harassed a Class Member earlier in the year. Berger stated he intended to show everyone who was involved. A security liaison asked West to do something about Berger filming people without their consent, reminding him that this violates Google policy. West responded "What did you expect?" and did not intervene.

66. At or around 1:15 PM, West formally "revoked consent" for participants to be there. West agreed that two Class Members serving as liaisons could stay in the area, which they did. Some participants who had been sitting down on the floor immediately complied and left the area, including Plaintiffs Bermudez-Silverman and Siegel. Other participants who had not been sitting also left the area, or dispersed to other parts of the Commons. Security took photos of the NYC Action participants' badges upon exit. Security did not scan the badges of counter-protestors or ask them to leave.

67. Jesus Castellano and three Class Members (hereinafter the "NYC Sitters") remained seated in the Commons.

68. Plaintiff Liu did not sit down on the floor at any point. She had been passing out leaflets in the 10th floor Commons, then left after a short time to pass out leaflets in other areas of

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

the campus. She returned later to the area and worked nearby until her access was revoked and she left at security's request. She complied with all requests by security. She was not arrested.

69.    Plaintiff Malik did not sit down on the floor. She posed for a photo, then left the building to distribute leaflets outside and did not re-enter during that day.

70.    Plaintiff McElheny did not sit down on the floor. He passed out leaflets in the area and observed, until his access was revoked and he left at security's request. He complied with all requests by security. He was not arrested.

71.    Plaintiff Spishak-Thomas did not sit down on the floor. He passed out leaflets in the area and observed, until his access was revoked and he left at security's request. He complied with all requests by security. He was not arrested.

72.    Plaintiff Story took photos and wore a NOTA shirt. He did not sit down on the floor, chant, hand out leaflets, or otherwise participate in the Action. Security did not ask him to leave or revoke his access. He worked in his office during the afternoon and evening.

73.    Plaintiff Taylor stood nearby and observed. He did not sit down on the floor. He complied with all requests by security. He was not arrested.

74.    Plaintiff Bronfeld did not wear a shirt or face-mask, did not sit down on the floor, did not distribute leaflets, and did not otherwise participate in the action. He observed the action from approximately 12:30-1:00PM, standing nearby. At approximately 5:00PM he returned to the Commons area, approached the NYC Sitters, and spoke briefly with them. Security requested to see his badge while he was speaking with the NYC Sitters. He complied. He then sat down in a

18

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

seating area nearby and observed. He was seated near Plaintiffs McElheny and Liu. Security never requested that he leave. He left at approximately 6:30PM.

75. Around 6:00 PM, Google security told the NYC Sitters and Plaintiffs Liu and McElheny that they had been placed on administrative leave and had to exit the building. Security stated that because they were on administrative leave, they were now trespassing. Plaintiffs Liu and McElheny immediately left, escorted by security. The four NYC Sitters refused to leave and were arrested.

76. NOTA held a rally outside on public property starting around midday on the day of the NYC Action. Class Members and NYC Action participants distributed flyers near the rally and at entrances to the building (without blocking ingress or egress).

**Discipline and Termination**

77. In or around late April 2024, Plaintiffs and Class Members received termination notices from Defendant that included the following language:

After a review of your conduct from April 16, 2024, we found that you violated Google's workplace policies. Specifically, your conduct violated Google's Code of Conduct and Policy on Harassment, Discrimination, Retaliation, Standards of Conduct, and Workplace Concerns. As a result, Google is terminating your employment.

78. In or around late April 2024, Plaintiffs Bermudez-Silverman, Bronfeld, Liu, Malik, McElheny, Mirza, Spishak-Thomas, Siegel, Story, Taylor, Van Der Laar, Xu, and Class Members

who were not NYC Sitters or SVL Sitters received communication from Defendant that the following statement was placed in their personnel files:

> Rationale for Termination / Description of Misconduct: On April 16, 2024, Google security received concerns that [employee] engaged in extremely disruptive behavior by occupying Google workspace without permission for non-work related activity, i.e. participating in a sit-in. This conduct created safety concerns for multiple Googlers, making them feel unsafe and uncomfortable. As a result, termination is warranted. Specific Policy Violation(s): Policy on Harassment, Discrimination, Retaliation, Standards of Conduct and Workplace Policies; Code of Conduct.

79.    In or around late April 2024 after the Action, NYC Sitters and SVL Sitters (including Plaintiffs Anderson, Castellano, and O'Bierne) received communications from Defendant that the following statement was placed in their personnel files:

> Rationale for Termination / Description of Misconduct: On April 16, 2024, Google security received concerns that [employee] engaged in extremely disruptive behavior by trespassing in Google workspace without permission for non-work related activity by participating in a sit-in and refusing to vacate the workspace when requested. Ultimately, after multiple warnings, [employee] had to be physically removed by local law enforcement due to non-cooperation and non-compliance with Google's Code of Conduct and Policy on Harassment, Discrimination, Retaliation, Standards of Conduct, and Workplace Concerns. This conduct created safety concerns for multiple Googlers, making them feel unsafe and uncomfortable. As a result, termination is warranted. Specific Policy Violation(s): Policy

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

on Harassment, Discrimination, Retaliation, Standards of Conduct and Workplace Policies; Code of Conduct.

80.     Upon information and belief, at least fifty Google employees were discharged for participation in the SVL and NYC Actions. This number includes employees who worked in the San Francisco, Sunnyvale, Seattle, New York, and Atlanta offices, at minimum.

81.     Upon information and belief, no "counter protestors" were terminated or disciplined in any way.

82.     Plaintiffs have complied with all prerequisites to bringing this claim under Title VII. This action is founded on timely complaints of discrimination filed with the U.S. Equal Employment Opportunity Commission, which issued Notices of Right to Sue. This action is commenced within ninety (90) days of Plaintiffs' receipt of those notices, which are annexed hereto as Attachment "A".

## CLASS ALLEGATIONS

83.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23.

84.     The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief the Plaintiffs estimate the Class consists of at least fifty members. The exact number of Class Members can be determined by reviewing Defendant's records.

21

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

85. Plaintiffs have retained counsel who are experienced and competent in class action and employment litigation. Plaintiffs have no interests that are contrary to, or in conflict with, members of the Class.

86. Plaintiffs' claims are representative and typical of the claims of the Class. All Class Members engaged in protected activity, on the same day, for the same purpose (or were perceived by Defendant as doing so). All Plaintiffs and Class Members were terminated from their positions with Defendant as result of protected activity in connection with the same Action.

87. Plaintiffs and Class Members are located across the United States. Litigation in one forum is desirable for efficiency.

88. Absent class certification the members of the Class likely will not obtain redress of their injuries.

89. The following questions of law and fact are common to all Class Members:

A. Whether Class Members engaged in protected activity?

B. Whether Defendant terminated the employment of Class Members for participating in protected activity?

90. Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

22

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

91. Prosecuting separate actions by individual Class Members would be unduly burdensome to the judicial system. Concentrating this litigation in one forum will promote judicial economy and parity and provide for judicial consistency.

92. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek a Class on behalf of: All persons whose employment was terminated by Defendant for participation in the Day of Action on April 16, 2024 (the "Class").

## AS AND FOR A FIRST CAUSE OF ACTION

(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)

93. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

94. On April 16, 2024, Plaintiffs and Class Members engaged in protected opposition within the meaning of 42 U.S.C. § 2000e-3(a) by opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees.

95. Within a few days of Plaintiffs and Class Members opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs and Class Members, explicitly citing participation in the Action as the reason for the discharges.

96. None of the conduct by participants in the NYC Action or SVL Action was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

23

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

97. Plaintiffs and Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

98. Upon information and belief, Defendant was well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated Plaintiffs' and Class Members' rights under Title VII, with malice or reckless indifference. As a result, Defendant is liable for punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

(Retaliation in Violation of the Fair Employment Housing Act (FEHA), California Government Code § 12940(h))

99. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

100. On April 16, 2024, Plaintiffs and Class Members were employees of Defendant, a California-based company, who engaged in protected opposition within the meaning of FEHA by opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees.

101. Within a few days of its employees opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs and Class Members, citing participation in the Action as the reason for the discharges. Upon information and belief, the decision to terminate was made in California.

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

102. None of the conduct by Plaintiffs or Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

103. Plaintiffs and Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

104. Upon information and belief, Defendant's managers were well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated employees' rights under FEHA, with malice or oppression. As a result, Defendant is liable for punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

(Retaliation in Violation of New York State Human Rights Law, New York Executive Law §§ 296(e), on behalf of Plaintiffs Pazia Bermudez-Silverman, Harrison Bronfeld, Jesus Castellano, Tina Liu, Farheen Malik, Evan McElheny, Zachary Siegel, Eric Spishak-Thomas, Alec Story, and Seth Taylor, individually and New York-based Class Members)

105. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

106. On April 16, 2024, Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York-based Class Members were employees of Defendant, which maintains offices and conducts business within New York,

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

who engaged in protected opposition within the meaning of New York Executive Law §§ 296(e) by opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees and their supporters.

107.    Within a few days of its employees opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New-York based Class Members, citing participation in the Action as the reason for the discharges.

108.    None of the conduct by Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, or the New York-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

109.    Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

110.    Upon information and belief, Defendant was well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated employees' rights under the New York State Human Rights Law, with malice or reckless indifference, and, as a result, is liable for punitive damages.

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

**AS AND FOR A FOURTH CAUSE OF ACTION**

(Retaliation in Violation of the New York City Human Rights Law, NYC Admin. Code §8-107(7), on behalf of Plaintiffs Pazia Bermudez-Silverman, Harrison Bronfeld, Jesus Castellano, Tina Liu, Farheen Malik, Evan McElheny, Zachary Siegel, Eric Spishak-Thomas, Alec Story, and Seth Taylor, individually and New York City-based Class Members)

111.	Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

112.	On April 16, 2024, Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York City-based Class Members were employees of Defendant, which maintains an office and conducts business within New York City, who engaged in protected opposition within the meaning of NYC Admin. Code §8-107(7) by opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees and their supporters.

113.	Within a few days of its employees opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York City-based Class Members, citing participation in the Action as the reason for the discharges.

114.	None of the conduct by Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, or the New York City-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

27

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

115. Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York City-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

116. Upon information and belief, Defendant was well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated employees' rights under the New York City Human Rights Law, with willful or wanton negligence, recklessness, or with a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, and, as a result, is liable for punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

(Retaliation in Violation of Washington State Law Against Discrimination, Wash. Rev. Code § 49.60.210, on behalf of Plaintiffs Cheyne Anderson and Seth Taylor individually and Washington-based Class Members)

117. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

118. Plaintiffs Anderson, Taylor, and Washington-based Class Members were employed by Defendant and worked in person and/or remotely from Defendant's Washington offices, where Defendant regularly conducts business.

119. On April 16, 2024, Plaintiffs Anderson, Taylor, and Washington-based Class Members were employees of Defendant who engaged in protected opposition within the meaning

28

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

of Wash. Rev. Code § 49.60.210 by opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees and their supporters. .

120.    Within a few days of its employees opposing Defendant's discriminatory conduct, Defendant terminated the employment of Plaintiffs Anderson, Taylor, and Washington-based Class Members, citing participation in the Action as the reason for the discharges. None of the conduct by Plaintiffs Anderson, Taylor, and Washington-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

121.    Plaintiffs Anderson, Taylor, and Washington-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

## AS AND FOR A SIXTH CAUSE OF ACTION

(Retaliation in Violation of Section 14.04.040(f) of the Seattle Charter, on behalf of Plaintiff Seth Taylor individually and Seattle-based Class Members)

122.    Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

123.    Plaintiff Taylor and Seattle-based Class Members were employed by Defendant and worked in person and/or remotely from Defendant's Seattle, Washington office, where Defendant regularly conducts business.

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

124. On April 16, 2024, Plaintiff Taylor and Seattle-based Class Members engaged in protected opposition within the meaning of Section 14.04.040 of the Seattle Charter by opposing Defendant's discrimination against Palestinian, Arab, and Muslim employees and their supporters.

125. Within a few days of its employees expressing their political beliefs via their protected activity, Defendant terminated the employment of Plaintiff Taylor and Seattle-based Class Members, explicitly citing participation in the Action as the reason for the discharges. None of the conduct by Plaintiff Taylor or Seattle-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

126. Plaintiff Taylor and Seattle-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

## AS AND FOR AN SEVENTH CAUSE OF ACTION

(Political Ideology Discrimination in Violation of Section 14.04.040(c) of the Seattle Charter, on behalf of Plaintiff Seth Taylor individually and Seattle-based Class Members)

127. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

128. Plaintiff Taylor and Seattle-based Class Members were employed by Defendant and worked in person and/or remotely from Defendant's Seattle, Washington office, where Defendant regularly conducts business.

30

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

129. On April 16, 2024, Plaintiff Taylor and Seattle-based Class Members expressed their political beliefs during the NOTA Action.

130. Within a few days of Plaintiff Taylor and Seattle-based Class Members expressing their political beliefs, Defendant terminated their employment and cited participation in the Action as the reason for the discharges. None of the conduct by Plaintiff Taylor or the Seattle-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

131. Plaintiff Taylor and Seattle-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

(Retaliation in Violation of California Whistleblower Law, California Labor Code §1102.5)

132. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

133. On April 16, Plaintiffs and Class Members were employees of Defendant, a California-based company. Plaintiffs and Class Members openly and directly accused Google of "aiding and abetting Israel's genocide," and of discriminating against Arab, Muslim, and Palestinian employees. Upon information and belief, the April 16 action was widely publicized

31

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

within Google, such that management with authority to investigate and correct these alleged violations was aware of the allegations.

134.    Within a few days of this disclosure, Defendant terminated the employment of Plaintiffs and Class Members, citing participation in the Action as the reason for the discharges. Upon information and belief, the decision to terminate was made in California.

135.    None of the conduct by Plaintiffs or Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

136.    Plaintiffs and Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

137.    Upon information and belief, Defendant's managers were well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated employees' rights under the California Whistleblower Law, with malice. As a result, Defendant is liable for punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION

(Retaliation in Violation of New York State Whistleblower Law, New York Labor Law § 740, on behalf of Plaintiffs Pazia Bermudez-Silverman, Harrison Bronfeld, Jesus Castellano, Tina Liu, Farheen Malik, Evan McElheny, Zachary Siegel, Eric Spishak-Thomas, Alec Story, and Seth Taylor, individually and New York-based Class Members)

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

138. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

139. On April 16, 2024, Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York-based Class Members were employees of Defendant, which maintains offices and conducts business within New York. Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York-based Class Members openly and directly accused Google of "aiding and abetting Israel's genocide," and of discriminating against Arab, Muslim, and Palestinian employees. Upon information and belief, the April 16 action was widely publicized within Google, such that management with authority to investigate and correct these alleged violations was aware of the allegations.

140. Within a few days of this disclosure, Defendant terminated the employment of Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York-based Class Members, citing participation in the Action as the reason for the discharges.

141. None of the conduct by Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, or the New York-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

142. Plaintiffs Bermudez-Silverman, Bronfeld, Castellano, Liu, Malik, McElheny, Siegel, Spishak-Thomas, Story, Taylor, and New York-based Class Members suffered damages

33

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

143. Upon information and belief, Defendant was well aware of the protected activity, as well as the absence of any significant disruption, and intentionally violated employees' rights under the New York State Whistleblower Law, with willfulness, wantonness, or malice, and, as a result, is liable for punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION

(Wrongful Discharge in Violation of Public Policy, on behalf of Plaintiffs Cheyne Anderson and Seth Taylor individually and Washington-based Class Members)

144. Plaintiffs re-allege and incorporate herein the allegations contained in preceding paragraphs, as if fully set forth herein.

145. Plaintiffs Anderson, Taylor, and Washington-based Class Members were employed by Defendant and worked in person and/or remotely from Defendant's Washington offices, where Defendant regularly conducts business. Plaintiffs Anderson, Taylor, and Washington-based Class Members openly and directly accused Google of "aiding and abetting Israel's genocide," and of discriminating against Arab, Muslim, and Palestinian employees. Upon information and belief, the April 16 action was widely publicized within Google, such that management with authority to investigate and correct these alleged violations was aware of the allegations.

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

146.    Within a few days of this disclosure, Defendant terminated the employment of Plaintiffs Anderson, Taylor, and Washington-based Class Members, citing participation in the Action as the reason for the discharges.

147.    None of the conduct by Plaintiffs Anderson, Taylor, and Washington-based Class Members was significantly disruptive to Defendant's operations. Any disruption manufactured by Defendant's security personnel was the independent decision of Defendant.

148.    Plaintiffs Anderson, Taylor, and Washington-based Class Members suffered damages because of Defendant's unlawful retaliatory actions, including but not limited to past and future lost wages and benefits and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class Members, respectfully pray for judgment and relief as follows:

A.    An Order that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certify Plaintiffs as the class representatives;

B.    Declaration that the acts and practices complained of herein are in violation of the above statutes;

C.    Equitable relief in the form of reinstatement, backpay, front pay and lost fringe benefits in amounts to be determined by the Court;

D.    Compensatory and consequential damages for past and future pecuniary losses and other injuries resulting from the unlawful employment practices described above, in amounts to be determined by the Court;

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF

E.    Punitive Damages, liquidated damages, or other penalties as permitted by applicable statutes described above;

F.    Injunctive relief to correct the effects of Defendant's wrongful conduct and permanently restrain violations of the above statutes;

G.    Attorneys' fees and costs;

H.    Expert witness fees, costs and expenses;

I.    Service awards to the named Plaintiffs in amounts to be determined by the Court; and

J.    Such further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

149.    Plaintiffs demand that this action be tried by a jury.

Dated: April 20, 2026
New York, New York

LEVY RATNER, P.C.

By:    Aleksandr L. Felstiner
Attorneys for Plaintiffs
80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
afelstiner@levyratner.com

[Proposed] Third Amended Complaint – 5:25-cv-03268-BLF